# Exhibit 3
# John Doe Declaration

# MEDICAL STAFF BYLAWS, POLICIES, AND

# RULES AND REGULATIONS

# OF

# CHARLESTON AREA MEDICAL CENTER

# CREDENTIALS POLICY

Version 004

Effective Date March 23, 2022

Version 004-2022-03-23

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

# Contents

ARTICLE 1 ....................................................................................................................................... 1

GENERAL ...................................................................................................................................... 1

  1.A.  DEFINITIONS .................................................................................................................... 1

  1.B.  DELEGATION OF FUNCTIONS.......................................................................................... 6

ARTICLE 2 ....................................................................................................................................... 8

QUALIFICATIONS, CONDITIONS, AND RESPONSIBILITIES.................................................................. 8

  2.A.  QUALIFICATIONS .............................................................................................................. 8

    2.A.1.  Threshold Eligibility Criteria: .................................................................................... 8

    2.A.2.  Waiver of Threshold Eligibility Criteria: ................................................................. 13

    2.A.3.  Factors for Evaluation: ............................................................................................ 14

    2.A.4.  No Entitlement to Appointment: ............................................................................ 15

    2.A.5.  Nondiscrimination:.................................................................................................. 16

  2.B.  GENERAL CONDITIONS OF APPOINTMENT AND REAPPOINTMENT ............................... 16

    2.B.1.  Basic Responsibilities and Requirements:................................................................ 16

    2.B.2.  Burden of Providing Information: ............................................................................ 20

  2.C.  APPLICATION .................................................................................................................. 21

    2.C.1.  Information: ............................................................................................................. 21

    2.C.2. Grant of Immunity and Authorization to Obtain/Release Information: ................... 22

ARTICLE 3 ..................................................................................................................................... 26

PROCEDURE FOR INITIAL APPOINTMENT ...................................................................................... 26

  3.A.  PROCEDURE FOR INITIAL APPOINTMENT...................................................................... 26

    3.A.1.  Pre-Application Process: .......................................................................................... 26

    3.A.2.  Initial Review of Application: ................................................................................... 26

    3.A.3.  Steps to Be Followed for All Initial Applicants: ....................................................... 27

    3.A.4.  Department Chief and/or Vice Chief Procedure:..................................................... 27

    3.A.5.  Credentials Committee Procedure: .......................................................................... 28

    3.A.6.  MEC Recommendation: ........................................................................................... 29

    3.A.7.  Board Action:........................................................................................................... 30

    3.A.8.  Time Periods for Processing:.................................................................................... 31

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

ARTICLE 4 ....................................................................................................................... 32

CLINICAL PRIVILEGES ....................................................................................................... 32

    4.A.   CLINICAL PRIVILEGES ........................................................................................ 32

        4.A.1.  General: .................................................................................................. 32

        4.A.2.  Rules Governing Exercise of Core Privileges: ........................................ 34

        4.A.3.  Privilege Modifications and Waivers: ..................................................... 34

        4.A.4.  Clinical Privileges for New Procedures: ................................................. 38

        4.A.5.  Clinical Privileges That Cross Specialty Lines: ...................................... 40

        4.A.6.  Clinical Privileges for Dentists and Non-MD/DO Oral and Maxillofacial Surgeons: ................ 42

        4.A.7.  Clinical Privileges for Podiatrists: .......................................................... 43

        4.A.8.  Physicians in Training: ............................................................................ 43

        4.A.9.  Telemedicine Privileges: ........................................................................ 44

    4.B.   TEMPORARY CLINICAL PRIVILEGES ................................................................... 45

        4.B.1.  Eligibility to Request Temporary Clinical Privileges: ............................ 45

        4.B.2.  Supervision Requirements: .................................................................... 48

        4.B.3.  Withdrawal of Temporary Clinical Privileges: ...................................... 48

    4.C.   EMERGENCY SITUATIONS .................................................................................. 49

    4.D.   DISASTER PRIVILEGES ....................................................................................... 49

    4.E.   CONTRACTS FOR SERVICES ............................................................................... 52

ARTICLE 5 ....................................................................................................................... 55

PROCEDURE FOR REAPPOINTMENT ................................................................................ 55

    5.A.   PROCEDURE FOR REAPPOINTMENT .................................................................. 55

        5.A.1.  Eligibility for Reappointment: ................................................................ 55

        5.A.2.  Factors for Evaluation: ........................................................................... 56

        5.A.3.  Reappointment Application: .................................................................. 56

        5.A.4.  Processing Applications for Reappointment: ......................................... 57

        5.A.5.  Conditional Reappointments: ................................................................ 58

        5.A.6.  Potential Adverse Recommendation: ..................................................... 58

        5.A.7.  Time Periods for Processing: .................................................................. 59

ARTICLE 6 ....................................................................................................................... 60

QUESTIONS INVOLVING MEDICAL STAFF MEMBERS ........................................................ 60

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

6.A.  COLLEGIAL EFFORTS AND PROGRESSIVE STEPS ........................................................... 60

6.B.  PROFESSIONAL PRACTICE EVALUATION ACTIVITIES........................................................ 62

6.C.  INVESTIGATIONS ............................................................................................................. 62

    6.C.1.  Initial Review: ........................................................................................................... 62

    6.C.2.  Initiation of Investigation: ......................................................................................... 63

    6.C.3.  Investigative Procedure:............................................................................................ 64

    6.C.4.  Recommendation:...................................................................................................... 68

6.D.  PRECAUTIONARY SUSPENSION OR RESTRICTION OF CLINICAL PRIVILEGES ................... 69

    6.D.1.  Grounds for Precautionary Suspension or Restriction: ............................................. 69

    6.D.3.  MEC Procedure: ......................................................................................................... 71

    6.D.4.  Care of Patients:......................................................................................................... 72

6.E.  AUTOMATIC RELINQUISHMENT/ACTIONS ..................................................................... 72

    6.E.1.  Failure to Complete Medical Records: ....................................................................... 72

    6.E.2.  Action by Government Agency or Insurer and Failure to Satisfy ............................... 72

    Threshold Eligibility Criteria: ............................................................................................... 72

    6.E.3.  Failure to Complete or Comply with Training or Educational Requirements: ........... 74

    6.E.4.  Failure to Pay Medical Staff Dues:............................................................................. 75

    6.E.5.  Failure to Provide Requested Information:................................................................ 75

    6.E.6.  Failure to Attend Special Meeting:............................................................................ 75

6.F.  LEAVES OF ABSENCE ....................................................................................................... 76

    6.F.1.  Initiation: ................................................................................................................... 76

    6.F.2.  Duties of Member on Leave: ..................................................................................... 77

    6.F.3.  Reinstatement: .......................................................................................................... 77

ARTICLE 7 ................................................................................................................................ 79

HEARING AND APPEAL PROCEDURES ...................................................................................... 79

7.A.  INITIATION OF HEARING.................................................................................................. 79

    7.A.1.  Grounds for Hearing: ................................................................................................. 79

    7.A.2.  Actions Not Grounds for Hearing:............................................................................. 80

7.B.  THE HEARING .................................................................................................................. 82

    7.B.1.  Notice of Recommendation: ...................................................................................... 82

    7.B.2.  Request for Hearing: .................................................................................................. 83

CHARLESTON AREA MEDICAL CENTER
Credentials Policy

7.B.3. Notice of Hearing and Statement of Reasons: ..................................................... 83

7.B.4. Hearing Panel, Presiding Officer, and Hearing Officer: ......................................... 84

7.B.5. Counsel: ............................................................................................................. 87

7.C. PRE-HEARING PROCEDURES ................................................................................. 87

7.C.1. General Procedures: ........................................................................................... 87

7.C.2. Time Frames: ...................................................................................................... 88

7.C.3. Witness List: ....................................................................................................... 88

7.C.4. Provision of Relevant Information: ...................................................................... 89

7.C.5. Pre-Hearing Conference: .................................................................................... 90

7.C.6. Stipulations: ....................................................................................................... 90

7.C.7. Provision of Information to the Hearing Panel: .................................................... 90

7.D. HEARING PROCEDURES ......................................................................................... 91

7.D.1. Rights of Both Sides and the Hearing Panel at the Hearing: ................................ 91

7.D.2. Record of Hearing: ............................................................................................. 91

7.D.3. Failure to Appear: ............................................................................................... 92

7.D.4. Presence of Hearing Panel Members: ................................................................. 92

7.D.5. Persons to Be Present: ........................................................................................ 92

7.D.6. Order of Presentation: ........................................................................................ 92

7.D.7. Admissibility of Evidence: ................................................................................... 92

7.D.8. Post-Hearing Statement: .................................................................................... 93

7.D.9. Postponements and Extensions: ......................................................................... 93

7.E. HEARING CONCLUSION, DELIBERATIONS, AND RECOMMENDATIONS ................. 93

7.E.1. Basis of Hearing Panel Recommendation: ........................................................... 93

7.E.2. Deliberations and Recommendation of the Hearing Panel: ................................... 93

7.E.3. Disposition of Hearing Panel Report: .................................................................. 94

7.F. APPEAL PROCEDURE .............................................................................................. 94

7.F.1. Time for Appeal: ................................................................................................. 94

7.F.2. Grounds for Appeal: ........................................................................................... 94

7.F.3. Time, Place and Notice: ...................................................................................... 95

7.F.4. Nature of Appellate Review: ............................................................................... 95

7.G. BOARD ACTION ...................................................................................................... 96

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

7.G.1. Final Decision of the Board:..................................................................................96

7.G.2. Further Review:.........................................................................................................96

7.G.3. Right to One Hearing and One Appeal Only: .....................................................96

ARTICLE 8 ..............................................................................................................................98

CONFLICT OF INTEREST GUIDELINES FOR CREDENTIALING, PRIVILEGING, ..........98

AND PROFESSIONAL PRACTICE EVALUATION ACTIVITIES.........................................98

8.A.1. General Principles: ...................................................................................................98

8.A.2. Process for Identifying Conflicts of Interest:.......................................................99

8.A.3. Implementation of Conflict of Interest Guidelines in **Appendix A:** ...........99

ARTICLE 9 ............................................................................................................................105

CONFIDENTIALITY AND PEER REVIEW PROTECTION................................................105

9.A.  CONFIDENTIALITY....................................................................................................105

9.B.  PEER REVIEW PROTECTION ...................................................................................105

ARTICLE 10 ..........................................................................................................................107

AMENDMENTS AND ADOPTION ....................................................................................107

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

ARTICLE 1

GENERAL

## 1.A.  DEFINITIONS

The following definitions shall apply to terms used in this Policy:

(1)     "ALLIED HEALTH PROFESSIONALS" ("AHPs") means individuals other than Medical Staff members who are authorized by law and by the Hospital to provide patient care services within the Hospital.  All AHPs are described as Category I, Category II, or Category III practitioners in the Medical Staff Bylaws documents:

- "CATEGORY I PRACTITIONER" means a Licensed Independent Practitioner, a type of Allied Health Professional who is permitted by law and by the Hospital to provide patient care services without direction or supervision, within the scope of his or her license and consistent with the clinical privileges granted.  Category I practitioners also include those physicians not appointed to the Medical Staff who seek to exercise certain limited clinical privileges at the Hospital under the conditions set forth in the AHP Policy (i.e., moonlighting residents).  **See Appendix A to the AHP Policy.**

- "CATEGORY II PRACTITIONER" means an Advanced Practice Professional, a type of Allied Health Professional who provides a medical level of care or performs surgical tasks consistent with granted clinical privileges, but who is required by law and/or the Hospital to exercise some or all of those clinical privileges under the direction of, or in collaboration with, a Supervising Physician pursuant to a written supervision or collaborative agreement.  **See Appendix B to the AHP Policy.**

- "CATEGORY III PRACTITIONER" means a Clinical Assistant, a type of Allied Health Professional who is permitted by law or the Hospital to function only under the

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

direction of a Supervising Physician, pursuant to a written supervision agreement and consistent with the scope of practice granted.  All aspects of the clinical practice of Category III practitioners at the Hospital shall be assessed and managed by Human Resources in accordance with Human Resources policies and procedures, and the provisions of the AHP Policy shall specifically not apply. Hereafter, as used in this Policy, the AHP Policy, and the Medical Staff Bylaws, the term "Allied Health Professional" shall mean Category I and Category II practitioners only. **See Appendix C to the AHP Policy.**

(2)     "BOARD" means the Board of Trustees of Charleston Area Medical Center, or its designated committee.

(3)     "CHIEF EXECUTIVE OFFICER" ("CEO") means the individual appointed by the Board to act on its behalf in the overall management of the Hospital.

(4)     "CHIEF MEDICAL OFFICER" ("CMO") means the individual appointed by the CEO to act as the chief medical officer of the Hospital, in cooperation with the Chief of Staff.

(5)     "CLINICAL PRIVILEGES" or "PRIVILEGES" means the authorization granted by the Board to render specific patient care services, for which the Medical Staff Leaders and Board have developed eligibility and other credentialing criteria and focused and ongoing professional practice evaluation standards.

(6)     "CORE PRIVILEGES" means a defined grouping of privileges for a specialty or subspecialty that includes the fundamental patient care services that are routinely taught in residency and/or fellowship training for that specialty or subspecialty and which have been determined by the Medical Staff Leaders and Board to require closely related skills and experience.

(7)     "DAYS" means calendar days.

(8)     "DENTIST" means a Doctor of Dental Surgery ("D.D.S.") licensed by the State of West Virginia or Doctor of Dental Medicine ("D.D.M."), licensed by the State of West Virginia.

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

(9)     "EX OFFICIO" means service as a standing or appointed member of a body by virtue of an office or position held and, unless otherwise expressly provided, means without voting rights

(10)    "HOSPITAL" means Charleston Area Medical Center and its provider-based clinics.

(11)    "INVESTIGATION" means a non-routine, formal process to review questions or concerns pertaining to a practitioner.  Only the MEC has the authority to initiate and conduct an investigation.  By contrast, the processes that address issues of clinical performance, professional conduct, and health involving practitioners that utilize collegial efforts or progressive steps do not constitute investigations.

(12)    "MEDICAL EXECUTIVE COMMITTEE" ("MEC") means the Executive Committee of the Medical Staff.

(13)    "MEDICAL STAFF" means all physicians, dentists, oral surgeons, podiatrists, and psychologists who have been appointed to the Medical Staff by the Board.

(14)    "MEDICAL STAFF LEADER" means any Medical Staff Officer, department chief, vice chief, and committee chair.

(15)    "MEMBER" means any physician, dentist, oral surgeon, podiatrist, or psychologist who has been granted Medical Staff appointment by the Board.

(16)    "NOTICE" means written communication by regular U.S. mail, e-mail, facsimile, website, Hospital mail, hand delivery, or other electronic method.

(17)    "ORAL SURGEON" means a dentist with advanced training qualifying him or her for board certification by the American Board of Oral and Maxillofacial Surgery.

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

(18)   "ORGANIZED HEALTH CARE ARRANGEMENT" ("OHCA") means the term used by the HIPAA Privacy Rule which permits the Hospital and Medical Staff to use joint notice of privacy practices information when patients are admitted to the Hospital.  Practically speaking, being part of an OHCA allows the members of the Medical Staff to rely upon the Hospital notice of privacy practices and therefore relieves Medical Staff members of their responsibility to provide a separate notice when members consult or otherwise treat Hospital inpatients.

(19)   "PATIENT CONTACT" includes any admission, consultation, procedure, response to emergency call, evaluation, treatment, or service performed in the Hospital or its provider-based clinics.  For the purposes of OPPE/FPPE, providers may submit data from directly affiliated outpatient treatment locations, such as WVU or Children's Medicine Center.

(20)   "PERMISSION TO PRACTICE" means the authorization granted to Allied Health Professionals to exercise clinical privileges or a scope of practice.

(21)   "PHYSICIAN" means an individual with an M.D. or D.O. degree who is licensed by the State of West Virginia to practice medicine.

(22)   "PODIATRIST" means a Doctor of Podiatric Medicine ("DPM") licensed by the State of West Virginia with advanced training qualifying for board certification by the American Board of Podiatric Medicine.

(23)   "PSYCHOLOGIST" means an individual with a Ph.D. or Psy.D. in clinical psychology licensed by the State of West Virginia.

(24)   "RESTRICTION" means a professional review action that:

(a)   is recommended by the MEC as part of an investigation or agreed to by the practitioner while he or she is under investigation or in exchange for the MEC not conducting an investigation or taking an adverse professional review action; and

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

(b)     limits the individual's ability to independently exercise his or her clinical judgment (i.e., a mandatory concurring consulting requirement in which the consultant must approve the course of treatment in advance or a proctoring requirement in which the proctor must be present for the case and has the authority to intervene in the case, if necessary).

Restrictions do not include the following, whether recommended by the MEC or by any other Medical Staff committee:

(a)     general consultation requirements, in which the practitioner agrees to seek input from a consultant prior to providing care;

(b)     observational proctoring requirements, in which the practitioner agrees to have a proctor present to observe his or her provision of care; and

(c)     other collegial performance improvement efforts, including Informational Letters, Educational Letters, or Performance Improvement Plans that are suggested by the Medical Staff leadership and voluntarily agreed to by the practitioner as a part of the routine PPE process.

(25)   "SCOPE OF PRACTICE" means the authorization granted to a Category III practitioner to perform certain clinical activities and functions under the supervision of, or in collaboration with, a Supervising Physician.

(26)   "SPECIAL NOTICE" means hand delivery, certified mail (return receipt requested), or overnight delivery service providing receipt.

(27)   "SPECIAL PRIVILEGES" means privileges that fall outside of the core privileges for a given specialty, which require additional education, training, and/or experience beyond that required for core privileges in order to demonstrate competence.

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

(28) "SUPERVISING PHYSICIAN" means a member of the Medical Staff with clinical privileges, who has agreed in writing to supervise or collaborate with a Category II or Category III practitioner and to accept responsibility for the actions of the Category II or Category III practitioner while he or she is practicing in the Hospital.

(29) "SUPERVISION" means the supervision of (or collaboration with) a Category II or Category III practitioner by a Supervising Physician, that may or may not require the actual presence of the Supervising Physician, but that does require, at a minimum, that the Supervising Physician be readily available for consultation. The requisite level of supervision (Indirect-Offsite, Indirect-Onsite, or Direct) shall be determined at the time each Category II or Category III practitioner is credentialed and shall be consistent with any applicable written supervision or collaboration agreement that may exist. ("Indirect Offsite" supervision means that the physician is immediately available by phone, "Indirect-Onsite" supervision means that the physician is on the Hospital's campus, and "Direct" supervision means that the physician is in the same room.)

(30) "TELEMEDICINE" means the exchange of medical information from one site to another via electronic communications for the purpose of providing patient care, treatment, and services.

(31) "UNASSIGNED PATIENT" means any individual who comes to the Hospital for care and treatment who does not have an attending physician, or whose attending physician or designated alternate is unavailable to attend the patient, or who does not want the prior attending physician to provide him/her care while a patient at the Hospital.

### 1.B. DELEGATION OF FUNCTIONS

(1) The Credentials Committee is responsible for the credentialing process described in this Policy, subject to the oversight of the Medical Executive Committee and Board. To promote a prompt and effective review process, the Credentials Committee hereby expressly delegates to the Medical Staff Services representatives, Medical Staff Leaders, and the CMO the authority to perform the functions described in this Policy on its behalf. Actions taken by these individuals will be reported to and reviewed by the Credentials Committee as set forth in this Policy.

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

(2)     When a function under this Policy is to be carried out by a member of Hospital management, by a Medical Staff Leader, or by a Medical Staff committee, the individual, or the committee through its chair, may delegate performance of the function to one or more qualified designees who are Medical Staff members or Hospital employees (or a committee of such individuals). Any such designee must treat and maintain all credentialing, privileging, and peer review information in a strictly confidential manner and is bound by all other terms, conditions, and requirements of the Medical Staff Bylaws and related Policies.  In addition, the delegating individual or committee is responsible for ensuring that the designee appropriately performs the function in question.  Any documentation created by the designee are records of the committee that is ultimately responsible for the review in a particular matter.

(3)     When an individual assigned a function under this Policy is unavailable or unable to perform a necessary function, one or more of the Medical Staff Leaders may perform the function personally or delegate it to another qualified individual, as noted above.

## 1.C.  SUBSTANTIAL COMPLIANCE

While every effort will be made to comply with all provisions of this Policy, substantial compliance is required.  Technical or minor deviations from the procedures set forth within this Policy do not invalidate any review or action taken.

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

ARTICLE 2

QUALIFICATIONS, CONDITIONS, AND RESPONSIBILITIES

2.A.  QUALIFICATIONS

2.A.1.  Threshold Eligibility Criteria:

To be eligible to apply for initial appointment or reappointment to the Medical Staff, physicians, dentists, oral surgeons, podiatrists, and psychologists must:

(a)     have a current, unrestricted license to practice in West Virginia that is not subject to any restrictions, conditions or probationary terms and have never had a license to practice revoked or suspended by any state licensing agency;

(b)     where applicable to their practice, have a current, unrestricted DEA registration and state-controlled substance license and have never had a DEA registration or state-controlled substance license denied, revoked, restricted or suspended;

(c)     be available on a continuous basis, either personally or by arranging appropriate coverage to (i) respond to the needs of any of their patients who have been admitted to the Hospital; and (ii) respond to Emergency Department patients during those times when they are on call in a prompt, efficient, and conscientious manner.  ("Appropriate coverage" means coverage by another member of the Medical Staff with appropriate specialty-specific privileges as determined by the Credentials Committee.)  Compliance with this eligibility requirement means that the practitioner must document that he or she is willing and able to:

(1)     respond within 15 minutes, via phone, to all calls from the Emergency Department and to any "STAT"/urgent contacts from a Hospital floor or unit;

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

    (2)    respond within 30 minutes, via phone, to all other phone calls or pages from the Hospital (routine contacts); and

    (3)    appear in person (or via technology-enabled direct communication and evaluation, i.e., telemedicine) to attend to a patient within 30 minutes of being requested to do so by their primary practice location and within 60 minutes of being requested to do so by any secondary practice location (or more quickly as required for a particular specialty as recommended by the MEC and approved by the Board);

(d)    have current, valid professional liability insurance in a form and in amounts satisfactory to the Hospital. Each member shall maintain in force professional liability insurance consistent with two existing Hospital policies titled *Professional Liability Insurance Satisfactory to CAMC* and *Individual Physician Self-Insured Liability Program Satisfactory to CAMC*. The minimum amounts of required coverage, if any, may be modified from time to time by agreement between the MEC and the Board. The MEC, for good cause shown, may recommend to the Board a time limited waiver of this requirement with regard to such member as long as such waiver is not granted or withheld on an arbitrary, discriminatory or capricious basis. In determining whether an individual exception is appropriate, the following facts may be considered: (1) whether the member has applied for the requisite insurance; (2) whether the member has been refused insurance and, if so, the reasons for such refusal; and (3) whether insurance is reasonably available to the member and, if not, the reasons for its unavailability;

(e)    have not been convicted of, or entered a plea of guilty or no contest to, Medicare, Medicaid, or insurance fraud and abuse, nor have been required to pay civil monetary penalties for the same;

(f)    have not been, and are not currently, excluded, precluded, or debarred from participation in, or have had other adverse actions taken by, Medicare, Medicaid, or other federal or state governmental health care program (OIG; GSA);

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

(g)    have not had Medical Staff appointment or clinical privileges denied, revoked, or terminated by any health care facility or health plan for reasons related to clinical competence or professional conduct;

(h)    have not resigned Medical Staff appointment or relinquished privileges during a Medical Staff investigation or in exchange for not conducting such an investigation;

(i)    have not been convicted of, or entered a plea of guilty or no contest to, any felony; or to any misdemeanor relating to the practice of their profession, other health care matters, insurance or health care fraud or abuse, controlled substances, illegal drugs, child abuse, elder abuse, or violence;

(j)    agree to personally fulfill all responsibilities regarding emergency service call coverage for their specialty or to obtain appropriate coverage (as determined by the Credentials Committee) by another member of the Medical Staff;

(k)    have or agree to make appropriate coverage arrangements (as determined by the Credentials Committee) with other members of the Medical Staff for those times when the individual will be unavailable;

(l)    demonstrate recent clinical activity in their primary area of practice during the last two years;

(m)    meet any current or future eligibility requirements that are applicable to the clinical privileges being sought;

(n)    if applying for privileges in an area that is covered by an exclusive contract, meet the specific requirements set forth in that contract;

(o)    document compliance with all applicable training or educational protocols that may be adopted by the MEC or required by the Board, including, but not limited to, those involving electronic medical records, computerized practitioner order entry ("CPOE"),

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

the privacy and security of protected health information, infection control, and patient safety;

(p)    document compliance with any health screening requirements (i.e., TB testing, mandatory flu vaccines, and infectious agent exposures);

(q)    for those Medical Staff members appointed after September 22, 2004, have successfully completed:

    (1)    a residency or fellowship training program approved by the Accreditation Council for Graduate Medical Education ("ACGME") or the American Osteopathic Association ("AOA") in the specialty in which the applicant seeks clinical privileges;

    (2)    a dental or an oral and maxillofacial surgery training program accredited by the Commission on Dental Accreditation of the American Dental Association ("ADA");

    (3)    a podiatric surgical residency program accredited by the Council on Podiatric Medical Education of the American Podiatric Medical Association; or

    (4)    a clinical psychology training program accredited by the American Psychological Association.

Residents/Fellows nearing completion of their post-graduate training program for whom a satisfactory reference and letter of competency is received from the program director, may apply for appointment, but will not be eligible for activation of clinical privileges until receipt of confirmation of the successful completion of the program for which privileges are being requested; and

(r)    must satisfy the following board certification requirements:

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

New Medical Staff Members

All applicants for initial appointment must be certified in their primary area of practice at the Hospital by the appropriate specialty/subspecialty board of the American Board of Medical Specialties ("ABMS"), the AOA, the American Board of Oral and Maxillofacial Surgery, the ADA, the American Board of Podiatric Surgery, the American Board of Multiple Specialties in Podiatry, or the American Psychological Association. Those applicants who are not board certified at the time of application but who have completed their residency or fellowship training within the last five years shall be eligible for Medical Staff appointment. However, in order to remain eligible, those applicants must achieve board certification in their primary area of practice within five years from the date of completion of their residency or fellowship training.

Existing Medical Staff Members

(1)   Those existing Medical Staff members who were appointed after September 22, 2004 are required to achieve board certification within five years from the date of completion of their residency training and/or accredited fellowship.

(2)   Those existing Medical Staff members who were appointed to the Medical Staff prior to September 22, 2004 shall be governed by the board certification requirements in effect at the time of their appointments.

Maintenance of Certification/Recertification

(1)   Those Medical Staff members appointed on or after September 22, 2004 are required to maintain certification in their primary area of practice at the Hospital and, to the extent required by the applicable specialty/subspecialty board, satisfy recertification requirements.

(2)   Maintenance of Certification/Recertification will be assessed at reappointment for a determination as to whether the individual is eligible for reappointment. Any member seeking reappointment whose board certification has lapsed will have one reappointment cycle or the equivalent of two exam cycles, whichever

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

is the longer period, to remedy the lapse.  Pursuant to Section 2.A.2, the member may also request a waiver of the applicable board certification requirement.

(3)     Any Medical Staff member appointed prior to September 22, 2004 shall be governed by the board certification requirements in effect at the time of his or her appointment.

2.A.2.  Waiver of Threshold Eligibility Criteria:

(a)     Any applicant who does not satisfy one or more of the threshold eligibility criteria outlined above may request that it be waived.  The applicant requesting the waiver bears the burden of demonstrating (i) that he or she is otherwise qualified, and (ii) **exceptional** circumstances exist (e.g., when there is a demonstrated Hospital or Medical Staff need for the services in question).  Exceptional circumstances generally do not include situations where a waiver is sought for the convenience of an applicant (e.g., applicants who wish to defer taking Board examinations).

(b)     A request for a waiver shall be submitted to the Credentials Committee for consideration.  In reviewing the request for a waiver, the Credentials Committee may consider the specific qualifications of the applicant in question, input from the relevant department chief, and the best interests of the Hospital and the communities it serves.  Additionally, the Credentials Committee may, in its discretion, consider the application form and other information supplied by the applicant.  The Credentials Committee's recommendation will be forwarded to the MEC.  Any recommendation to grant a waiver must include the specific basis for the recommendation.

(c)     The MEC shall review the recommendation of the Credentials Committee and make a recommendation to the Board regarding whether to grant or deny the request for a waiver.  Any recommendation to grant a waiver must include the specific basis for the recommendation.

(d)     No applicant is entitled to a waiver or to a hearing if the Board determines not to grant a waiver.  A determination that an applicant is not entitled to a waiver is not a "denial" of appointment or clinical privileges.  Rather, that individual is ineligible to request

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

appointment or clinical privileges.  A determination of ineligibility is not a matter that is reportable to either the State of West Virginia or the National Practitioner Data Bank.

(e)   The granting of a waiver in a particular case does not set a precedent for any other applicant or group of applicants.

(f)   An application for appointment that does not satisfy an eligibility criterion will not be processed until the Board has determined that a waiver should be granted.

(g)   Except for a waiver that may be granted for a time-limited period, a waiver is considered to be permanent and the individual does not have to request a waiver at each subsequent reappointment cycle.  The waiver remains in effect for the entirety of the individual's tenure at the Hospital, so long as the individual continuously remains a member of the Medical Staff.

2.A.3.  Factors for Evaluation:

The six ACGME general competencies (practice-based learning and improvement; patient care and procedural skills; systems-based practice; medical knowledge; interpersonal and communication skills; and professionalism) will be evaluated as part of the appointment and reappointment processes, as reflected in the following factors:

(a)   relevant training, experience, and demonstrated current competence, including medical/clinical knowledge, technical and clinical skills, and clinical judgment, and an understanding of the contexts and systems within which care is provided;

(b)   adherence to the ethics of their profession, continuous professional development, an understanding of and sensitivity to diversity, and responsible attitude toward patients and their profession;

(c)   good reputation and character;

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

(d)      ability to safely and competently perform the clinical privileges requested;

(e)      ability to work harmoniously with others, including, but not limited to, interpersonal and communication skills sufficient to enable them to maintain professional relationships with patients, families, and other members of health care teams; and

(f)      recognition of the importance of, and willingness to support, the Hospital's and Medical Staff's commitment to quality care and a recognition that interpersonal skills and collegiality are essential to the provision of quality patient care.

2.A.4.  No Entitlement to Appointment:

No individual is entitled to receive an application or to be appointed or reappointed to the Medical Staff or to be granted particular clinical privileges merely because he or she:

(a)      is employed by the Hospital or its subsidiaries or has a contract with the Hospital;

(b)      is or is not a member or employee of any particular physician group;

(c)      is licensed to practice a profession in this or any other state;

(d)      is a member of any particular professional organization;

(e)      has had in the past, or currently has, Medical Staff appointment or privileges at any hospital or health care facility;

(f)      resides in the geographic service area of the Hospital; or

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

      (g)      is affiliated with, or under contract to, any managed care plan, insurance plan, HMO, PPO, or other entity.

## 2.A.5. Nondiscrimination:

No individual shall be denied appointment or reappointment on the basis of gender, race, age, religion, national origin, ancestry, sexual orientation, veteran status, or disability unrelated to the provision of safe and competent patient care.

## 2.B.  GENERAL CONDITIONS OF APPOINTMENT AND REAPPOINTMENT

## 2.B.1.  Basic Responsibilities and Requirements:

As a condition of being granted appointment or reappointment, and as a condition of ongoing membership, every member specifically agrees to the following:

      (a)      to provide continuous and timely quality care to all patients for whom the individual has responsibility;

      (b)      to abide by all Bylaws, policies, and Rules and Regulations of the Hospital and Medical Staff in force during the time the individual is appointed;

      (c)      to participate in Medical Staff affairs through committee service, participation in quality improvement and professional practice evaluation activities, and by performing such other reasonable duties and responsibilities as may be assigned;

      (d)      within the scope of his or her clinical privileges, provide emergency service call coverage, consultations, and care for unassigned patients;

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

(e)     to comply with clinical practice or evidence-based medicine protocols that are established by, and must be reported to, regulatory or accrediting agencies or patient safety organizations, including those related to national patient safety initiatives and core measures, or clearly document the clinical reasons for variance;

(f)     to comply with clinical practice or evidence-based medicine protocols pertinent to his or her medical specialty, as may be adopted by the Medical Staff or the Medical Staff leadership, or to clearly document the clinical reasons for variance;

(g)     to notify the Office of Medical Affairs, in writing, of any change in the practitioner's status or any change in the information provided on the individual's application form. This information shall be provided with or without request, at the time the change occurs, and shall include, but not be limited to:

- any and all complaints regarding, or changes in, licensure status or DEA controlled substance authorization,

- changes in professional liability insurance coverage,

- the filing of a professional liability lawsuit against the practitioner,

- changes in the practitioner's Medical Staff status (appointment and/or privileges) at any other hospital or health care entity as a result of peer review activities or in order to avoid initiation of peer review activities,

- knowledge of a criminal investigation involving the member, arrest, charge, indictment, conviction, or a plea of guilty or no contest in any criminal matter other than a misdemeanor traffic citation,

- exclusion or preclusion from participation in Medicare/Medicaid or any sanctions imposed,

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

- knowledge of any investigation of his or her practice by an applicable licensing board,

- any changes in the practitioner's ability to safely and competently exercise clinical privileges or perform the duties and responsibilities of appointment because of health status issues, including, but not limited to, impairment due to addiction, alcohol use, or other similar issue (all of which shall be referred for review under the Practitioner Health Policy), and

- any charge of, or arrest for, driving under the influence ("DUI") (Any DUI incident will be reviewed under the Practitioner Health Policy.);

(h)   to immediately submit to an appropriate evaluation in accordance with the Practitioner Health Policy, which may include, but is not limited to, diagnostic testing such as a blood and/or urine test, when there is the potential for imminent danger to patients or staff or significant concerns exist regarding the individual's ability to safely and competently care for patients (all such requests will be managed in accordance with the Practitioner Health Policy);

(i)   to appear for personal or phone interviews in regard to an application for initial appointment or reappointment, if requested;

(j)   to maintain and monitor a current CAMC e-mail address, which will be the primary mechanism used to communicate all Medical Staff information to the member;

(k)   to provide valid contact information in order to facilitate practitioner-to-practitioner communication (e.g., mobile phone number or valid answering service information);

(l)   to refrain from illegal fee splitting or other illegal inducements relating to patient referral;

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

(m)    to refrain from delegating responsibility for hospitalized patients to any individual who is not qualified or adequately supervised;

(n)    to refrain from deceiving patients as to the identity of any individual providing treatment or services;

(o)    to seek consultation whenever required or necessary;

(p)    to complete in a timely manner all medical and other required records, containing all information required by the Hospital and to utilize the electronic medical record as required;

(q)    to cooperate with all utilization oversight activities;

(r)    to participate in an Organized Health Care Arrangement with the Hospital and abide by the terms of the Hospital's Notice of Privacy Practices with respect to health care delivered in the Hospital;

(s)    to perform all services and conduct himself/herself at all times in a cooperative and professional manner;

(t)    to comply with all applicable training and educational protocols that may be adopted by the MEC or required by the Board, including, but not limited to, those involving electronic medical records, CPOE, the privacy and security of protected health information, infection control, and patient safety;

(u)    to promptly pay any applicable dues, assessments, and/or fines;

(v)    to satisfy continuing medical education requirements; and

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

(w)     that, if there is any misstatement in, or omission from, the application, the Hospital may stop processing the application (or, if appointment has been granted prior to the discovery of a misstatement or omission, appointment and privileges may be deemed to be automatically relinquished). In either situation, there shall be no entitlement to a hearing or appeal. The individual will be informed in writing of the nature of the misstatement or omission and permitted to provide a written response for the Credentials Committee's consideration. If this provision is triggered, the individual may not reapply to the Medical Staff for a period of at least two years.

2.B.2.  Burden of Providing Information:

(a)     Individuals seeking appointment, reappointment, and/or clinical privileges have the burden of producing information deemed adequate by the Hospital for a proper evaluation of current competence, character, ethics, and other qualifications and for resolving any doubts about an individual's qualifications. The information to be produced includes such quality data and other information as may be needed to assist in an appropriate assessment of overall qualifications for appointment, reappointment, and current clinical competence for any requested clinical privileges, including, but not limited to, information from other hospitals, information from the individual's office practice, information from insurers or managed care organizations in which the individual participates, and/or receipt of confidential evaluation forms completed by referring/referred to physicians.

(b)     Individuals seeking appointment, reappointment, and/or clinical privileges have the burden of providing evidence that all the statements made and information given on the application are accurate and complete.

(c)     An application shall be complete when all questions on the application form have been answered, all supporting documentation has been supplied, all information has been verified from primary sources, and all application fees and applicable fines have been paid. An application shall become incomplete if the need arises for new, additional, or clarifying information at any time during the credentialing process. Whenever there is a need for new, additional, or clarifying information – outside of the normal, routine credentialing process – the application will not be processed until the information is provided. If the application continues to be incomplete 30 days after the individual has been notified of the need for new, additional, or clarifying information, the application shall be deemed to be withdrawn.

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

 

 

(d)      The individual seeking appointment, reappointment, and/or clinical privileges is responsible for providing a complete application, including adequate responses from references. An incomplete application shall not be processed.

## 2.C.  APPLICATION

### 2.C.1.  Information:

(a)      Applications for appointment and reappointment shall contain a request for specific clinical privileges and shall require detailed information concerning the individual's professional qualifications. The applications for initial appointment and reappointment existing now and as may be revised are incorporated by reference and made a part of this Policy.

(b)      In addition to other information, the application shall seek the following regarding the applicant's qualifications:

(1)      primary source verification of licensure, education, specific training, experience, current competence, and ECFMG (as applicable);

(2)      current DEA registration (if required);

(3)      two peer recommendations;

(4)      involvement in any professional liability action; and

(5)      profiles from the National Practitioner Data Bank and OIG Medicare/Medicaid Exclusions.

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

(c)     The applicant shall sign the application and certify that he or she is able to perform the privileges requested and the responsibilities of appointment.

### 2.C.2. Grant of Immunity and Authorization to Obtain/Release Information:

By requesting an application and/or applying for appointment, reappointment, or clinical privileges, the individual expressly accepts the conditions set forth in this Section:

(a)     Immunity:

To the fullest extent permitted by law, the individual releases from any and all liability, extends immunity to, and agrees not to sue the Hospital or any of its affiliates or subsidiaries, or any of their Boards, Board members, Medical Staffs, Medical Staff members, Allied Health Professionals, representatives or agents, or any third parties who provide information for any matter relating to appointment, reappointment, clinical privileges, or the individual's qualifications for the same.  This immunity covers any actions, recommendations, communications, and/or disclosures involving the individual that are made, taken, or received by any entities or individuals named above in the course of credentialing and peer review activities.  This immunity also extends to any reports that may be made to government regulatory and licensure boards or agencies pursuant to federal or state law.

(b)     Authorization to Obtain Information from Third Parties:

The individual specifically authorizes the Hospital, its Medical Staff, Medical Staff Leaders, and their authorized representatives (1) to consult with any third party who may have information bearing on the individual's professional qualifications, credentials, clinical competence, character, ability to perform safely and competently, ethics, behavior, or any other matter reasonably having a bearing on his or her qualifications for initial and continued appointment to the Medical Staff and/or clinical privileges, and (2) to obtain any and all communications, reports, records, statements, documents, recommendations or disclosures of third parties that may be relevant to such questions.  The individual also specifically authorizes these third parties to release this information to the Hospital, its Medical Staff, Medical Staff Leaders, and their authorized representatives upon request.  Further, the individual agrees to sign

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

necessary consent forms to permit a consumer reporting agency to conduct a criminal background check on the individual and report the results to the Hospital.

(c)     Authorization to Release Information to Third Parties:

The individual also authorizes Hospital, its Medical Staff, and their authorized representatives to release information to (i) other hospitals, health care facilities, managed care organizations, and their agents when information is requested in order to evaluate his or her professional qualifications for appointment, privileges, and/or participation at the requesting organization/facility; (ii) persons or entities external to the Hospital that are assessing the individual's professional qualifications, competence, or health pursuant to a review that the individual has been notified is occurring under applicable Hospital or Medical Staff policies, and (iii) any government regulatory and licensure boards or agencies pursuant to federal or state law. The disclosure of any peer review information in response to such inquiries does not waive any associated privilege, and any and all disclosures shall be made with the understanding that the receiving entity will only use such peer review information for peer review purposes.

(d)     Authorization to Share Information within CAMC Health System:

The individual specifically authorizes CAMC Health System and its affiliated hospitals to share credentialing and peer review information pertaining to an individual's clinical competence and/or professional conduct. This information may be shared at initial appointment, reappointment, and/or any other time during the individual's appointment to the Medical Staff at a CAMC Health System hospital.

(e)     Hearing and Appeal Procedures:

The individual agrees that the hearing and appeal procedures set forth in this Policy are the sole and exclusive remedy with respect to any professional review action taken by the Hospital.

(f)     Legal Actions:

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

If, despite this Section, an individual institutes legal action challenging any credentialing, privileging, peer review, or other action affecting appointment or clinical privileges, or any report that may be made to a regulatory board or agency, and does not prevail, he or she shall reimburse the Hospital, any of its affiliates or subsidiaries, and any of their Board members, Medical Staff members, Allied Health Professionals, authorized representatives, agents, and employees who are involved in the action for all costs incurred in defending such legal action, including reasonable attorney's fees, expert witness fees, and lost revenue.

(g)    Scope of Section:

All of the provisions in this Section 2.C.2 are applicable in the following situations:

(1)    whether or not appointment or clinical privileges are granted;

(2)    throughout the term of any appointment or reappointment period and thereafter;

(3)    should appointment, reappointment, or clinical privileges be revoked, reduced, restricted, suspended, and/or otherwise affected as part of the Hospital's professional review activities;

(4)    as applicable, to any third-party inquiries received after the individual leaves the Medical Staff about his/her tenure as a member of the Medical Staff; and

(5)    as applicable, to any reports that may be made to government regulatory and licensing boards or agencies pursuant to federal or state law.

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

ARTICLE 3

PROCEDURE FOR INITIAL APPOINTMENT

**3.A.  PROCEDURE FOR INITIAL APPOINTMENT**

**3.A.1.  Pre-Application Process:**

    (a)    Applications for appointment will be on approved forms or submitted through an approved Hospital portal/website.

    (b)    Individuals seeking initial appointment will first be sent a pre-application letter that outlines (i) all the threshold eligibility criteria for appointment outlined earlier in this Policy, and (ii) any applicable eligibility criteria for the clinical privileges being sought.

    (c)    Individuals who **do not** meet these eligibility criteria will not be provided an application, except as outlined in (d) below or where a waiver has been granted. Individuals who **do** meet the basic eligibility criteria will be sent/given access to an application form.

    (d)    Applications may be provided to residents who are in the final six months of their training.  Such applications may be processed, but final action on the applications shall not become effective until all applicable threshold eligibility criteria are satisfied.

**3.A.2.  Initial Review of Application:**

    (a)    A completed application form with copies of all required documents must be returned to the Office of Medical Affairs within 30 days after receipt.  The application must be accompanied by the application fee.

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

(b)     As a preliminary step, the application shall be reviewed by the Office of Medical Affairs to determine that all questions have been answered and that the individual satisfies all threshold eligibility criteria.  Incomplete applications shall not be processed.  Individuals who fail to return completed applications or fail to meet the threshold eligibility criteria shall be notified that their applications shall not be processed.  A determination of ineligibility does not entitle the individual to the hearing and appeal rights outlined in this Policy and is not reportable to any state agency or to the National Practitioner Data Bank.

(c)     The Office of Medical Affairs shall oversee the process of gathering and verifying relevant information, and confirming that all references and other information or materials deemed pertinent have been received.

### 3.A.3.  Steps to Be Followed for All Initial Applicants:

(a)     Evidence of the applicant's character, professional competence, qualifications, behavior, and ethical standing shall be examined.  This information may be contained in the application, and obtained from peer references (from the same discipline where practicable) and from other available sources, including the applicant's past or current department chiefs at other health care entities, residency training director, and others who may have knowledge about the applicant's education, training, experience, and ability to work with others.

(b)     An interview(s) with the applicant may be conducted.  The purpose of the interview is to discuss and review any aspect of the applicant's application, qualifications, and requested clinical privileges.  This interview may be conducted by a combination of any of the following:  the department chief, the vice chief, the Credentials Committee, a Credentials Committee representative, the MEC, the Chief of Staff, the CMO, and/or the CEO.  Applicants do not have the right to be accompanied by counsel to interviews being ` requested by any of the individuals or committees referenced above.

### 3.A.4.  Department Chief and/or Vice Chief Procedure:

(a)     The Office of Medical Affairs shall transmit the complete application and all supporting materials to the chief of each department and/or the chief of each section in which the

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

applicant seeks clinical privileges.  The department chief and/or vice chief shall prepare a written report regarding whether the applicant has satisfied all of the qualifications for appointment and the clinical privileges requested on a form provided by the Office of Medical Affairs.

(b)     The department chief and/or vice chief shall be available to the Credentials Committee, the MEC, and the Board to answer any questions that may be raised with respect to the report and findings of that individual.

### 3.A.5.  Credentials Committee Procedure:

(a)     The Credentials Committee shall review and consider the report prepared by the relevant department chief and/or vice chief and shall make a recommendation.

(b)     The Credentials Committee may use the expertise of the department chief, the vice chief, or any member of the department, or an outside consultant, if additional information is required regarding the applicant's qualifications.

(c)     After determining that an applicant is otherwise qualified for appointment and privileges, the Credentials Committee shall review the applicant's Confirmation of Ability to Perform Privileges Requested to determine if there is any question about the applicant's ability to perform the privileges requested and the responsibilities of appointment.  If so, the Credentials Committee may require the applicant to undergo a physical, mental, and/or behavioral examination by a physician(s) satisfactory to the Credentials Committee.  The results of this examination shall be made available to the Committee for its consideration.  Failure of an applicant to undergo an examination within a reasonable time after being requested to do so in writing by the Credentials Committee shall be considered a voluntary withdrawal of the application and all processing of the application shall cease.  The cost of the health assessment will be borne by the applicant.

(d)     The Credentials Committee may recommend specific conditions on Medical Staff appointment and/or clinical privileges.  These conditions may relate to behavior (e.g., personal code of conduct) or to clinical issues (e.g., general consultation requirements, appropriate documentation requirements, proctoring, completion of CME

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

requirements).  The Credentials Committee may also recommend that appointment be granted for a period of less than two years in order to permit closer monitoring of an individual's compliance with any conditions.  Unless these matters involve the specific recommendations set forth in Section 7.A.1(a) of this Policy, such conditions do not entitle an individual to request the procedural rights set forth in Article 7 of this Policy.

3.A.6.  MEC Recommendation:

(a)     At its next regular meeting after receipt of the written findings and recommendation of the Credentials Committee, the MEC shall:

(1)     adopt the findings and recommendation of the Credentials Committee, as its own; or

(2)     refer the matter back to the Credentials Committee for further consideration and responses to specific questions raised by the MEC prior to its final recommendation; or

(3)     state its reasons in its report and recommendation, along with supporting information, for its disagreement with the Credentials Committee's recommendation.

(b)     If the recommendation of the MEC is to appoint, the recommendation shall be forwarded to the Board.

(c)     If the recommendation of the MEC is unfavorable and would entitle the applicant to request a hearing in accordance with Section 7.A.1(a) of this Policy, the MEC shall forward its recommendation to the CEO, who shall promptly send special notice to the applicant.  The CEO shall then hold the application until after the applicant has completed or waived a hearing and appeal.

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

3.A.7.  Board Action:

    (a)    **Expedited Review**:  The Board may delegate to a committee, consisting of at least two Board members, action on appointment, reappointment, and clinical privileges if there has been a favorable recommendation from the Credentials Committee and the MEC and there is no evidence of any of the following:

        (1)    a current or previously successful challenge to any license or registration;

        (2)    an involuntary termination, limitation, reduction, denial, or loss of appointment or privileges at any other hospital or other entity; or

        (3)    an unusual pattern of, or an excessive number of, professional liability actions resulting in a final judgment against the applicant.

    Any decision reached by the Board Committee to appoint shall be effective immediately and shall be forwarded to the Board for ratification at its next meeting.

    (b)    **Full Board Review**:  When there has been no delegation to the Board Committee, upon receipt of a recommendation that the applicant be granted appointment and clinical privileges, the Board may:

        (1)    appoint the applicant and grant clinical privileges as recommended; or

        (2)    refer the matter back to the Credentials Committee or MEC or to another source inside or outside the Hospital for additional research or information; or

        (3)    reject or modify the recommendation.

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

(c)     Whether an applicant is appointed through the expedited or full Board review process, initial grants of appointment shall generally be for two years, but may be extended for up to six additional months in order to align the applicant with his/her appropriate reappointment cycle.

(d)     If the Board determines to reject a favorable recommendation, it should first discuss the matter with the Chair of the Credentials Committee and the Chair of the MEC.  If the Board's determination remains unfavorable to the applicant, the CEO shall promptly send special notice to the applicant that the applicant is entitled to request a hearing.

(e)     Any final decision by the Board to grant, deny, revise or revoke appointment and/or clinical privileges will be disseminated to appropriate individuals and, as required, reported to appropriate entities.

<u>3.A.8.  Time Periods for Processing</u>:

Once an application is deemed complete, it is expected to be processed within 120 days, unless it becomes incomplete.  This time period is intended to be a guideline only and shall not create any right for the applicant to have the application processed within this precise time period.

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

ARTICLE 4

CLINICAL PRIVILEGES

4.A.  CLINICAL PRIVILEGES

4.A.1.  General:

(a)     Appointment or reappointment shall not confer any clinical privileges or right to admit or treat patients at the Hospital.  Each individual who has been appointed to the Medical Staff is entitled to exercise only those clinical privileges specifically granted by the Board.

(b)     For privilege requests to be processed, the applicant must satisfy any applicable threshold eligibility criteria.

(c)     Requests for clinical privileges that have been grouped into core privileges will not be processed unless the individual has applied for the full core and satisfied all threshold eligibility criteria (or has obtained a waiver in accordance with Section 4.A.2).

(d)     Requests for clinical privileges that are subject to an exclusive contract will not be processed except as consistent with the contract.

(e)     The clinical privileges recommended to the Board shall be based upon consideration of the following factors:

(1)     education, relevant training, experience, and demonstrated current competence, including medical/clinical knowledge, technical and clinical skills, clinical judgment, interpersonal and communication skills, and professionalism

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

with patients, families, and other members of the health care team and peer evaluations relating to these criteria;

(2)    appropriateness of utilization patterns;

(3)    ability to perform the privileges requested competently and safely;

(4)    information resulting from ongoing and focused professional practice evaluation and other performance improvement activities, as applicable;

(5)    availability of other qualified staff members with appropriate privileges (as determined by the Credentials Committee) to provide coverage in case of the applicant's illness or unavailability;

(6)    adequate professional liability insurance coverage for the clinical privileges requested;

(7)    the Hospital's available resources and personnel;

(8)    any previously successful or currently pending challenges to any licensure or registration, or the voluntary or involuntary relinquishment of such licensure or registration;

(9)    any information concerning professional review actions or voluntary or involuntary termination, limitation, reduction, or loss of appointment or clinical privileges at another hospital;

(10)    practitioner-specific data as compared to aggregate data, when available;

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

  (11) morbidity and mortality data related to the specific individual, and when statistically and qualitatively significant and meaningful, when available; and

  (12) professional liability actions, especially any such actions that reflect an unusual pattern or excessive number of actions.

 (f) Core privileges, special privileges, privilege delineations, and/or the criteria for the same will be developed by the relevant vice chief and/or department chief and shall be forwarded to the Credentials Committee for review and recommendation. The Credentials Committee will forward its recommendation to the MEC, which will review the matter and forward its recommendation to the Board for final action.

 (g) The applicant has the burden of establishing his or her qualifications and current competence for all clinical privileges requested.

 (h) The report of the chief of the clinical department (or vice chief) in which privileges are sought shall be forwarded to the Chair of the Credentials Committee and processed as a part of the initial application for staff appointment.

## 4.A.2.  Rules Governing Exercise of Core Privileges:

Individuals who have been granted core privileges shall be required to do the following:

 (a) provide emergency call coverage for patients requiring emergency care within the scope of their core privileges; and

 (b) provide consultations for patients requiring consults within the scope of their core privileges.

## 4.A.3.  Privilege Modifications and Waivers:

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

(a)     Scope. This Section applies to all requests for modification of clinical privileges during the term of appointment (increases and relinquishments), resignation from the Medical Staff, and waivers related to eligibility criteria for privileges or the scope of those privileges.

(b)     Submitting a Request. Requests for privilege modifications, waivers, and resignations must be submitted in writing or electronically to the Office of Medical Affairs.

(c)     Increased Privileges.

    (1)     Requests for increased privileges must state the specific additional clinical privileges requested and provide information sufficient to establish eligibility, as specified in applicable criteria, and current clinical competence.

    (2)     If the individual is eligible and the application is complete, it will be processed in the same manner as an application for initial clinical privileges.

(d)     Waivers.

    (1)     Any individual who does not satisfy one or more eligibility criteria for clinical privileges may request that it be waived. The individual requesting the waiver bears the burden of demonstrating **exceptional** circumstances, and that his or her qualifications are equivalent to, or exceed, the criterion in question.

    (2)     If the individual is requesting a waiver of the requirement that each member apply for the full core of privileges in his or her specialty, the process set forth in this paragraph shall apply.

        (i)     Formal Request: The individual must forward a written or electronic request to the Office of Medical Affairs which must indicate the specific patient care services within the core that the member does not wish to provide, state a good cause basis for the request, and include evidence

that the individual does not provide the patient care services at issue in any health care facility.

(ii)     On-Call Obligations:  By applying for a waiver related to limiting the scope of core privileges, the individual nevertheless agrees to participate in the general on-call schedule for the relevant specialty and to maintain sufficient competency to assist other physicians on the Medical Staff in assessing and stabilizing patients who require services within that specialty, if this call responsibility is required by the Medical Staff leadership after review of the specific circumstances involved.  If, upon assessment, a patient needs a service that is no longer provided by the individual pursuant to the waiver, the individual shall work cooperatively with the other physicians in arranging for another individual with appropriate clinical privileges to care for the patient or, if such an individual is not available, in arranging for the patient's transfer.

(iii)    Review Process:  A request for a waiver shall be submitted to the Credentials Committee for consideration.  In reviewing the request for a waiver, the Credentials Committee shall specifically consider the factors outlined in Paragraph (f) below and may obtain input from the relevant department chief.  The Credentials Committee's recommendation will be forwarded to the MEC, which shall review the recommendation of the Credentials Committee and make a recommendation to the Board regarding whether to grant or deny the request for a waiver.  Any recommendation to grant a waiver must include the specific basis for the recommendation.

(e)     Relinquishment and Resignation of Privileges.

(1)     Relinquishment of Individual Privileges.  A request to relinquish any individual clinical privilege, whether or not part of the core, must provide a good cause basis for the modification of privileges.  All such requests will be processed in the same manner as a request for waiver, as described above.

(2)     Resignation of Appointment and Privileges.  A request to resign Medical Staff appointment and relinquish all clinical privileges must be submitted to the

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

Office of Medical Affairs at least 30 days prior to the resignation date, and must be accompanied by evidence that the individual:

(i)      has completed or will complete all medical records;

(ii)     will be able to appropriately discharge or transfer responsibility for the care of any hospitalized patient who is under the individual's care at the time of resignation; and

(iii)    has completed scheduled emergency service call or has arranged for appropriate coverage to satisfy this responsibility.

(f)    <u>Factors for Consideration</u>. The Medical Staff Leaders and Board may consider the following factors, among others, when deciding whether to recommend or grant a modification (increases and/or relinquishments) or waiver related to privileges:

(1)    the Hospital's mission and ability to serve the health care needs of the community by providing timely, appropriate care within its facilities;

(2)    whether sufficient notice has been given to provide a smooth transition of patient care services;

(3)    fairness to the individual requesting the modification or waiver, including past service and the other demands placed upon the individual;

(4)    fairness to other Medical Staff members who serve on the call roster in the relevant specialty, including the effect that the modification would have on them;

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

(5)     the expectations of other members of the Medical Staff who are in different specialties but who rely on the specialty in question in the care of patients who present to the Hospital;

(6)     any perceived inequities in modifications or waivers being provided to some, but not others;

(7)     any gaps in call coverage that might/would result from an individual's removal from the call roster for the relevant privilege and the feasibility and safety of transferring patients to other facilities in that situation; and

(8)     how the request may affect the Hospital's ability to comply with applicable regulatory requirements, including the Emergency Medical Treatment and Active Labor Act.

(g)     <u>Effective Date</u>.  If the Board grants a modification or waiver related to privileges, it shall specify the date that the modification or waiver will be effective.  Failure of a member to request privilege modifications or waivers in accordance with this section shall, as applicable, result in the member retaining Medical Staff appointment and clinical privileges and all associated responsibilities.

(h)     <u>Procedural Rights</u>.  No individual is entitled to a modification or waiver related to privileges.  Individuals are also not entitled to a hearing or appeal or other process if a waiver or a modification related to a relinquishment of privileges is not granted.

<u>4.A.4.  Clinical Privileges for New Procedures</u>:

(a)     Requests for clinical privileges to perform either a procedure not currently being performed at the Hospital or a new technique to perform an existing procedure (hereafter, "new procedure") shall not be processed until (1) a determination has been made that the procedure shall be offered by the Hospital and (2) criteria to be eligible to request those clinical privileges have been established as set forth in this Section.

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

(b)     As an initial step in the process, the individual seeking to perform the new procedure will prepare and submit a report to the Office of Medical Affairs addressing the following:

(1)     the appropriate education, training, and experience necessary to perform the new procedure safely and competently;

(2)     clinical indications for when the new procedure is appropriate;

(3)     whether there is empirical evidence of improved patient outcomes with the new procedure or other clinical benefits to patients;

(4)     whether proficiency for the new procedure is volume-sensitive and if the requisite volume would be available;

(5)     whether the new procedure is being performed at other similar hospitals and the experiences of those institutions; and

(6)     whether the Hospital currently has the resources, including space, equipment, personnel, and other support services, to safely and effectively perform the new procedure.

Hospital administration shall review this report and consult with the Medical Device & New Technology Committee (as applicable), the department chief, and the Credentials Committee (any of which may conduct additional research as may be necessary), and shall make a preliminary determination as to whether the new procedure should be offered to the community.

(c)     If the preliminary determination of the Hospital is favorable, the Credentials Committee will determine whether the request constitutes a "new procedure" as defined by this Section or if it is an extension of an existing privilege. If it is determined that it does constitute a "new procedure," the Credentials Committee will then develop threshold credentialing criteria to determine those individuals who are eligible to request the

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

clinical privileges at the Hospital.  In developing the criteria, the Credentials Committee may conduct additional research and consult with experts, as necessary, and develop recommendations regarding:

(1)     the appropriate education, training, and experience necessary to perform the procedure or service;

(2)     the clinical indications for when the procedure or service is appropriate;

(3)     the extent (time frame and mechanism) of focused monitoring and supervision that should occur if the privileges are granted in order to confirm competence; and

(4)     the manner in which the procedure would be reviewed as part of the Hospital's ongoing and focused professional practice evaluation activities.

(d)     The Credentials Committee will forward its recommendations to the MEC, which will review the matter and forward its recommendations to the Board for final action.  After the MEC forwards its recommendations to the Board, any individual who believes he/she meets the recommended criteria may apply for the privileges and have those requests processed in accordance with this Policy.

(e)     The Board will make a reasonable effort to render the final decision within 60 days of receipt of the MEC's recommendation regarding (i) whether the procedure or service will be provided at the Hospital and (ii) the minimum threshold qualifications for those privileges.  At this same meeting, the Board may also then act on any requests for these privileges from eligible Medical Staff members who have completed the credentialing review process.

4.A.5.  Clinical Privileges That Cross Specialty Lines:

(a)     Requests for clinical privileges that previously at the Hospital have been exercised only by individuals from another specialty shall not be processed until the steps outlined in

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

this Section have been completed and a determination has been made regarding the individual's eligibility to request the clinical privileges in question.

(b)    As an initial step in the process, the individual seeking the privilege will prepare and submit a report to the Credentials Committee that specifies the minimum qualifications needed to perform the procedure safely and competently, whether the individual's specialty is performing the privilege at other similar hospitals, and the experiences of those other hospitals in terms of patient care outcomes and quality of care. Hospital management will confirm the request is permissible under any existing exclusive contracts or Board directives regarding a closed service that are in place at the Hospital before the request is forwarded to the Credentials Committee.

(c)    The Credentials Committee shall then conduct additional research and consult with experts, as necessary, including those on the Medical Staff (e.g., department chiefs, individuals on the Medical Staff with special interest and/or expertise) and those outside the Hospital (e.g., other hospitals, residency training programs, specialty societies).

(d)    The Credentials Committee may or may not recommend that individuals from different specialties be permitted to request the privileges at issue. If it does, the Committee may develop recommendations regarding:

(1)    the appropriate education, training, and experience necessary to perform the clinical privileges in question;

(2)    the clinical indications for when the procedure is appropriate;

(3)    the manner of addressing the most common complications that arise which may be outside of the scope of the clinical privileges that have been granted to the requesting individual;

(4)    the extent (time frame and mechanism) of focused monitoring and supervision that should occur if the privileges are granted in order to confirm competence;

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

(5)    the manner in which the procedure would be reviewed as part of the Hospital's ongoing and focused professional practice evaluation activities (which may include assessment of both long-term and short-term outcomes for all relevant specialties); and

(6)    the impact, if any, on emergency call responsibilities. (Any questions or concerns in this regard will be forwarded to the MEC, which will work with the relevant specialties to resolve the matter.)

(e)    The Credentials Committee shall forward its recommendations to the MEC, which shall review the matter and forward its recommendations to the Board for final action.  After the MEC forwards its recommendations to the Board, any individual who believes he/she meets the recommended criteria may apply for the privileges and have those requests processed in accordance with this Policy.

(f)    The Board will make a reasonable effort to render the final decision within 60 days of receipt of the MEC's recommendation.  At this same meeting, the Board may also then act on any requests for these privileges from eligible Medical Staff members who have completed the credentialing review process.

### 4.A.6.  Clinical Privileges for Dentists and Non-MD/DO Oral and Maxillofacial Surgeons:

(a)    The scope and extent of surgical procedures that a dentist or a non-MD/DO oral and maxillofacial surgeon may perform in the Hospital shall be delineated and recommended in the same manner as other clinical privileges.

(b)    For any surgical procedure performed by a dentist or a non-MD/DO oral and maxillofacial surgeon, a medical history and physical examination of the patient shall be made and recorded by a physician who is a member of the Medical Staff before dental surgery may be performed.  In addition, a designated physician shall be responsible for the medical care of the patient throughout the period of hospitalization.

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

(c)   The dentist or oral and maxillofacial surgeon shall be responsible for the oral surgery care of the patient, including the appropriate history and physical examination, as well as all other appropriate elements of the patient's record.  Dentists and oral and maxillofacial surgeons may write orders within the scope of their licenses and consistent with relevant Hospital policies and rules and regulations.

4.A.7.  Clinical Privileges for Podiatrists:

(a)   The scope and extent of surgical procedures that a podiatrist may perform in the Hospital shall be delineated and recommended in the same manner as other clinical privileges.

(b)   For any surgical procedure performed by a podiatrist, a medical history and physical examination of the patient shall be made and recorded by a physician who is a member of the Medical Staff before podiatric surgery shall be performed.  In addition, a designated physician shall be responsible for the medical care of the patient throughout the period of hospitalization.

(c)   The podiatrist shall be responsible for the podiatric care of the patient, including the podiatric history and the podiatric physical examination, as well as all appropriate elements of the patient's record.  Podiatrists may write orders which are within the scope of their license and consistent with relevant Hospital policies and rules and regulations.

4.A.8.  Physicians in Training:

(a)   Physicians in training programs (i.e., residency or fellowship) shall not hold appointments to the Medical Staff and shall not be granted specific privileges.  The program director, clinical faculty, and/or attending staff member shall be responsible for the direction and supervision of the on-site and/or day-to-day patient care activities of each trainee, who shall be permitted to perform only those clinical functions set out in curriculum requirements, affiliation agreements and/or training protocols approved by the Graduate Medical Education Committee.  The Associate Vice President for Health Sciences or the CEO of CamCare Health Education and Research Institute shall communicate with the Medical Staff Executive Committee regarding safety, quality,

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

patient care treatment and services provided by its trainees and the related educational needs at least annually and make periodic reports as necessary. The applicable program director shall be responsible for verifying and evaluating the qualifications of each physician in the training program.

(b)     A physician in training at the fellowship level may also request clinical privileges in an area for which he or she has already completed residency training if he or she can demonstrate that all necessary eligibility criteria as set forth in this Policy have been met. Requests for privileges shall be reviewed in accordance with the initial credentialing process outlined in this Policy and, if granted, shall be subject to all relevant oversight provisions, including ongoing and focused professional practice evaluation. Physicians in training at the fellowship level may not be granted clinical privileges in the specialty area in which they are currently in training as part of their training program.

4.A.9.  Telemedicine Privileges:

(a)     A qualified individual may be granted telemedicine privileges regardless of whether the individual is appointed to the Medical Staff.

(b)     Requests for initial or renewed telemedicine privileges shall be processed through one of the following options, as determined by the CMO in consultation with the Chief of Staff:

(1)     A request for telemedicine privileges may be processed through the same process for Medical Staff applications, set forth in this Policy. In such case, the individual must satisfy all qualifications and requirements set forth in this Policy, except those related to geographic location, coverage arrangements, and emergency call responsibilities.

(2)     If the individual requesting telemedicine privileges is practicing at a distant hospital that participates in Medicare or a telemedicine entity as that term is defined by Medicare), a request for telemedicine privileges may be processed using an abbreviated process that relies on the credentialing and privileging decisions made by the distant hospital or telemedicine entity. In such cases, the Hospital must ensure, through a written agreement, that the distant hospital or telemedicine entity will comply with all applicable Medicare regulations and accreditation standards. The distant hospital or telemedicine entity must provide:

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

(i)      confirmation that the practitioner is licensed in West Virginia;

(ii)     a current list of privileges granted to the practitioner;

(iii)    information indicating that the practitioner has actively exercised the relevant privileges during the previous 12 months and has done so in a competent manner;

(iv)     a signed attestation that the practitioner satisfies all of the distant hospital or telemedicine entity's qualifications for the clinical privileges granted;

(v)      a signed attestation that all information provided by the distant hospital or telemedicine entity is complete, accurate, and up-to-date; and

(vi)     any other attestations or information required by the agreement or requested by the Hospital.

This information shall be proved by to the Medical Executive Committee for review and recommendation to the Board for final action.  Notwithstanding the process set forth in this subsection, the Hospital will query the National Practitioner Data Bank and may perform any other inquiries it deems necessary in its sole discretion, including but not limited to conducting a background check and querying exclusion and sanction databases.  The Hospital also may determine that a practitioner is ineligible for telemedicine privileges if the practitioner fails to satisfy the threshold eligibility criteria set forth in this Policy.

(c)      Telemedicine privileges, if granted, shall be for a period of not more than two years.

(d)      Individuals granted telemedicine privileges shall be subject to the Hospital's peer review activities.  The results of the peer review activities, including any adverse events and complaints filed about the practitioner providing telemedicine services from patients, other practitioners or staff, will be shared with the hospital or entity providing telemedicine services.

(e)      Telemedicine privileges granted in conjunction with a contractual agreement shall be incident to and coterminous with the agreement.

## 4.B.  TEMPORARY CLINICAL PRIVILEGES

### 4.B.1.  Eligibility to Request Temporary Clinical Privileges:

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

(a) <u>Applicants</u>.  Temporary privileges for an applicant for initial appointment may be granted by the CMO under the following conditions:

    (1)    the applicant has submitted a complete application, along with the application fee;

    (2)    the verification process is complete, including verification of education, current licensure, relevant training or experience, current competence, ability to exercise the privileges requested, and current professional liability coverage; compliance with privileges criteria; and consideration of information from peer references, the National Practitioner Data Bank, from a criminal background check, and from OIG queries;

    (3)    the applicant demonstrates that (i) there are no current or previously successful challenges to his or her licensure or registration, and (ii) he or she has not been subject to involuntary termination of Medical Staff membership or involuntary limitation, reduction, denial, or loss of clinical privileges, at another health care facility;

    (4)    the application is pending review by the MEC and the Board, following a favorable assessment and recommendation by the department chief, Chief of Staff, and Credentials Committee; and

    (5)    temporary privileges for a Medical Staff applicant will be granted for a maximum period of 120 consecutive days.

(b) <u>Locum Tenens</u>.  The CMO may grant temporary privileges to an individual serving as a locum tenens for a member of the Medical Staff who is on vacation, attending an educational seminar, or ill, to fill a service need, and/or who otherwise needs coverage assistance for a period of time, under the following conditions:

    (1)    the applicant has submitted an appropriate application, along with the application fee;

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

(2)   the verification process is complete, including verification of current licensure, relevant training or experience, current competence (verification of good standing in all hospitals where the individual practiced for at least the previous two years), ability to exercise the privileges requested, and current professional liability coverage; compliance with privileges criteria; and consideration of information from the National Practitioner Data Bank, from a criminal background check, and from OIG queries;

(3)   the applicant demonstrates that (i) there are no current or previously successful challenges to his or her licensure or registration, and (ii) he or she has not been subject to involuntary termination of Medical Staff membership or involuntary limitation, reduction, denial, or loss of clinical privileges, at another health care facility;

(4)   the applicant has received a favorable assessment and recommendation from the department chief, Chief of Staff, and Credentials Committee Chair; and

(5)   the individual may exercise locum tenens privileges for a maximum of 180 days. At the conclusion of 180 days, the individual may be recommended for full staff appointment and clinical privileges by the department chief, Chief of Staff, and Credentials Committee Chair. Such full appointment and clinical privileges will become effective when approved by the Board.

(c)   Visiting. Temporary privileges may also be granted in other limited situations by the CMO when there is an important patient care, treatment, or service need. Specifically, temporary privileges may be granted for situations such as the following:

(1)   the care of a specific patient;

(2)   when a proctoring or consulting physician is needed, but is otherwise unavailable; or

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

(3)        when necessary to prevent a lack or lapse of services in a needed specialty area.

The following factors will be considered and verified prior to the granting of temporary privileges in these situations:  current licensure, relevant training or experience, current competence (verification of good standing in all hospitals where the individual practiced for at least the previous two years), current professional liability coverage acceptable to the Hospital, and results of a query to the National Practitioner Data Bank, from a criminal background check, and from OIG queries.  The grant of clinical privileges in these situations will not exceed 60 days.  In exceptional situations, this period of time may be extended in the discretion of the CMO and the Chief of Staff.

(d)        Automatic Expiration.  All grants of temporary privileges shall automatically expire upon the date specified at the time of initial granting unless further affirmative action is taken by the relevant department chief, the Chair of the Credentials Committee, the Chief of Staff, and the CEO with approval of the Board to renew such temporary privileges.

(e)        Compliance with Bylaws and Policies.  Prior to any temporary privileges being granted, the individual must agree in writing to be bound by the bylaws, rules and regulations, policies, procedures, and protocols of the Medical Staff and the Hospital.

4.B.2.  Supervision Requirements:

Special requirements of supervision and reporting may be imposed on any individual granted temporary clinical privileges.

4.B.3.  Withdrawal of Temporary Clinical Privileges:

(a)        The CEO may withdraw temporary admitting privileges at any time, after consulting with the Chief of Staff, the Chair of the Credentials Committee, the department chief, the vice chief, or the CMO.  Clinical privileges shall then expire as soon as patients have been discharged or alternate care has been arranged.

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

(b)     If the care or safety of patients might be endangered by continued treatment by the individual granted temporary privileges, the department chief, the Chief of Staff, the CMO, or the CEO may immediately withdraw all temporary privileges.  The department chief or the Chief of Staff shall assign to another member of the Medical Staff responsibility for the care of such individual's patients until they are discharged or an appropriate transfer arranged.  Whenever possible, consideration shall be given to the wishes of the patient in the selection of a substitute physician.

## 4.C.  EMERGENCY SITUATIONS

(1)     For the purpose of this section, an "emergency" is defined as a condition which could result in serious or permanent harm to a patient(s) and in which any delay in administering treatment would add to that harm.

(2)     In an emergency situation, a member of the Medical Staff may administer treatment to the extent permitted by his or her license, regardless of department status or specific grant of clinical privileges.

(3)     When the emergency situation no longer exists, the patient shall be assigned by the department chief or the Chief of Staff to a member with appropriate clinical privileges, considering the wishes of the patient.

## 4.D.  DISASTER PRIVILEGES

(1)     When the Hospital's disaster plan has been implemented and the immediate needs of patients in the facility cannot be met, the CEO, the CMO, or the Chief of Staff may use a modified credentialing process to grant disaster privileges to eligible practitioners. Safeguards must be in place to verify that practitioners are competent to provide safe and adequate care.

(2)     Disaster privileges may be granted on a case-by-case basis after verification of identity and licensure.

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

(a)     Verification of Identity. A practitioner's identity may be verified through a valid government-issued photo identification (i.e., driver's license or passport).

(b)     Verification of License.

    (i)     A practitioner's license must either have been issued by West Virginia or be recognized by West Virginia as allowing the practitioner to provide services in the state.

    (ii)     A practitioner's license may be verified in any of the following ways:

        (A)     current hospital picture ID card that clearly identifies the individual's professional designation;

        (B)     current license to practice;

        (C)     primary source verification of the license;

        (D)     identification indicating that the individual has been granted authority to render patient care in disaster circumstances or is a member of a Disaster Medical Assistance Team, the Medical Reserve Corps, the Emergency System for Advance Registration of Volunteer Health Professionals, or other recognized state or federal organizations or groups; or

        (E)     identification by a current Hospital employee or Medical Staff member who possesses personal knowledge regarding the individual's ability to provide services during a disaster.

    (iii)     Primary source verification of a practitioner's license will begin as soon as the immediate situation is under control and must be completed

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

within 72 hours from the time the practitioner begins to provide service at the Hospital.

(iv)     In extraordinary circumstances when primary source verification cannot be completed within 72 hours, it should be completed as soon as possible.  In these situations, there must be documentation of the following: (a) the reason primary source verification could not be performed in the required time frame; (b) evidence of the practitioner's demonstrated ability to continue to provide adequate care; and (c) an attempt to obtain primary source verification as soon as possible.  If a practitioner has not provided care, then primary source verification is not required.

(3)     Duration of Disaster Privileges.

(a)     Disaster privileges will expire automatically when the Hospital's disaster plan is no longer in effect.

(b)     Disaster privileges may be withdrawn at any time, effective immediately, by the CEO, the CMO, or Chief of Staff.

(c)     There is no right to a hearing or appeal pursuant to this Credentials Policy if disaster privileges expire or are withdrawn for any reason.

(d)     After disaster privileges have been in effect for 30 days, the practitioner will be required to submit an application for appointment and clinical privileges or for temporary privileges.  The application must be submitted and processed within 90 days of the date disaster privileges were first granted.  The practitioner may continue to provide services using disaster privileges until the application is acted upon or until temporary privileges are granted.

(4)     The Medical Staff will oversee the care provided by practitioners who are exercising disaster privileges.  This oversight shall be conducted through direct observation,

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

mentoring, medical record review, or other appropriate mechanism developed by the Medical Staff and Hospital.

### 4.E.  CONTRACTS FOR SERVICES

(1)     From time to time, the Hospital may enter into contracts with practitioners and/or groups of practitioners for the performance of clinical and administrative services at the Hospital.  All individuals providing clinical services pursuant to such contracts will obtain and maintain clinical privileges at the Hospital, in accordance with the terms of this Policy.

(2)     To the extent that:

    (a)     any such contract confers the exclusive right to perform specified services to one or more practitioners or groups of practitioners, or

    (b)     the Board by resolution limits the practitioners who may exercise privileges in any clinical specialty to employees of the Hospital or its affiliates,

no other practitioner except those authorized by or pursuant to the contract or resolution may exercise clinical privileges to perform the specified services while the contract or resolution is in effect.  This means that only authorized practitioners are eligible to apply for appointment or reappointment to the Medical Staff and for the clinical privileges in question.  No other applications will be processed.

(3)     Prior to the Hospital signing any exclusive contract and/or passing any Board resolution described in paragraph (2) in a specialty service and/or specialty area that has not previously been subject to such a contract or resolution, the Board will request the MEC's review of the matter.  The MEC (or a subcommittee of its members appointed by the Chief of Staff) will review the quality of care and service implications of the proposed exclusive contract or Board resolution, and provide a report of its findings and recommendations to the Board within 30 days of the Board's request.  As part of its review, the MEC (or subcommittee) may obtain relevant information concerning quality of care and service matters from (i) members of the applicable specialty involved,

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

(ii) members of other specialties who directly utilize or rely on the specialty in question, and (iii) Hospital administration.  However, the actual terms of any such exclusive arrangement or employment contract, and any financial information related to them, including but not limited to the remuneration to be paid to Medical Staff members who may be a party to the arrangement, are not relevant and shall neither be disclosed to the MEC nor discussed as part of the MEC's review.  (Note:  If more than one physician in a relevant specialty area will be affected by the determination of the Board, the following procedures will be coordinated to address all requested meetings in a combined and consolidated manner.)

(4)     After receiving the MEC's report, the Board shall determine whether or not to proceed with the exclusive contract or Board resolution.  If the Board determines to do so, and if that determination would have the effect of preventing an existing Medical Staff member from exercising clinical privileges that had previously been granted, the affected member is entitled to the following notice and review procedures:

(a)     The affected member shall be given at least 30 days' advance notice of the anticipated effective date of the exclusive contract or Board resolution and have the right to meet with the Board or a committee designated by the Board to discuss the matter prior to the contract in question being signed by the Hospital or the Board resolution becoming effective.  Any such meetings must be requested by the affected member and held within 30 days of the notice, unless this time frame is extended by mutual agreement.

(b)     At the meeting, the affected member shall be entitled to present any information that he or she deems relevant to the Board's initial determination to enter into the exclusive contract or enact the resolution.

(c)     If, following this meeting, the Board confirms its initial determination to enter into the exclusive contract or enact the Board resolution, the affected member shall be notified that he or she is ineligible to continue to exercise the clinical privileges covered by the exclusive contract or Board resolution.  In that circumstance, the ineligibility begins as of the effective date of the exclusive contract or Board resolution and continues for as long as the contract or Board resolution is in effect.

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

(d)     The affected member shall not be entitled to any procedural rights beyond those outlined above with respect to the Board's decision or the effect of the decision on his or her clinical privileges, notwithstanding the provisions in Article 7 of this Policy.

(e)     The inability of a practitioner to exercise clinical privileges because of an exclusive contract or resolution is not a matter that requires a report to the West Virginia Professional Licensing Board or to the National Practitioner Data Bank.

(5)     Except as provided in paragraph (1), in the event of any conflict between this Policy or the Medical Staff Bylaws and the terms of any contract, the terms of the contract shall control.

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

ARTICLE 5

PROCEDURE FOR REAPPOINTMENT

## 5.A.  PROCEDURE FOR REAPPOINTMENT

All terms, conditions, requirements, and procedures relating to initial appointment shall apply to continued appointment and clinical privileges and to reappointment.

### 5.A.1.  Eligibility for Reappointment:

To be eligible to apply for reappointment and renewal of clinical privileges, an individual must have, during the previous appointment term:

(a)     completed all continuing medical education requirements;

(b)     satisfied all Medical Staff responsibilities, including payment of dues, fines, and assessments;

(c)     continued to meet all qualifications and criteria for appointment and the clinical privileges requested, including those set forth in Section 2.A.1 of this Policy;

(d)     if applying for clinical privileges, had sufficient patient contacts to enable the assessment of current clinical judgment and competence for the privileges requested. Any individual seeking reappointment who has minimal activity at the Hospital must submit such information as may be requested (such as a copy of his/her confidential quality profile from his/her primary hospital, clinical information from the individual's private office practice, and/or a quality profile from a managed care organization or insurer), before the application shall be considered complete and processed further; and

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

(e)     paid any reappointment processing fees, dues, or assessments.


### 5.A.2.  Factors for Evaluation:

In considering an individual's application for reappointment, the factors listed in Sections 2.A.3 and 2.C.1(b) of this Policy will be considered.  Additionally, the following factors will be evaluated as part of the reappointment process:

(a)     compliance with the Bylaws, rules and regulations, and policies of the Medical Staff and the Hospital;

(b)     participation in Medical Staff duties, including committee assignments, emergency call, consultation requests, quality of medical record documentation, cooperation with case management, participation in quality improvement, utilization activities, and professional practice evaluation activities, and such other reasonable duties and responsibilities as assigned;

(c)     the results of the Hospital's performance improvement and professional practice evaluation activities, taking into consideration practitioner-specific performance data compared to aggregate information concerning other individuals in the same or similar specialty (provided that, other practitioners will not be identified);

(d)     any focused professional practice evaluations;

(e)     verified complaints received from patients, families, and/or staff; and

(f)     other reasonable indicators of continuing qualifications.


### 5.A.3.  Reappointment Application:

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

(a)     An application for reappointment shall be furnished to members at least three months prior to the expiration of their current appointment term.  A completed reappointment application must be returned to the Office of Medical Affairs within 30 days.

(b)     Failure to submit a complete application at least two months prior to the expiration of the member's current term may result in the automatic expiration of appointment and clinical privileges at the end of the then current term of appointment unless the application can still be processed in the normal course, without extraordinary effort on the part of the Office of Medical Affairs and the Medical Staff Leaders.  If an individual's privileges lapse due to a processing delay, subsequent Board action may be to grant reappointment and renewal of clinical privileges using the filed application in accordance with the expedited process set forth in Section 3.A.7.

(c)     Reappointment shall be for a period of not more than two years.

(d)     The application shall be reviewed by the Office of Medical Affairs to determine that all questions have been answered and that the individual satisfies all threshold eligibility criteria for reappointment and for the clinical privileges requested.

(e)     The Office of Medical Affairs shall also oversee the process of gathering and verifying relevant information and shall also be responsible for confirming that all relevant information has been received.

5.A.4.  Processing Applications for Reappointment:

(a)     The Office of Medical Affairs shall forward the application to the relevant department chief and/or vice chief and the application for reappointment shall be processed in a manner consistent with applications for initial appointment.

(b)     Additional information may be requested from the applicant if any questions or concerns are raised with the application or if new privileges are requested.

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

### 5.A.5.  Conditional Reappointments:

(a)    Recommendations for reappointment and renewed privileges may be contingent upon an individual's compliance with certain specific conditions that have been recommended.  These conditions may relate to behavior (e.g., personal code of conduct) or to clinical issues (e.g., general consultation requirements, appropriate documentation requirements, proctoring, completion of CME requirements). Unless the conditions involve the matters set forth in Section 7.A.1(a) of this Policy, such conditions do not entitle an individual to request the procedural rights set forth in Article 7 of this Policy.

(b)    Reappointments may be recommended for periods of less than two years in order to permit closer monitoring of an individual's compliance with any conditions that have been recommended.  A recommendation for reappointment for a period of less than two years does not, in and of itself, entitle an individual to the procedural rights set forth in Article 7.

(c)    In addition, in the event the applicant for reappointment is the subject of an unresolved professional practice evaluation concern, a formal investigation, or a hearing at the time reappointment is being considered, a conditional reappointment for a period of less than two years may be granted pending the completion of that process.

### 5.A.6.  Potential Adverse Recommendation:

(a)    If the Credentials Committee or the MEC is considering a recommendation to deny reappointment or to reduce clinical privileges, the committee chair will notify the member of the possible recommendation and invite the member to meet prior to any final recommendation being made.

(b)    Prior to this meeting, the member will be notified of the general nature of the information supporting the recommendation contemplated.

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

(c)     At the meeting, the member will be invited to discuss, explain, or refute this information.  A summary of the interview will be made and included with the committee's recommendation.

(d)     This meeting is not a hearing, and none of the procedural rules for hearings will apply. The member will not have the right to be accompanied by legal counsel at this meeting and no recording (audio or video) of the meeting shall be permitted or made.

(e)     If the Board determines to reject a favorable recommendation from the MEC, it should first discuss the matter with the Chair of the Credentials Committee and the Chair of the MEC.  If the Board's determination remains unfavorable to the applicant, the CEO shall promptly send special notice to the applicant that the applicant is entitled to request a hearing under this Policy.

5.A.7.  Time Periods for Processing:

Once an application is deemed complete and verified, it is expected to be processed within 120 days, unless it becomes incomplete.  This time period is intended to be a guideline only and shall not create any right for the applicant to have the application processed within this precise time period.

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

ARTICLE 6

QUESTIONS INVOLVING MEDICAL STAFF MEMBERS

6.A.  COLLEGIAL EFFORTS AND PROGRESSIVE STEPS

(1)     This Policy encourages the use of collegial efforts and progressive steps by the Medical Staff Leaders, CMO, and ACMOs to address questions relating to an individual's clinical practice and/or professional conduct.  The goal of these efforts is to arrive at voluntary, responsive actions by the individual to resolve questions that have been raised.

(2)     Collegial efforts and progressive steps include, but are not limited to:

(a)     informal mentoring, coaching, or counseling by a Medical Staff Leader (e.g., advising an individual of policies regarding appropriate behavior, communication issues, emergency call obligations, or the timely and adequate completion of medical records);

(b)     sharing comparative data, including any variations from clinical practice or evidence-based protocols or guidelines, in order to assist the individual with conforming his or her practice to appropriate norms;

(c)     addressing minor performance issues through an Informational Letter;

(d)     sending an Educational Letter that describes opportunities for improvement and provides guidance and suggestions;

(e)     facilitating a formal Collegial Intervention (i.e., a planned, face-to-face meeting between an individual and one or more Medical Staff Leaders, as well as either

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

the CMO and/or an ACMO) in order to directly discuss a matter and the steps needed to be taken to resolve it; and

(f)     developing a Performance Improvement Plan, which may include a wide variety of tools and techniques that can result in a constructive and successful resolution of the concern.

(3)    All of these efforts are fundamental and integral components of the Hospital's professional practice evaluation activities, and are confidential and protected in accordance with West Virginia law.

(4)    Copies of any formal documentation that is prepared by a Medical Staff Leader, CMO, and/or ACMO regarding such collegial efforts, including letters that follow a formal Collegial Intervention, will be included in an individual's confidential file. The individual shall have an opportunity to review any such documentation and respond in writing. The response shall be maintained in that individual's file along with the original documentation.

(5)    Collegial efforts and progressive steps are encouraged, but are not mandatory, and shall be within the discretion of the appropriate Medical Staff Leaders and Hospital management. When a question arises, the Medical Staff and/or Hospital Leaders may:

(a)     address it pursuant to the collegial efforts and progressive steps provisions of this Section;

(b)     refer the matter for review in accordance with the Professional Practice Evaluation Policy, Professionalism Policy, Practitioner Health Policy, and/or other relevant policy; or

(c)     refer it to the MEC for its review and consideration in accordance with Section 6.C of this Article.

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

(6)   Should any recommendation be made or an action taken that entitles an individual to a hearing in accordance with this Policy, the individual is entitled to be accompanied by legal counsel at that hearing.  However, Medical Staff members do not have the right to be accompanied by counsel when the Medical Staff Leaders and Hospital management are engaged in collegial efforts or other progressive steps.  These efforts are intended to resolve issues in a constructive manner and do not involve the formal hearing process.  In addition, there shall be no recording (audio or video) or transcript made of any meetings that involve collegial efforts or progressive steps activities.

## 6.B.  PROFESSIONAL PRACTICE EVALUATION ACTIVITIES

Professional practice evaluation activities shall be conducted in accordance with the Professional Practice Evaluation Policy, the Professionalism Policy, the Practitioner Health Policy, and/or other relevant policy.  Matters that are not satisfactorily resolved through collegial intervention efforts or through one of these policies shall be referred to the MEC for its review in accordance with Section 6.C below.  Such interventions and evaluations, however, are not mandatory prerequisites to MEC review.

## 6.C.  INVESTIGATIONS

### 6.C.1.  Initial Review:

(a)   Where collegial efforts or actions under one or more of the policies referenced in this Article have not resolved an issue, and/or when there is a single instance of such severity that in the discretion of Medical Staff Leaders it requires further review, regarding:

(1)   the clinical competence or clinical practice of any member of the Medical Staff, including the care, treatment or management of a patient or patients;

(2)   the safety or proper care being provided to patients;

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

(3)    the known or suspected violation by any member of the Medical Staff of applicable ethical standards or the Bylaws, rules and regulations, and policies of the Hospital or the Medical Staff; and/or

(4)    conduct by any member of the Medical Staff that is considered lower than the standards of the Hospital or disruptive to the orderly operation of the Hospital or its Medical Staff, including the inability of the member to work harmoniously with others,

the matter may be referred to the Chief of Staff, the department chief, the vice chief, the chair of a standing committee, the CMO, or the CEO.

(b)    In addition, if the Board becomes aware of information that raises concerns about any Medical Staff member, the matter shall be referred to the Chief of Staff, the department chief, the vice chief, the chair of a standing committee, the CMO, or the CEO for review and appropriate action in accordance with this Policy.

(c)    The person to whom the matter is referred shall conduct or arrange for an inquiry to determine whether the question raised has sufficient credibility to warrant further review and, if so, shall forward it in writing to the MEC.

(d)    No action taken pursuant to this Section shall constitute an investigation.

6.C.2.  Initiation of Investigation:

(a)    When a question involving clinical competence or professional conduct is referred to, or raised by, the MEC, the MEC shall review the matter and determine whether to conduct an investigation, to direct the matter to be handled pursuant to another policy (e.g., Professionalism Policy, Practitioner Health Policy, Professional Practice Evaluation Policy), or to proceed in another manner.  The MEC may determine to refer matters involving disruptive behavior or sexual harassment to the Board for further action.  Prior to making its determination, the MEC may discuss the matter with the individual.  An investigation shall begin only after a formal determination by the MEC to do so.  The

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

MEC's determination shall be recorded in the minutes of the meeting where the determination is made.

(b)     The MEC shall inform the individual that an investigation has begun.  The notification shall include:

(1)     the date on which the investigation was commenced;

(2)     the committee that will be conducting the investigation, if already identified;

(3)     a statement that the physician will be given the opportunity to meet with the committee conducting the investigation before the investigation concludes; and

(4)     a copy of Section 6.C.3 of this Policy, which outlines the process for investigations.

This notification may be delayed if, in the MEC's judgment, informing the individual immediately would compromise the investigation or disrupt the operation of the Hospital or Medical Staff.

6.C.3.  Investigative Procedure:

(a)     Selection of Investigating Committee.

Once a determination has been made to begin an investigation, the MEC shall either investigate the matter itself, request that the Credentials Committee conduct the investigation, or appoint an ad hoc committee to conduct the investigation, keeping in mind the conflict of interest guidelines outlined in Article 8.  Any ad hoc committee may include individuals not on the Medical Staff.  Whenever the questions raised concern the clinical competence of the individual under review, the ad hoc committee shall

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

include a peer of the individual (e.g., physician, dentist, oral surgeon, podiatrist, or psychologist).

(b)    <u>Investigating Committee's Review Process.</u>

(1)    The committee conducting the investigation ("investigating committee") shall have the authority to review relevant documents and interview individuals. A summary of each interview will be prepared and the interviewee will be asked to review, revise, and sign his or her summary, which will then be included as an attachment to the investigating committee's report.

(2)    The investigating committee shall also have available to it the full resources of the Medical Staff and the Hospital, including the authority to arrange for an external review, if needed. An external review may be used whenever the Hospital and investigating committee determine that:

(i)    there are ambiguous or conflicting findings by internal reviewers;

(ii)    the clinical expertise needed to conduct the review is not available on the Medical Staff;

(iii)    an external review is advisable to prevent allegations of bias, even if unfounded; or

(iv)    the thoroughness and objectivity of the investigation would be aided by such an external review.

If a decision is made to obtain an external review, the individual under investigation shall be notified of that decision and the nature of the external review. However, the individual under investigation may not demand an external review or dictate who performs the external review. Upon completion of the external review, the individual shall be provided a copy of the reviewer's report and provided an opportunity to respond to it in writing.

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

(3)    The investigating committee may require a physical, mental, and/or behavioral examination of the individual by health care professional(s) acceptable to it. The individual being investigated shall execute a release (in a form approved or provided by the investigating committee) allowing (i) the investigating committee (or its representative) to discuss with the health care professional(s) conducting the examination the reasons for the examination; and (ii) the health care professional(s) conducting the examination to discuss and provide documentation of the results of such examination directly to the investigating committee. The cost of such health examination shall be borne by the individual.

(c)    <u>Meeting with the Investigating Committee.</u>

(1)    The individual under investigation shall have an opportunity to meet with the investigating committee before it makes its report. Prior to this meeting, the individual shall be informed of the general questions being investigated. The investigating committee may also ask the individual to provide written responses to specific questions related to the investigation and/or a written explanation of his or her perspective on the events that led to the investigation for review by the investigating committee prior to the meeting.

(2)    This meeting is not a hearing, and none of the procedural rules for hearings shall apply. No recording (audio or video) or transcript of the meeting shall be permitted or made. Neither the individual being investigated nor the investigating committee will be accompanied by legal counsel at this meeting.

(3)    At the meeting, the individual shall be invited to discuss, explain, or refute the questions that gave rise to the investigation or that have been identified by the investigating committee during its review. A summary of the interview shall be prepared by the investigating committee and included with its report. The interview summary will be shared with the individual prior to the investigating committee finalizing its report, so that he or she may review it and recommend suggested changes. A suggested change should only be accepted if the investigating committee believes it more accurately reflects what occurred at the meeting.

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

(d)     Time Frames for Investigation.

The investigating committee shall make a reasonable effort to complete the investigation and issue its report within 30 days of the commencement of the investigation, provided that an external review is not necessary.  When an external review is necessary, the investigating committee shall make a reasonable effort to complete the investigation and issue its report within 30 days of receiving the results of the external review.  These time frames are intended to serve as guidelines and, as such, shall not be deemed to create any right for an individual to have an investigation completed within such time periods.

(e)     Investigating Committee's Report.

(1)     At the conclusion of the investigation, the investigating committee shall prepare a report of the investigation.  The report should include a summary of the review process (e.g., a list of documents that were reviewed, any individuals who were interviewed, etc.), specific findings and conclusions regarding each concern that was under review, and the investigating committee's recommendations.

(2)     In making its recommendations, the investigating committee shall strive to achieve a consensus as to what is in the best interests of patient care and the smooth operation of the Hospital, while balancing fairness to the individual, recognizing that fairness does not require that the individual agree with the recommendation.  Specifically, the committee may consider:

(i)     relevant literature and clinical practice guidelines, as appropriate;

(ii)    all of the opinions and views that were expressed throughout the review, including report(s) from any external review(s);

(iii)   any information or explanations provided by the individual under review; and

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

          (iv)     other information as deemed relevant, reasonable, and necessary by the investigating committee.

6.C.4.  Recommendation:

    (a)    The MEC may accept, modify, or reject any recommendation it receives from an investigating committee.  Specifically, the MEC may:

        (1)    determine that no action is justified;

        (2)    issue a letter of guidance, counsel, warning, or reprimand;

        (3)    impose conditions for continued appointment;

        (4)    impose a requirement for monitoring, proctoring, or consultation;

        (5)    impose a requirement for additional training or education;

        (6)    recommend reduction of clinical privileges;

        (7)    recommend suspension or restriction of clinical privileges for a term;

        (8)    recommend revocation of appointment and/or clinical privileges; or

        (9)    make any other recommendation that it deems necessary or appropriate.

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

(b)     If a recommendation by the MEC would entitle the individual to request a hearing in accordance with Section 7.A.1, the recommendation shall be forwarded to the CEO, who shall promptly inform the individual by special notice. The CEO shall hold the recommendation until after the individual has completed or waived a hearing and appeal.

(c)     A determination by the MEC that does not entitle the individual to request a hearing shall take effect immediately. All such determinations shall be reported to the Board and will remain in effect unless modified by the Board. In the event the Board considers a modification that would entitle the individual to request a hearing, the CEO shall inform the individual by special notice. No final action shall occur until the individual has completed or waived a hearing and appeal.

(d)     When applicable, any recommendations or actions that are the result of an investigation or hearing and appeal shall be monitored by Medical Staff Leaders on an ongoing basis through the Hospital's performance improvement activities or pursuant to the applicable policies regarding conduct, as appropriate.

## 6.D.  PRECAUTIONARY SUSPENSION OR RESTRICTION OF CLINICAL PRIVILEGES

### 6.D.1.  Grounds for Precautionary Suspension or Restriction:

(a)     Whenever, in their sole discretion, failure to take such action may result in imminent danger to the health and/or safety of any individual, any Medical Staff Officer or department chief, acting in conjunction with the CMO or the CEO, OR the MEC shall have the authority to:

(1)     request that an individual agree to voluntarily refrain from exercising privileges pending further review of the circumstances by the Leadership Council in accordance with Section 6.D.2 of this Policy (agreements to voluntarily refrain may also be utilized in other professional practice evaluation contexts such as performance improvement plans, the details of which are addressed in the relevant professional practice evaluation policy); or

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

(2)     if the individual is unwilling to voluntarily refrain from practicing pending further review, to suspend or restrict all or any portion of the individual's clinical privileges as a precaution, which actions shall be reviewed by the MEC in accordance with Section 6.D.3 of this Policy.

(b)     The above actions can be taken at any time, including, but not limited to, immediately after the occurrence of an event that causes concern, following a pattern of occurrences that raises concern, or following a recommendation of the MEC that would entitle the individual to request a hearing.

(c)     Precautionary suspension or restriction, or an agreement to refrain, is an interim step in the professional review activity, but it is not a complete professional review action in and of itself. It shall not imply any final finding of responsibility for the situation that caused the suspension, restriction, or agreement.

(d)     A precautionary suspension or restriction shall become effective immediately upon imposition, shall immediately be reported in writing to the CEO and the Chief of Staff, and shall remain in effect unless it is modified by the CEO or MEC.

(e)     The individual in question shall be provided a letter via special notice that memorializes his or her agreement to voluntarily refrain from practicing or the imposition of a precautionary suspension and terms related to the same. The correspondence shall also contain a brief written description of the reason(s) for the action, including the names and medical record numbers of the patient(s) involved (if any), and shall be provided to the individual within three days of the action.

6.D.2. Leadership Council Review Process for an Agreement to

Voluntarily Refrain from Practicing:

(a)     The Leadership Council shall review the matter resulting in an individual's agreement to voluntarily refrain from exercising clinical privileges within a reasonable time under the circumstances, not to exceed 14 days. As part of this review, the individual shall be given an opportunity to meet with the Leadership Council. Neither the Leadership Council nor the individual shall be accompanied by legal counsel at this meeting, and no

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

recording (audio or video) or transcript of the meeting shall be permitted or made; however, minutes of the meeting shall be prepared.

(b) After considering the matter resulting in an individual's agreement to voluntarily refrain and the individual's response, if any, the Leadership Council shall determine the appropriate next steps, which may include, but not be limited to, commencing a focused review, referring the matter for review pursuant to another policy, referring the matter to the MEC with a recommendation to initiate a formal investigation, or taking some other action that is deemed appropriate under the circumstances. The Leadership Council shall also determine whether the agreement to voluntarily refrain from practicing should be continued throughout any further review process.

(c) There is no right to a hearing based on an individual's agreement to voluntarily refrain from practicing in accordance with this Section.

6.D.3.  MEC Procedure:

(a) The MEC shall review the matter resulting in a precautionary suspension or restriction within a reasonable time under the circumstances, not to exceed 14 days. As part of this review, the practitioner shall be given an opportunity to meet with the MEC. The individual may propose ways other than precautionary suspension or restriction to protect patients and/or employees, depending on the circumstances. Neither the MEC nor the individual shall be accompanied by legal counsel at this meeting, and no recording (audio or video) or transcript of the meeting shall be permitted or made; however, minutes of the meeting shall be prepared.

(b) After considering the matters resulting in the suspension or restriction and the individual's response, if any, the MEC shall determine the appropriate next steps, which may include, but not be limited to, commencing a focused review or a formal investigation, referring the matter for review pursuant to another policy, or recommending some other action that is deemed appropriate under the circumstances. The MEC shall also determine whether the precautionary suspension or restriction should be continued, modified, or terminated throughout any further review process (and hearing and appeal, if applicable).

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

(c)     There is no right to a hearing based on the imposition or continuation of a precautionary suspension or restriction.

### 6.D.4.  Care of Patients:

(a)     Immediately upon the imposition of a precautionary suspension or restriction, the Chief of Staff, department chief, or the CMO shall assign to another individual with appropriate clinical privileges responsibility for care of the suspended individual's hospitalized patients, or to otherwise aid in implementing the precautionary restriction, as appropriate.  The assignment shall be effective until the patients are discharged.  The wishes of the patient shall be considered in the selection of a covering physician.

(b)     All members of the Medical Staff have a duty to cooperate with the Chief of Staff, the department chief, the MEC, the CMO, and the CEO in enforcing precautionary suspensions or restrictions.

### 6.E.  AUTOMATIC RELINQUISHMENT/ACTIONS

### 6.E.1.  Failure to Complete Medical Records:

Failure to complete medical records and being deemed habitually delinquent (as defined in applicable policies and rules and regulations) twice shall result in automatic relinquishment of appointment and clinical privileges pursuant to the applicable policies and rules and regulations. Relinquishment shall continue until all delinquent records are completed and reinstatement accomplished in accordance with applicable policies and rules and regulations.  Failure to complete the medical records that caused relinquishment within the time required by applicable policies and rules and regulations shall result in automatic resignation from the Medical Staff.

### 6.E.2.  Action by Government Agency or Insurer and Failure to Satisfy

Threshold Eligibility Criteria:

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

(a) Any action taken by any licensing board, professional liability insurance company, court or government agency regarding any of the matters set forth below, or any failure to satisfy any of the threshold eligibility criteria set forth in this Policy, must be promptly reported by the Medical Staff member to the Office of Medical Affairs.

(b) An individual's appointment and clinical privileges shall be automatically relinquished, without the right to the procedural rights outlined in this Policy, if an individual fails to satisfy any of the threshold eligibility criteria set forth in Section 2.A.1 of this Policy on a continuous basis (except for board certification requirements, which shall be assessed at time of reappointment).  This includes, but is not limited to, the following occurrences:

(1) Licensure:  Revocation, expiration, suspension, or the placement of restrictions on an individual's license.

(2) Controlled Substance Authorization:  Revocation, expiration, suspension or the placement of restrictions on an individual's DEA or state controlled substance authorization.

(3) Insurance Coverage:  Termination or lapse of an individual's professional liability insurance coverage, or other action causing the coverage to fall below the minimum required by the Hospital or cease to be in effect, in whole or in part.

(4) Medicare and Medicaid Participation:  Debarment, proposed debarment, termination, exclusion, or preclusion by government action from participation in the Medicare/Medicaid or other federal or state health care programs.

(5) Criminal Activity:  Arrest, charge, indictment, conviction, or a plea of guilty or no contest pertaining to any felony; or to any misdemeanor involving (i) the practice of their profession, (ii) other health care matters, (iii) insurance or health care fraud or abuse, (iv) controlled substances, (v) illegal drugs, (vi) child abuse, (vii) elder abuse, or (viii) violence.  (Any DUI incident will be reviewed under the Practitioner Health Policy.)

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

(c)     Automatic relinquishment shall take effect immediately upon notice to the Hospital and continue until the matter is resolved and the individual is reinstated, if applicable.

(d)     If the underlying matter leading to automatic relinquishment is resolved within 60 days, the individual may request reinstatement.  Failure to resolve the matter within 60 days of the date of relinquishment shall result in an automatic resignation from the Medical Staff, unless an exception is made in extraordinary circumstances utilizing the review process set forth in (e)(2) below.

(e)     <u>Request for Reinstatement</u>.

(1)     Requests for reinstatement following the expiration or lapse of a license, controlled substance authorization, and/or insurance coverage will be processed by the Office of Medical Affairs.  If any questions or concerns are noted, the Office of Medical Affairs will refer the matter for further review in accordance with (e)(2) below.

(2)     All other requests for reinstatement shall be reviewed by the relevant department chief, the Chair of the Credentials Committee, the Chief of Staff, the CMO, and the CEO.  If all these individuals make a favorable recommendation on reinstatement, the Medical Staff member may immediately resume clinical practice at the Hospital.  This determination shall then be forwarded to the Credentials Committee, MEC, and the Board for ratification.  If, however, any of the individuals reviewing the request have any questions or concerns, those questions shall be noted and the reinstatement request shall be forwarded to the full Credentials Committee, MEC, and Board for review and recommendation.

<u>6.E.3.  Failure to Complete or Comply with Training or Educational Requirements</u>:

Failure to complete and/or comply with training or educational requirements that are adopted by the MEC and/or required by the Board, including, but not limited to, those pertinent to electronic medical records, CPOE, the privacy and security of protected health information, infection control, or patient safety shall result in the automatic relinquishment of all clinical privileges.  Any relinquishment will continue in effect until documentation of compliance is

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

provided to the satisfaction of the requesting party.  If the requested information is not provided within 30 days of the date of relinquishment, it shall result in automatic resignation from the Medical Staff.

### 6.E.4.  Failure to Pay Medical Staff Dues:

Failure to pay Medical Staff dues when due shall result in the automatic resignation of Medical Staff appointment and clinical privileges.

### 6.E.5.  Failure to Provide Requested Information:

Failure to provide information pertaining to an individual's qualifications for continued appointment or clinical privileges, in response to a written request from the Credentials Committee, the MEC, the Leadership Council, the Committee for Professional Enhancement, the CMO, the CEO, or any other committee authorized to request such information, shall result in the automatic relinquishment of all clinical privileges.  The information must be provided within the time frame established by the requesting party.  Any relinquishment will continue in effect until the information is provided to the satisfaction of the requesting party.  If the requested information is not provided within 30 days of the date of relinquishment, it shall result in automatic resignation from the Medical Staff.

### 6.E.6.  Failure to Attend Special Meeting:

(a)     Whenever there is a concern regarding the clinical practice or professional conduct involving any individual, a Medical Staff Leader may require the individual to attend a special meeting with one or more of the Medical Staff Leaders and/or with a standing or ad hoc committee of the Medical Staff.

(b)     No legal counsel shall be present at this meeting, and no recording (audio or video) or transcript shall be permitted or made.

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

(c)   The notice to the individual regarding this meeting shall be given by special notice at least three days prior to the meeting and shall inform the individual that attendance at the meeting is mandatory.

(d)   Failure of the individual to attend the meeting shall result in the automatic relinquishment of all clinical privileges until such time as the individual does attend the special meeting.  If the individual does not attend the special meeting within 30 days of the date of relinquishment, it shall result in automatic resignation from the Medical Staff.

## 6.F.  LEAVES OF ABSENCE

### 6.F.1.  Initiation:

(a)   An individual appointed to the Medical Staff may request a leave of absence by submitting a written request to the Office of Medical Affairs.  Except in extraordinary circumstances, this request will be submitted at least 30 days prior to the anticipated start of the leave in order to permit adjustment of the call roster and assure adequate coverage of clinical and/or administrative activities.  The request must state the beginning and ending dates of the leave, which shall not exceed one year, and the reasons for the leave.

(b)   The CMO shall determine whether a request for a leave of absence shall be granted.  In determining whether to grant a request, the CMO shall consult with the Chief of Staff and the relevant department chief.  The granting of a leave of absence, or reinstatement, as appropriate, may be conditioned upon the individual's completion of all medical records.

(c)   Members of the Medical Staff must report to the CMO any time they are away from Medical Staff and/or patient care responsibilities for longer than 30 days and the reason for such absence is related to their physical or mental health or otherwise to their ability to care for patients safely and competently.  Under such circumstances, the CMO, in consultation with the Chief of Staff, may trigger an automatic medical leave of absence.

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

**6.F.2. Duties of Member on Leave:**

> During the leave of absence, the individual shall not exercise any clinical privileges. In addition, the individual shall be excused from all Medical Staff responsibilities (e.g., meeting attendance, committee service, emergency service call obligations) during this period, except for the payment of dues.

**6.F.3. Reinstatement:**

(a)     Individuals requesting reinstatement shall submit (i) a written summary of their professional activities during the leave, (ii) a detailed description of any changes in the individual's status (including any changes in the information provided in the individual's application form) during the leave or an attestation that no such changes have occurred, and (iii) any other information that may be requested by the Hospital.

(b)     Requests for reinstatement shall be reviewed by the relevant department chief, the Chief of Staff, and the CMO. If all these individuals make a favorable recommendation on reinstatement, the Medical Staff member may immediately resume clinical practice at the Hospital. This determination shall then be forwarded to the Credentials Committee, the MEC, and the Board for ratification. If, however, any of the individuals reviewing the request have any questions or concerns, those questions shall be noted and the reinstatement request shall be forwarded to the full Credentials Committee, MEC, and Board for review and recommendation. If a request for reinstatement is not granted, for reasons related to clinical competence or professional conduct, the individual shall be entitled to request a hearing and appeal.

(c)     If the leave of absence was for health reasons, the request for reinstatement must be accompanied by a report from the individual's physician indicating that the individual is physically and/or mentally capable of resuming a hospital practice and safely exercising the clinical privileges requested and the request for reinstatement shall be processed in accordance with the Practitioner Health Policy.

(d)     Absence for longer than one year shall result in automatic relinquishment of Medical Staff appointment and clinical privileges unless an extension is granted by the CMO.

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

Extensions shall be considered only in extraordinary cases where the extension of a leave is in the best interest of the Hospital.

(e)     If an individual's current appointment is due to expire during the leave, the individual must apply for reappointment while on leave or his or her appointment and clinical privileges shall lapse at the end of the appointment period, and the individual shall be required to apply for appointment if he or she wishes to return to the Medical Staff. The member shall remain on leave until formally reinstated through the process outlined in this Policy.

(f)     Failure to request reinstatement from a leave of absence in a timely manner shall be deemed a voluntary resignation of Medical Staff appointment and clinical privileges.

(g)     Leaves of absence are matters of courtesy, not of right.  In the event that it is determined that an individual has not demonstrated good cause for a leave, or where a request for extension is not granted, the determination shall be final, with no recourse to a hearing and appeal.

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

ARTICLE 7

HEARING AND APPEAL PROCEDURES

7.A.  INITIATION OF HEARING

7.A.1.  Grounds for Hearing:

    (a)    An individual is entitled to request a hearing whenever the MEC makes one of the following recommendations:

        (1)    denial of initial appointment to the Medical Staff;

        (2)    denial of reappointment to the Medical Staff;

        (3)    revocation of appointment to the Medical Staff;

        (4)    denial of requested clinical privileges, whether at the time of initial appointment, reappointment, or during the course of appointment;

        (5)    revocation of clinical privileges;

        (6)    suspension of clinical privileges for more than 30 days (other than precautionary suspension which entitles an individual to the procedures outlined in Section 6.D.3 of this Policy, which are deemed fair under the circumstances);

        (7)    a restriction of clinical privileges for more than 30 days; or

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

       (8)     denial of reinstatement from a leave of absence if the reasons relate to clinical competence or professional conduct.

(b)     No other recommendations shall entitle the individual to a hearing.

(c)     If the Board makes any of these determinations without an adverse recommendation by the MEC, an individual would also be entitled to request a hearing.  For ease of use, this Article refers to adverse recommendations of the MEC.  When a hearing is triggered by an adverse recommendation of the Board, any reference in this Article to the "MEC" shall be interpreted as a reference to the "Board."

### 7.A.2.  Actions Not Grounds for Hearing:

None of the following actions shall constitute grounds for a hearing, and they shall take effect without hearing or appeal, provided that the individual shall be entitled to submit a written explanation to be placed into his or her file:

(a)     determination that an applicant for membership fails to meet the threshold eligibility qualifications or criteria for membership;

(b)     ineligibility to request membership or privileges or continue privileges because a relevant specialty is closed under a Medical Staff development plan or covered under an exclusive provider agreement;

(c)     failure to process a request for a privilege when the individual does not meet the eligibility criteria to hold the privilege;

(d)     determination that an application is incomplete or untimely;

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

(e)    determination that an application shall not be processed due to a misstatement or omission;

(f)    change in assigned staff category or a determination that an individual is not eligible for a specific staff category;

(g)    expiration of membership and privileges as a result of failure to submit an application for reappointment within the allowable time period;

(h)    issuance of an Informational Letter, Educational Letter, or any other letter of guidance, counsel, warning, or reprimand;

(i)    determination that conditions, monitoring, supervision, proctoring, or a general consultation requirement (i.e., the individual must obtain a consult but need not get prior approval for the treatment) is appropriate for an individual;

(j)    determination that a requirement for additional training or continuing education is appropriate for an individual;

(k)    the voluntary acceptance of a Performance Improvement Plan;

(l)    any requirement to complete a health assessment, diagnostic testing, a complete physical, mental, or behavioral evaluation, or a clinical competency evaluation pursuant to any Bylaws-related document;

(m)    conducting an investigation into any matter or the appointment of an ad hoc investigating committee;

(n)    grant of conditional appointment or reappointment or of an appointment or reappointment period that is less than two years;

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

(o)     restriction or suspension of clinical privileges for 30 days or less;

(p)     precautionary suspension;

(q)     automatic relinquishment of appointment or privileges or automatic resignation;

(r)     denial of a request for leave of absence, for an extension of a leave or for reinstatement from a leave if the reasons do not relate to clinical competence or professional conduct;

(s)     removal from the on-call roster or any other reading panel;

(t)     withdrawal of temporary privileges;

(u)     requirement to appear for a special meeting;

(v)     termination of any contract with or employment by the Hospital; and

(w)     any other action that is not specifically listed in Section 7.A.1(a).

## 7.B.  THE HEARING

### 7.B.1.  Notice of Recommendation:

The CEO shall promptly give special notice of a recommendation which entitles an individual to request a hearing.  This notice shall contain:

(a)     a statement of the recommendation and the general reasons for it;

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

    **(b)**    a statement that the individual has the right to request a hearing on the recommendation within 30 days of receipt of this notice; and

    **(c)**    a copy of this Article.

## 7.B.2.  Request for Hearing:

An individual has 30 days following receipt of the notice to request a hearing.  The request shall be in writing to the CEO and shall include the name, address, and telephone number of the individual's counsel, if any.  Failure to request a hearing shall constitute waiver of the right to a hearing, and the recommendation shall be transmitted to the Board for final action.

## 7.B.3.  Notice of Hearing and Statement of Reasons:

    **(a)**    The CEO shall schedule the hearing and provide, by special notice to the individual requesting the hearing, the following:

        **(1)**    the time, place, and date of the hearing;

        **(2)**    a proposed list of witnesses who shall give testimony at the hearing and a brief summary of the anticipated testimony;

        **(3)**    the names of the Hearing Panel members (or Hearing Officer) and Presiding Officer, if known; and

        **(4)**    a statement of the specific reasons for the recommendation, including a list of patient records (if applicable), and a general description of the information supporting the recommendation.  This statement does not bar presentation of additional evidence or information at the hearing, so long as the additional material is relevant to the recommendation or the individual's qualifications and

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

the individual has a sufficient opportunity to review and rebut the additional information.

(b)    The hearing shall begin no sooner than 30 days after the notice of the hearing, unless an earlier hearing date has been specifically agreed to in writing by the parties.

### 7.B.4.  Hearing Panel, Presiding Officer, and Hearing Officer:

(a)    Hearing Panel:

The CEO, after consulting with the Chief of Staff, shall appoint a Hearing Panel in accordance with the following guidelines:

(1)    The Hearing Panel shall consist of at least three members, at least one of whom must be a physician, and may include any combination of:

(i)    any member of the Medical Staff, provided the member has not actively participated in the matter at any previous level; and/or

(ii)    physicians or laypersons not connected with the Hospital (i.e., physicians not on the Medical Staff or laypersons not affiliated with the Hospital).

(2)    Knowledge of the underlying peer review matter, in and of itself, shall not preclude the individual from serving on the Panel.

(3)    Employment by, or other contractual arrangement with, the Hospital or an affiliate shall not preclude an individual from serving on the Panel.

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

(4)     The Panel shall not include any individual who is in direct economic competition with the individual requesting the hearing.

(5)     The Panel shall not include any individual who is demonstrated to have an actual bias, prejudice, or conflict of interest that would prevent the individual from fairly and impartially considering the matter.

(6)     In addition, the appointment of the Hearing Panel shall comply with the guidelines set forth in the conflict of interest provisions found in Article 8 of this Policy.

(b)     Presiding Officer:

(1)     The CEO, after consulting with the Chief of Staff, shall appoint a Presiding Officer who shall be an attorney. The Presiding Officer may not be, or represent clients who are, in direct competition with the individual who requested the hearing and may not currently represent the Hospital in any legal matters. The Presiding Officer shall not act as an advocate for either side at the hearing.

(2)     The Presiding Officer shall:

(i)     allow the participants in the hearing to have a reasonable opportunity to be heard and to present evidence, subject to reasonable limits on the number of witnesses and duration of direct and cross-examination;

(ii)     prohibit conduct or presentation of evidence that is cumulative, excessive, irrelevant or abusive or that causes undue delay;

(iii)     maintain decorum throughout the hearing;

(iv)     determine the order of procedure;

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

(v)     rule on all matters of procedure and the admissibility of evidence; and

(vi)    conduct argument by counsel on procedural points within or outside the presence of the Hearing Panel at the Presiding Officer's discretion.

(3)   The Presiding Officer may be advised by legal counsel to the Hospital with regard to the hearing procedure.

(4)   The Presiding Officer may participate in the private deliberations of the Hearing Panel and be a legal advisor to it, but shall not be entitled to vote on its recommendations.

(c)   Hearing Officer:

(1)   As an alternative to a Hearing Panel, for matters limited to issues involving professional conduct, the CEO, after consulting with the Chief of Staff, may appoint a Hearing Officer, preferably an attorney, to perform the functions of a Hearing Panel.  The Hearing Officer may not be, or represent clients who are, in direct economic competition with the individual requesting the hearing.

(2)   If a Hearing Officer is appointed instead of a Hearing Panel, all references in this Article to the "Hearing Panel" or "Presiding Officer" shall be deemed to refer to the Hearing Officer.

(d)   Objections:

Any objection to any member of the Hearing Panel, to the Presiding Officer, or to the Hearing Officer, shall be made in writing, within 10 days of receipt of notice, to the CEO. A copy of such written objection must be provided to the Chief of Staff and must include the basis for the objection.  The Chief of Staff shall be given a reasonable opportunity to comment.  The CEO shall rule on the objection and give notice to the parties.  The CEO

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

may request that the Presiding Officer make a recommendation as to the validity of the objection.

(e)     Compensation:

The Hearing Panel, Presiding Officer, and/or Hearing Officer may be compensated by the Hospital, but the individual requesting the hearing may participate in any such compensation should the individual wish to do so.

### 7.B.5.  Counsel:

The Presiding Officer, Hearing Officer, and counsel for either party may be an attorney at law who is licensed to practice, in good standing, in any state.

### 7.C.  PRE-HEARING PROCEDURES

### 7.C.1.  General Procedures:

(a)     The pre-hearing and hearing processes shall be conducted in an informal manner. Formal rules of evidence or procedure shall not apply.

(b)     Neither party has the right to issue subpoenas or interrogatories or to depose witnesses or other individuals prior to the hearing or to otherwise compel any individual to participate in any portion of the pre-hearing or hearing processes.

(c)     Neither the individual who has requested the hearing, nor any other person acting on behalf of the individual, may contact Hospital employees or Medical Staff members whose names appear on the MEC's witness list or in documents provided pursuant to this Article concerning the subject matter of the hearing, until the Hospital has been notified and has contacted the individuals about their willingness to be interviewed. The Hospital will advise the individual who has requested the hearing once it has

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

contacted such employees or Medical Staff members and confirmed their willingness to meet. Any employee or Medical Staff member may agree or decline to be interviewed by or on behalf of the individual who requested a hearing. If an employee or Medical Staff member who is on the MEC's witness list agrees to be interviewed pursuant to this provision, counsel for the MEC may be present during the interview.

(d) The hearing shall last no more than 15 hours, with each side being afforded approximately seven and one-half hours to present its case, in terms of both direct and cross-examination of witnesses. Both parties are required to prepare their case so that a hearing shall be concluded after a maximum of 15 hours. The Presiding Officer may, after considering any objections, grant limited extensions upon a demonstration of good cause and to the extent compelled by fundamental fairness.

## 7.C.2.  Time Frames:

The following time frames, unless modified by mutual written agreement of the parties, shall govern the timing of pre-hearing procedures:

(a) the pre-hearing conference shall be scheduled at least 14 days prior to the hearing;

(b) the parties shall exchange witness lists and proposed documentary exhibits at least 10 days prior to the pre-hearing conference; and

(c) any objections to witnesses and/or proposed documentary exhibits must be provided at least five days prior to the pre-hearing conference.

## 7.C.3.  Witness List:

(a) At least 10 days before the pre-hearing conference, the individual requesting the hearing shall provide a written list of the names of witnesses expected to offer testimony on his or her behalf.

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

(b)     The witness list shall include a brief summary of the anticipated testimony.

(c)     The witness list of either party may, in the discretion of the Presiding Officer, be amended at any time during the course of the hearing, provided that notice of the change is given to the other party.

**7.C.4.  Provision of Relevant Information:**

(a)     Prior to receiving any confidential documents, the individual requesting the hearing must agree that all documents and information shall be maintained as confidential and shall not be disclosed or used for any purpose outside of the hearing.  The individual must also provide a written representation that his/her counsel and any expert(s) have executed Business Associate agreements in connection with any patient Protected Health Information contained in any documents provided.

(b)     Upon receipt of the above agreement and representation, the individual requesting the hearing shall be provided with a copy of the following:

(1)     copies of, or reasonable access to, all patient medical records referred to in the statement of reasons, at the individual's expense;

(2)     reports of experts relied upon by the MEC;

(3)     copies of relevant minutes (with portions regarding other physicians and unrelated matters deleted); and

(4)     copies of any other documents relied upon by the MEC.

The provision of this information is not intended to waive any privilege under the West Virginia peer review protection statutes.

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

(c)    The individual shall have no right to discovery beyond the above information.  No information shall be provided regarding other practitioners on the Medical Staff.

(d)    At least 10 days prior to the pre-hearing conference (or as otherwise agreed upon by both sides), each party shall provide the other party with its proposed exhibits.  All objections to documents or witnesses shall be submitted in writing at least five days in advance of the pre-hearing conference.  The Presiding Officer shall not entertain subsequent objections unless the party offering the objection demonstrates good cause.

(e)    Evidence unrelated to the reasons for the recommendation or to the individual's qualifications for appointment or the relevant clinical privileges shall be excluded.

### 7.C.5.  Pre-Hearing Conference:

The Presiding Officer shall require the individual and the MEC or their representatives (who may be counsel) to participate in a pre-hearing conference, which shall be held no later than 14 days prior to the hearing.  At the pre-hearing conference, the Presiding Officer shall establish the time to be allotted to each witness's testimony and cross-examination and shall resolve all procedural questions, including any objections to exhibits, witnesses, or the time limitation for the hearing.

### 7.C.6.  Stipulations:

The parties and their counsel, if applicable, shall use their best efforts to develop and agree upon stipulations, so as to provide for a more orderly and efficient hearing by narrowing the issues on which live testimony is reasonably required.

### 7.C.7.  Provision of Information to the Hearing Panel:

The following documents shall be provided to the Hearing Panel in advance of the hearing:  (a) a pre-hearing statement that either party may choose to submit; (b) exhibits offered by the parties following the pre-hearing conference (without the need for authentication); and (c) any stipulations agreed to by the parties.

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

7.D.  HEARING PROCEDURES

7.D.1.  Rights of Both Sides and the Hearing Panel at the Hearing:

    (a)    At a hearing, both sides shall have the following rights, subject to reasonable limits determined by the Presiding Officer:

        (1)    to call and examine witnesses, to the extent they are available and willing to testify;

        (2)    to introduce exhibits;

        (3)    to cross-examine any witness on any matter relevant to the issues;

        (4)    to have representation by counsel who may call, examine, and cross-examine witnesses and present the case; and

        (5)    to submit proposed findings, conclusions, and recommendations to the Hearing Panel as part of the Post-Hearing statement referenced in this Article, following the close of the hearing session(s).

    (b)    If the individual who requested the hearing does not testify, he or she may be called and questioned.

    (c)    The Hearing Panel may question witnesses, request the presence of additional witnesses, and/or request documentary evidence.

7.D.2.  Record of Hearing:

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

A stenographic reporter shall be present to make a record of the hearing. The cost of the reporter shall be borne by the Hospital. Copies of the transcript shall be available at the individual's expense. Oral evidence shall be taken only on oath or affirmation administered by any person entitled to notarize documents in this state.

### 7.D.3. Failure to Appear:

Failure, without good cause, to appear and proceed at the hearing shall constitute a waiver of the right to a hearing and the matter shall be transmitted to the Board for final action.

### 7.D.4. Presence of Hearing Panel Members:

A majority of the Hearing Panel shall be present throughout the hearing. In unusual circumstances when a Hearing Panel member must be absent from any part of the hearing, he or she shall read the entire transcript of the portion of the hearing from which he or she was absent.

### 7.D.5. Persons to Be Present:

The hearing shall be restricted to those individuals involved in the proceeding, the Chief of Staff, the CMO, and the CEO. In addition, administrative personnel may be present as requested by the CEO or the Chief of Staff.

### 7.D.6. Order of Presentation:

The MEC shall first present evidence in support of its recommendation. Thereafter, the burden shall shift to the individual who requested the hearing to present evidence.

### 7.D.7. Admissibility of Evidence:

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

The hearing shall not be conducted according to rules of evidence. Evidence shall not be excluded merely because it is hearsay. Any relevant evidence shall be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the admissibility of such evidence in a court of law. The guiding principle shall be that the record contains information sufficient to allow the Board to decide whether the individual is qualified for appointment and clinical privileges.

### 7.D.8.  Post-Hearing Statement:

Each party shall have the right to submit a written statement, and the Hearing Panel may request that statements be filed, following the close of the hearing.

### 7.D.9.  Postponements and Extensions:

Postponements and extensions of time may be requested by anyone, but shall be permitted only by the Presiding Officer or the CEO on a showing of good cause.

### 7.E.  HEARING CONCLUSION, DELIBERATIONS, AND RECOMMENDATIONS

### 7.E.1.  Basis of Hearing Panel Recommendation:

Consistent with the burden on the individual to demonstrate that he or she satisfies, on a continuing basis, all criteria for initial appointment, reappointment, and clinical privileges, the Hearing Panel shall recommend in favor of the MEC unless it finds that the individual who requested the hearing has proved, by a preponderance of the evidence, that the recommendation that prompted the hearing was arbitrary, capricious, or not supported by credible evidence.

### 7.E.2.  Deliberations and Recommendation of the Hearing Panel:

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

Within 20 days after final adjournment of the hearing (which may be designated as the time the Hearing Panel receives the hearing transcript or any post-hearing statements, whichever is later), the Hearing Panel shall conduct its deliberations outside the presence of any other person except the Presiding Officer. Thereafter, the Hearing Panel shall render a recommendation, accompanied by a report, which shall contain a concise statement of the basis for its recommendation.

### 7.E.3.  Disposition of Hearing Panel Report:

The Hearing Panel shall deliver its report to the CEO. The CEO shall send by special notice a copy of the report to the individual who requested the hearing. The CEO shall also provide a copy of the report to the MEC.

### 7.F.  APPEAL PROCEDURE

### 7.F.1.  Time for Appeal:

(a)    Within 10 days after notice of the Hearing Panel's recommendation, either party may request an appeal. The request shall be in writing, delivered to the CEO either in person or by certified mail, return receipt requested, and shall include a statement of the reasons for appeal and the specific facts or circumstances which justify further review.

(b)    If an appeal is not requested within 10 days, an appeal is deemed to be waived and the Hearing Panel's report and recommendation shall be forwarded to the Board for final action.

### 7.F.2.  Grounds for Appeal:

The grounds for appeal shall be limited to the following:

CHA̲  TON AREA MED̲  CENTER

Credentials Policy

(a)   there was substantial failure by the Hearing Panel to comply with this Policy and/or the Medical Staff Bylaws during the hearing, so as to deny a fair hearing; and/or

(b)   the recommendations of the Hearing Panel were made arbitrarily or capriciously and/or were not supported by credible evidence.

**7.F.3.  Time, Place and Notice:**

Whenever an appeal is requested as set forth in the preceding Sections, the Chair of the Board (or the CEO on behalf of the Chair) shall schedule and arrange for an appeal.  The individual shall be given special notice of the time, place, and date of the appeal.  The appeal shall be held as soon as arrangements can reasonably be made, taking into account the schedules of all the individuals involved.

**7.F.4.  Nature of Appellate Review:**

(a)   The Board may serve as the Review Panel or the Chair of the Board may appoint a Review Panel composed of not less than three persons, either members of the Board or others, including but not limited to reputable persons outside the Hospital, to consider the record upon which the recommendation before it was made and recommend final action to the Board.

(b)   Each party shall have the right to present a written statement in support of its position on appeal.  The party requesting the appeal shall submit a statement first and the other party shall then have ten days to respond.  In its sole discretion, the Review Panel may allow each party or its representative to appear personally and make oral argument not to exceed 30 minutes.

(c)   When requested by either party, the Review Panel may, in its discretion, accept additional oral or written evidence subject to the same rights of cross-examination provided at the Hearing Panel proceedings.  Such additional evidence shall be accepted only if the Review Panel determines that the party seeking to admit it has demonstrated that it is relevant, new evidence that could not have been presented at the hearing, or that any opportunity to admit it at the hearing was improperly denied.

CHAR___TON AREA MED___ CENTER

Credentials Policy

## 7.G.  BOARD ACTION

### 7.G.1.  Final Decision of the Board:

(a)  Within 30 days after the Board (i) considers the appeal as a Review Panel, (ii) receives a recommendation from a separate Review Panel, or (iii) receives the Hearing Panel's report and recommendation when no appeal has been requested, the Board shall consider the matter and take final action.

(b)  The Board may review any information that it deems relevant, including, but not limited to, the findings and recommendations of the MEC, Hearing Panel, and Review Panel (if applicable).  The Board may adopt, modify, or reverse any recommendation that it receives or, in its discretion, refer the matter to any individual or committee for further review and recommendation, or make its own decision based upon the Board's ultimate legal authority for the operation of the Hospital and the quality of care provided.

(c)  The Board shall render its final decision in writing, including specific reasons, and shall send special notice to the individual.  A copy shall also be provided to the MEC for its information.

### 7.G.2.  Further Review:

Except where the matter is referred by the Board for further action and recommendation by any individual or committee, the final decision of the Board shall be effective immediately and shall not be subject to further review.  If the matter is referred for further action and recommendation, such recommendation shall be promptly made to the Board in accordance with the instructions given by the Board.

### 7.G.3.  Right to One Hearing and One Appeal Only:

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

No member of the Medical Staff shall be entitled to more than one hearing and one appellate review on any matter. If the Board denies initial appointment to the Medical Staff or reappointment or revokes the appointment and/or clinical privileges of a current member of the Medical Staff, that individual may not apply for staff appointment or for those clinical privileges for a period of five years unless the Board provides otherwise.

CHAI͟ ͟TON AREA MEDI͟ ͟CENTER

Credentials Policy

ARTICLE 8

CONFLICT OF INTEREST GUIDELINES FOR CREDENTIALING, PRIVILEGING,

AND PROFESSIONAL PRACTICE EVALUATION ACTIVITIES

8.A.1. General Principles:

(a)    All those involved in credentialing, privileging, and professional practice evaluation activities (referred to collectively as "Medical Staff Functions" in this Article) must be sensitive to potential conflicts of interest ("COI") in order to be fair to the individual whose qualifications are under review, to protect the individual with the potential conflict, and to protect the integrity of the review processes.

(b)    It is also essential that peers participate in Medical Staff Functions in order for these activities to be meaningful and effective.  Therefore, whether and how an individual can participate must be evaluated reasonably, taking into consideration common sense and objective principles of fairness.

(c)    A potential conflict of interest depends on the situation and not on the character of the individual.  To promote this understanding, any individual with a potential conflict of interest shall be referred to as an "Interested Member."

(d)    No Medical Staff member has a right to compel the disqualification of another member based on an allegation of conflict of interest.  Rather, that determination is within the discretion of the Medical Staff Leaders or Board chair, guided by this Article.

(e)    The fact that any Medical Staff member chooses to refrain from participation, or is excused from participation, in any Medical Staff Function shall not be interpreted as a finding of an actual conflict that inappropriately influenced the review process.

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

 

 

(f)    **Appendix A** to this Policy is a chart that outlines the conflict of interest guidelines that are applicable to Medical Staff Functions at the Hospital. The remainder of this Article is intended to supplement **Appendix A** and expand upon the guidelines that are summarized in the chart.

## 8.A.2.  Process for Identifying Conflicts of Interest:

(a)    Self-Disclosure.  Any individual involved in Medical Staff Functions must disclose all personal conflicts of interest relevant to those activities to the committee chair, CMO, or ACMO.

(b)    Identification by Others.  Any individual who is concerned about a potential conflict of interest on the part of any other individual who is involved in Medical Staff Functions should inform the committee chair, CMO, or ACMO.

(c)    Identification by Individual Under Review.  An individual who is the subject of review during any Medical Staff Functions is obligated to notify the committee chair, CMO, or ACMO of any known or suspected conflicts of interest by others who are involved in such activities.  Any potential conflict of interest that is not raised timely by the individual under review shall be deemed waived.

## 8.A.3.  Implementation of Conflict of Interest Guidelines in Appendix A:

This section describes how to implement the Conflict of Interest Guidelines found in **Appendix A** of this Policy:

- Paragraph (a) identifies the three COI situations that require special treatment and rules during the performance of Medical Staff Functions, irrespective of the Interested Member's level of participation in the process (e.g., individual reviewer, CPE member, MEC member);

- Paragraph (b) describes the other common situations that raise COI issues during the performance of Medical Staff Functions; and

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

---

- Paragraph (c) describes how to apply the guidelines in **Appendix A** to the common COI situations outlined in (b) at each level of the review processes.

(a)     <u>Three COI Situations That Require Special Treatment and Rules, Irrespective of an Interested Member's Level of Participation:</u>

        (1)     <u>Employment or Contractual Arrangement with the Hospital.</u>  Because Medical Staff Functions are performed on behalf of the Hospital, the interests of those who are employed by, or under contract with, the Hospital are aligned with the Hospital's interest in seeing that those activities are performed effectively, efficiently, and lawfully.  As such, employment by, or other contractual arrangement with, the Hospital does not, in and of itself, preclude an Interested Member from participating in Medical Staff Functions.

        (2)     <u>Self or Family Member.</u>  While Interested Members may provide information to other individuals involved in the review process, an Interested Member should not otherwise participate in the review of his or her own application or the professional practice evaluation of the care he or she provided or in any such activities involving an immediate family member (spouse or domestic partner, parent, child, sibling, or in-law).

        (3)     <u>Relevant Treatment Relationship.</u>  As a general rule, an Interested Member who has provided professional health services to a practitioner whose application or provision of care is under review should not participate in the review process regarding the practitioner.  However, if the patient-physician relationship has terminated <u>and</u> the review process does not involve the health condition for which the practitioner sought professional health services, the Interested Member may participate fully in all Medical Staff Functions.

        Furthermore, even if a current patient-physician relationship exists, the Interested Member may provide information to others involved in the review process if:

CHA͟ ͟TON AREA MED͟ ͟ CENTER

Credentials Policy

 

(i)      the information <u>was not</u> obtained through the treatment relationship, or

(ii)     the information <u>was</u> obtained through the treatment relationship, but the disclosure was authorized by the practitioner under review through the execution of a HIPAA-compliant authorization form.

(b)    <u>Other Common Situations That Raise COI Issues During the Performance of Medical Staff Functions</u>:

Participation by any Interested Member who is in one of the following situations – as it relates to the practitioner under review – will be evaluated under the guidelines outlined in Paragraph (c) and **Appendix A**:

(1)    <u>Significant Financial Relationship</u> (e.g., when the Interested Member and other practitioners: are members of a small, single specialty group; maintain a significant referral relationship; are partners in a business venture; or are individuals practicing in a specialty for which a policy matter – such as clinical privileging criteria – is being considered);

(2)    <u>Direct Competitor</u> (e.g., practitioners in the same specialty, but in different groups);

(3)    <u>Close Friendships</u>;

(4)    <u>History of Personal Conflict</u> (e.g., former partner, ex-spouse, or where there has been demonstrated animosity);

(5)    <u>Personal Involvement in the Care That is Subject to Review</u> (e.g., where the Interested Member provided care in the case under review, but is not the subject of the review);

CHARLESTON AREA MEDICAL CENTER

Credentials Policy

    (6)    <u>Active Involvement in Certain Prior Interventions with the Individual under Review</u> (e.g., where the Interested Member was involved in the development of a prior Performance Improvement Plan <u>or</u> in a disciplinary action involving the individual under review.  This situation does <u>not</u> include participation in initial education or collegial intervention activities (e.g., sending an Educational Letter; meeting collegially with a colleague and sending a follow-up letter)); and/or

    (7)    <u>Formally Raised the Concern about Another Individual</u> (e.g., where the Interested Member's concern triggered the review of another practitioner, as evidenced by the Interested Member's written report regarding the concern (i.e., sent a written concern to a Medical Staff Officer or VPMA, or filed a report through the Hospital's electronic reporting system)).

  (c)    <u>Application of the Guidelines in Appendix A to the Performance of Medical Staff Functions</u>:

    (1)    <u>Individual Reviewers in Credentialing and Professional Practice Evaluation Activities</u>

        An Interested Member may participate as an individual reviewer so long as a check and balance is provided by subsequent review by a Medical Staff committee.  This includes, but is not limited to, the following:

        (i)    participation in the review of applications for initial and renewed membership and clinical privileges (which is subsequently reviewed by the Credentials Committee and/or MEC); and

        (ii)    participation as a case reviewer in professional practice evaluation activities (which is subsequently reviewed by the Leadership Council, Committee for Professional Enhancement, Investigating Committee, and/or MEC).

    (2)    <u>Credentials Committee, Leadership Council, and Committee for Professional Enhancement Members</u>

CHA[   ]TON AREA MED[   ] CENTER

**Credentials Policy**

As a general rule, an Interested Member may fully participate as a member of the Credentials Committee, Leadership Council, and CPE because these committees do not possess any disciplinary authority and do not make any final recommendation that could adversely affect the membership or clinical privileges of a practitioner, which is only within the authority of the MEC and Board.

However, the chairs of these committees always have the discretion to recuse an Interested Member if they determine that the Interested Member's presence or participation would inhibit full and fair discussion of the issue, would skew the recommendation or determination of the committee, or would otherwise be unfair to the practitioner under review.

(3)   Medical Executive Committee

As a general rule, an Interested Member may fully participate as a member of the MEC when it is approving routine and favorable recommendations regarding the granting of initial appointment, reappointments, and clinical privileges.

However, an Interested Member should be recused from the MEC when that committee is considering a matter that could result in an adverse professional review action affecting the Medical Staff membership or clinical privileges of a practitioner. The Interested Member's participation in MEC meetings will be governed by the guidelines regarding recusal that are set forth in **Appendix A**.

(4)   Investigating Committees

Once a formal investigation has been initiated by the MEC, additional steps to manage conflicts of interest should be taken as a precaution. Therefore, an Interested Member should not be appointed as a member of an investigating committee and should not participate in the committee's deliberations or decision-making, but may be interviewed and provide information if necessary for the committee to conduct a full and thorough investigation.

CHAI      ;TON AREA MED;      CENTER

Credentials Policy

(5)    Hearing Panel

An Interested Member should not be appointed as a member of a Hearing Panel and should not participate in the Panel's deliberations or decision-making.

(6)    Board

As a general rule, an Interested Member may fully participate as a member of the Board when it is approving routine and favorable recommendations regarding the granting of initial appointment, reappointments, and clinical privileges.

However, an Interested Member should be recused from the Board when the Board is considering action that will adversely affect Medical Staff membership or clinical privileges of a practitioner.  The Interested Member's participation in Board meetings will be governed by the guidelines regarding recusal that are set forth in **Appendix A**.

CHA[...]TON AREA MED[...] CENTER

Credentials Policy

ARTICLE 9

## CONFIDENTIALITY AND PEER REVIEW PROTECTION

### 9.A.  CONFIDENTIALITY

Actions taken and recommendations made pursuant to this Policy shall be strictly confidential. Individuals participating in, or subject to, credentialing and professional practice evaluation activities shall make no disclosures of any such information (discussions or documentation) outside of committee meetings, except:

(1)     when the disclosures are to another authorized member of the Medical Staff or authorized Hospital employee and are for the purpose of researching, investigating, or otherwise conducting legitimate credentialing and professional practice evaluation activities;

(2)     when the disclosures are authorized by a Medical Staff or Hospital policy; or

(3)     when the disclosures are authorized, in writing, by the CEO or by legal counsel to the Hospital.

Any breach of confidentiality may result in a professional review action and/or appropriate legal action.  Such breaches are unauthorized and do not waive the peer review privilege.  Any member of the Medical Staff who becomes aware of a breach of confidentiality must immediately inform the CEO, CMO, or the Chief of Staff (or the Chief of Staff-Elect if the Chief of Staff is the person committing the claimed breach).

### 9.B.  PEER REVIEW PROTECTION

CHA[ ]TON AREA MED[ ] CENTER

**Credentials Policy**

(1)   All credentialing and professional practice evaluation activities pursuant to this Policy and related Medical Staff documents shall be performed by "Peer Review Committees" in accordance with West Virginia law. These committees include, but are not limited to:

   (a)   all standing and ad hoc Medical Staff and Hospital committees;

   (b)   all departments and sections;

   (c)   hearing panels;

   (d)   the Board and its committees; and

   (e)   any individual acting for or on behalf of any such entity, including but not limited to department chiefs, vice chiefs, committee chairs and members, officers of the Medical Staff, the CMO, all Hospital personnel, and experts or consultants retained to assist in peer review activities.

   All oral or written communications, reports, recommendations, actions, and minutes made or taken by peer review committees are confidential and covered by the applicable provisions of the West Virginia peer review laws, the Patient Safety Quality Improvement Act of 2005, and/or the corresponding provisions of any subsequent federal or state statute providing protection to peer review or related activities.

(2)   All peer review committees shall also be deemed to be "professional review bodies" as that term is defined in the Health Care Quality Improvement Act of 1986, 42 U.S.C. §11101 *et seq.*

CHAR    TON AREA MEDI    CENTER

Credentials Policy

ARTICLE 10

AMENDMENTS AND ADOPTION

(a)     The amendment process for this Policy is set forth in the Bylaws.

(b)     This Policy is adopted and made effective upon approval of the Board, superseding and
         replacing any and all other bylaws, rules and regulations of the Medical Staff or Hospital
         policies pertaining to the subject matter thereof.

Adopted by the Medical Executive Committee:  September 14, 2017

Approved by the Board:  November 15, 2017

Revised by MEC:  February 10, 2022

Approved by Board:  March 23, 2022

CHARLE___ N AREA MEDICA___ ___TER

Credentials Policy

APPENDIX A

CONFLICT OF INTEREST GUIDELINES

| Potential Conflicts | Levels of Participation | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Provide Information | Individual Reviewer Application/ Case | Committee Member | | | | | Hearing Panel | Board |
| | | | Credentials | Leadership Council | CPE | MEC | Investigating Committee | | |
| Employment/contract relationship with Hospital | Y | Y | Y | Y | Y | Y | Y | Y | Y |
| Self or family member | Y | N | R | R | R | R | N | N | R |
| Relevant treatment relationship* | Y | N | R | R | R | R | N | N | R |
| Significant financial relationship | Y | | | | | R | N | N | R |
| Direct competitor | Y | | | | | R | N | N | R |
| Close friends | Y | | | | | R | N | N | R |
| History of conflict | Y | | | | | R | N | N | R |
| Provided care in case under review (but not subject of review) | Y | | | | | R | N | N | R |
| Involvement in prior PIP or disciplinary action | Y | | | | | R | N | N | R |
| Formally raised the concern | Y | | | | | R | N | N | R |

Y   —   (Green "Y") means the Interested Member may serve in the indicated role; no extra precautions are necessary.

CHARLE{   4 AREA MEDICAL   4TER

Credentials Policy

Y   –   (Yellow "Y") means the Interested Member may generally serve in the indicated role.  It is legally permissible for Interested Members to serve in these roles because of the check and balance provided by the multiple levels of review and the fact that the Credentials Committee, Leadership Council, and CPE have no disciplinary authority.

In addition, the Chair of the Credentials Committee, Leadership Council, or CPE always has the authority and discretion to recuse a member in a particular situation if the Chair determines that the Interested Member's presence would (i) inhibit the full and fair discussion of the issue before the committee, (ii) skew the recommendation or determination of the committee, or (iii) otherwise be unfair to the practitioner under review.

N   –   (Red "N") means the Interested Member should not serve in the indicated role.

R   –   (Red "R") means the Interested Member should be recused, in accordance with the guidelines on the next page.

*       Special rules apply both to the provision of information and participation in the review process in this situation.  See Section 8.A.3 of this Policy.

CHARLE[    ] AREA MEDICA[    ] TER

Credentials Policy

| RULES FOR RECUSAL | |
|---|---|
| **STEP 1**<br><br>Confirm the conflict of interest | The Committee Chair or Board Chair should confirm the existence of a conflict of interest relevant to the matter under consideration. |
| **STEP 2**<br><br>Participation by the Interested Member at the meeting | The Interested Member may participate in any part of the meeting that does not involve the conflict of interest situation.<br><br>When the matter implicating the conflict of interest is ready for consideration, the Committee Chair or Board Chair will note that the Interested Member will be excused from the meeting prior to the group's deliberation and decision-making.<br><br>Prior to being excused, the Interested Member may provide information and answer any questions regarding the following:<br><br>(i)    any factual information for which the Interested Member is the original source;<br><br>(ii)    clinical expertise that is relevant to the matter under consideration;<br><br>(iii)    any policies or procedures that are applicable to the committee or Board or are relevant to the matter under consideration;<br><br>(iv)    the Interested Member's prior involvement in the review of the matter at hand (for example, an Investigating Committee member may describe the Investigating Committee's activities and present the Investigating Committee's written report and recommendations to the MEC prior to being excused from the meeting); and<br><br>(v)    how the committee or Board has, in the past, managed issues similar or identical to the matter under consideration. |

CHARLE\[  \]  \] AREA MEDICA\[  \]  \]TER

Credentials Policy

| STEP 3<br><br>The Interested Member is excused from the meeting | The Interested Member will then be excused from the meeting (i.e., physically leave the meeting room and/or disconnect from any telephone or other electronic connection) prior to the committee's or Board's deliberation and decision-making. |
|---|---|
| STEP 4<br><br>Record the recusal in the minutes | The recusal should be documented in the minutes of the committee or Board. The minutes should reflect the fact that the Interested Member was excused from the meeting prior to deliberation and decision-making. |