IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

**WOMEN'S HEALTH CENTER OF WEST
VIRGINIA,** *on behalf of itself, its staff, and its
patients;* **and DR. JOHN DOE,** *on behalf of himself
and his patients,*

      **Plaintiffs,**

**v.**
                    **Civil Action No. 2:23-cv-00079**
                    **Honorable Irene C. Berger, Judge**

**ASHISH P. SHETH,** *in his official capacity as
President of the West Virginia Board of Medicine;*
**and MATTHEW CHRISTIANSEN,** *in his official
capacity as Secretary of the West Virginia Board of
Medicine,*

      **Defendants.**

## DEFENDANTS' RESPONSE TO
## PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

NOW COME the Defendants, Ashish P. Sheth, in his official capacity as President of the

West Virginia Board of Medicine, and Matthew Christiansen, in his official capacity as Secretary

of the West Virginia Board of Medicine, by counsel, Roberta F. Green, Caleb B. David, and

Shuman McCuskey Slicer PLLC, and, for their Response to Plaintiffs' Motion for Preliminary

Injunction, state as follows:

### INTRODUCTION AND STATEMENT OF ALLEGATIONS

The West Virginia Board of Medicine ("WVBOM") is an administrative regulatory body

created "to protect the public interest." W. Va. Code § 30-3-1. The WVBOM is the "sole authority[1]

for the issuance of licenses to practice medicine and surgery, to practice podiatry, and to practice

---

[1] *But see* W. Va. Code Section 30-14-1 *et seq.,* providing in pertinent part that "[i]t is unlawful for any person to practice or offer to practice medicine and surgery as an osteopathic physician and surgeon in this state without a license or permit issued by the West Virginia Board of Osteopathic Medicine:"

as physician assistants in this state[,]" and is "a regulatory and disciplinary body for the practice of medicine and surgery, the practice of podiatry, and for physician assistants in this state." W. Va. Code § 30-3-5. The WVBOM is not a political body. Indeed, "[a] person is not eligible for membership on the board who is a member of any political party executive committee or, with the exception of the state health officer, who holds any public office or public employment under the federal government or under the government of this state or any political subdivision thereof." W. Va. Code § 30-3-5. The WVBOM elects a president every two years, and the state health officer serves as secretary for the board ex officio. W. Va. Code §§ 30-3-5, 30-3-6, 30-3-8. The secretary and president "sign all licenses, reports, orders and other documents that may be required by the board in the performance of its duties." W. Va. Code § 30-3-8.

Ashish P. Sheth, M.D. is the current president of the WVBOM, having been elected in 2022 and formally beginning his term on July 12, 2022. Matthew Christiansen, M.D., M.P.H. was appointed the State Health Officer and Commissioner of the Department of Health and Human Resources' Bureau for Public Health on January 4, 2023. On September 13, 2022, House Bill 302 ("HB 302") completed legislative action and was approved by Governor James C. Justice, II, shortly thereafter. Neither Defendants nor the WVBOM had a role in either introducing or passing the challenged legislation. Nonetheless, the WVBOM and Defendants are charged with upholding and enforcing the legislation.

In enacting HB 302, the Legislature found "that the State of West Virginia has a legitimate interest in protecting unborn lives and prohibiting abortions in West Virginia except in the circumstances set forth in this article." W. Va. Code § 16-2R-1. Those circumstances are limited by statute to situations in which (1) "[t]he embryo or fetus is nonviable"; (2) "[t]he pregnancy is ectopic": (3) "[a] medical emergency exists"; (4) an adult within the first 8 weeks of pregnancy

seeks to terminate a pregnancy caused by sexual assault or incest; and (5) a minor or incapacitated adult within the first 14 weeks of pregnancy seeks to terminate a pregnancy caused by sexual assault or incest. W. Va. Code § 16-2R-3(a)-(c). Plaintiffs do not challenge these limitations.

Instead, Plaintiffs, an outpatient clinic providing "reproductive and sexual health services," and its "primary provider of abortion care," challenge two provisions of HB 302, which is codified at West Virginia Code § 16-2R-1, *et seq.*, and which affects several other Code provisions. Compl. ¶¶ 9-10. First, Plaintiffs challenge West Virginia Code § 16-2R-3(f), which states, "[a] surgical abortion performed or induced or attempted to be performed or induced pursuant to this section shall be in a hospital, as defined in §16-5B-1 of this code, which is licensed by the Office of Health Facility Licensure and Certification of the West Virginia Department of Health and Human Resources." W. Va. Code § 16-2R-3(f).

Plaintiffs allege that, because Women's Health Clinic is not a hospital, HB 302's "hospitalization requirement" prevents them from providing surgical abortions, which comprised 47% of the abortions performed at Women's Health Clinic prior to the enactment of HB 302. Compl. ¶ 121. Plaintiffs claim that there is no rational basis for the hospitalization requirement because Plaintiffs claim that, prior to HB 302's enactment, most surgical abortions occurred in outpatient settings, resulted in few complications, and the complications were "almost always handled in the outpatient setting." Compl. ¶¶ 76-86.

Second, Plaintiffs challenge West Virginia Code § 16-2R-3(g), which states, "[a]n abortion performed or induced or attempted to be performed or induced shall be performed by a licensed medical professional who has West Virginia hospital privileges." W. Va. Code § 16-2R-3(g). Plaintiffs allege that, because Dr. John Doe "cannot satisfy the basic criteria for hospital privileges at CAMC" and would have to "report any denied or even withdrawn applications for hospital

privileges when [he] appl[ies] for and renew[s his] medical license[]," Dr. Doe "will not apply for privileges when he could not in good faith assert that he satisfies the basic criteria for exercising those privileges." Compl. ¶¶ 124, 127. Plaintiffs further assert that "[a]lthough HB 302 could ostensibly be satisfied by hospital privileges anywhere in West Virginia, the only place where Dr. Doe actually practices medicine in West Virginia is in Charleston." Compl. ¶ 128. As a result, because Dr. Doe lacks hospital privileges and because the other physician at Women's Health Center who has hospital privileges only works at Women's Health Center two half-days per month, HB 302's "hospital privileges requirement" prevents them from providing medication abortions, which comprised 53% of the abortions performed at Women's Health Clinic prior to the enactment of HB 302. Compl. ¶¶ 122-123. Plaintiffs claim that there is no rational basis for the hospital privileges requirement because Plaintiffs claim that, prior to HB 302's enactment, medications for medication abortions were mostly prescribed in outpatient settings, resulted in few hospitalizations, that complications can be managed by emergency or attending physicians, and some experts have found that there is "no relationship between abortion safety and hospital privileges." Compl. ¶¶ 98-119.

Thus, Plaintiffs allege that "HB 302 violates Plaintiffs' due process and/or equal protection rights by requiring them to comply with HB 302's Care Restrictions, which are not related to any legitimate state interest." Compl. ¶ 150. Plaintiffs claim that the hospitalization and hospital privileges requirements "eliminat[e] WHC's ability to continue to provide procedural abortions and effectively eliminat[e] its ability to continue to provide medication abortion." Compl. ¶ 132. Plaintiffs further claim that "HB 302 is also inflicting irreparable harm to WHC's finances and operations, as the elimination of abortion services and loss of related revenue has forced it to eliminate staff." Compl. ¶ 132. Plaintiffs also claim that, "[b]y eliminating Dr. Doe's ability to

4

provide procedural and medication abortions at WHC and in West Virginia, HB 302 is likewise inflicting irreparable harm on his ability to practice his profession and to fulfill his personal and professional commitment … to serving the reproductive and sexual health needs of West Virginians." Compl. ¶ 133.

Plaintiffs further claim that "by forcing the sole abortion clinic in West Virginia to stop providing abortion services altogether, HB 302 is inflicting irreparable harm on the health, safety, and well-being of WHC's and Dr. Doe's patients and all people seeking abortions in West Virginia." Compl. ¶ 136. Plaintiffs claim that, as a result of HB 302's enactment, people seeking abortions will have to travel out of state, which will force those people to incur additional financial costs. Compl. ¶¶ 137-141. Thus, Plaintiffs claim that "HB 302 violates the due process and/or equal protection rights of Plaintiffs' patients because the Care Restrictions prevent them from accessing otherwise lawful medical care and are not rationally related to any legitimate state interest." Compl. ¶ 151.

Plaintiffs argue that they are likely to succeed on the merits of their claims because, although they concede that rational basis review applies to their claims, they believe that the hospitalization and hospital privileges provisions of HB 302 are not rationally related to a legitimate state interest. For the reasons stated in Defendants' Motion to Dismiss and Memorandum of Law in support thereof, and for the reasons stated herein, Plaintiffs are not likely to succeed on the merits of their claims. Plaintiffs also argue that they will continue to suffer irreparable harm absent immediate injunctive relief, citing, in particular, financial harm. However, the financial harm Plaintiff's allege is not due to the hospitalization and hospital privileges provisions. Further, Plaintiff allegations of financial harm are under cut by Dr. John Doe's failure

to show that he cannot comply with the hospital privileges requirement. Plaintiffs also argue that the balance of equities and public interest weigh in favor of an injunction.

## ARGUMENT

"'[A] preliminary injunction is an extraordinary remedy, to be granted only if the moving party clearly establishes entitlement to the relief sought.'" *Hughes Network Sys. v. Interdigital Comms. Corp.*, 17 F.3d 691, 693 (4th Cir. 1994) (quoting *Federal Leasing, Inc. v. Underwriters at Lloyd's*, 650 F.2d 495, 499 (4th Cir. 1981)). "Indeed, granting a preliminary injunction requires that a district court, acting on an incomplete record, order a party to act, or refrain from acting, in a certain way. 'The danger of a mistake' in this setting 'is substantial.'" *Id.* (quoting *American Hosp. Supply Corp. v. Hospital Prods., Ltd.*, 780 F.2d 589, 593 (7th Cir. 1986)). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Plaintiffs have failed to meet their burden.

### I.     Plaintiffs are not likely to succeed on the merits of their claims

Plaintiffs are not likely to succeed on the merits of their claims for two reasons. First, Plaintiffs have failed to identify a substantive due process right of which they are deprived; regardless, the limitations in HB 302 satisfy rational basis review. Second, Plaintiffs have failed to identify a class to which they belong that has been unconstitutionally treated unequally; regardless, the limitations in HB 302 satisfy rational basis review. Finally, Plaintiffs lack standing to bring suit on behalf of third parties who are not similarly situated. Therefore, Plaintiffs have failed to make a sufficient showing that they are likely to succeed on the merits of their claims, and Plaintiffs' Motion for Preliminary Injunction must be denied.

**A.   Plaintiffs have failed to identify a substantive due process right of which they are deprived; regardless, the limitations in HB 302 satisfy rational basis review.**

Plaintiffs' Complaint asserts a single claim for alleged violation of the Fourteenth Amendment; however, Plaintiffs challenge the constitutionality of HB 302 on both substantive due process and equal protection grounds. Compl. ¶ 150. Plaintiffs claim that HB 302 violates their due process rights by requiring them to comply with HB 302's "Care Restrictions"; however, Plaintiffs do not identify the "right" supposedly violated. The Supreme Court has unequivocally held that "[t]he Constitution does not prohibit the citizens of each State from regulating or prohibiting abortion[,]" *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2284 (2022), and that "the Constitution does not confer a right to abortion." *Id.* at 2279. Thus, it logically follows that the Constitution does not confer a right to perform abortions and that the State of West Virginia may determine for its State and its citizenry when, how, and by whom abortions may be performed.

Plaintiffs' Complaint leaves one to assume that their purported substantive due process rights are rooted in economic or occupational rights, which Plaintiffs admit are subject to rational basis review. The Supreme Court in *Dobbs* held that "the States may regulate abortion for legitimate reasons, and when such regulations are challenged under the Constitution, courts cannot 'substitute their social and economic beliefs for the judgment of legislative bodies.'" *Dobbs*, 142 S. Ct. at 2283-84 (quoting *Ferguson v. Skrupa*, 372 U.S. 726, 729-30 (1963) (citing *Dandridge v. Williams*, 397 U. S. 471, 484-486, 90 S. Ct. 1153, 25 L. Ed. 2d 491 (1970)) (citing *United States v. Carolene Products Co.*, 304 U. S. 144, 152, 58 S. Ct. 778, 82 L. Ed. 1234 (1938)). "A law regulating abortion, like other health and welfare laws, is entitled to a 'strong presumption of validity.'" *Id.* at 2284 (quoting *Heller v. Doe*, 509 U.S. 312, 319, 113 S. Ct. 2637, 125 L. Ed. 2d 257 (1993)). "It must be sustained if there is a rational basis on which the legislature could have

thought that it would serve legitimate state interests." *Id.* (citing *Heller*, 509 U.S. at 320) (citations omitted). "These legitimate interests include respect for and preservation of prenatal life at all stages of development, the protection of maternal health and safety; the elimination of particularly gruesome or barbaric medical procedures; the preservation of the integrity of the medical profession; the mitigation of fetal pain; and the prevention of discrimination on the basis of race, sex, or disability." *Id.* (citations omitted).

Here, HB 302 provides a specific legitimate interest for its enactment: "The Legislature finds that the State of West Virginia has a legitimate interest in protecting unborn lives and prohibiting abortions in West Virginia except in the circumstances set forth in this article." W. Va. Code § 16-2R-1. The Supreme Court found that "protecting the life of the unborn" is a legitimate interest satisfying rational basis review. *See Dobbs*, 142 S. Ct. at 2284 (holding that legitimate interest in "protecting the life of the unborn" provides "a rational basis for [Mississippi's] Gestational Age Act" so that the constitutional challenge must fail). Based upon the Supreme Court's holding in *Dobbs*, this Court may end its inquiry here because the Supreme Court has already determined that the same legitimate interest asserted by the West Virginia Legislature satisfies rational basis review. Therefore, Plaintiffs' Complaint fails as a matter of law and must be dismissed.

To the extent Plaintiffs argue that the hospitalization and hospital privileges provisions of HB 302 unconstitutionally restrict their ability to pursue their vocation, Plaintiffs' Complaint similarly fails. Sixty years ago, the Supreme Court reaffirmed its New Deal-era ruling abandoning "the use of the 'vague contours' of the Due Process Clause to nullify laws which a majority of the Court believed to be economically unwise." *Ferguson v. Skrupa*, 372 U.S. 726, 731 (1963) (citing *West Coast Hotel Co. v. Parrish*, 300 U.S. 379 (1937)). In *Skrupa*, the plaintiff sought to invalidate

a state law prohibiting the business of debt adjusting by any individual other than a lawyer. *See generally id.* The plaintiff argued that "his business was a 'useful and desirable' one, that his business activities were not 'inherently immoral or dangerous' or in any way contrary to the public welfare, and that therefore the business could not be 'absolutely prohibited' by [the state]." *Id.* at 727. Upholding the state's law, the Supreme Court stated that, "[u]nder the system of government created by our Constitution, it is up to legislatures, not courts, to decide on the wisdom and utility of legislation." *Id.* at 729. The Supreme Court firmly stated,

> [w]e have returned to the original constitutional proposition that courts do not substitute their social and economic beliefs for the judgment of legislative bodies, who are elected to pass laws. As this Court stated in a unanimous opinion in 1941, "We are not concerned . . . with the wisdom, need, or appropriateness of the legislation." Legislative bodies have broad scope to experiment with economic problems, and this Court does not sit to "subject the State to an intolerable supervision hostile to the basic principles of our Government and wholly beyond the protection which the general clause of the Fourteenth Amendment was intended to secure." It is now settled that States "have power to legislate against what are found to be injurious practices in their internal commercial and business affairs, so long as their laws do not run afoul of some specific federal constitutional prohibition, or of some valid federal law."

*Id.* at 730-31 (quoting *Olsen v. Nebraska ex rel. Western Reference & Bond Assn.*, 313 U.S. 236, 246 (1941) (upholding a Nebraska statute limiting the amount of the fee which could be charged by private employment agencies); *see also Sproles v. Binford*, 286 U.S. 374, 388 (1932) ("When the subject lies within the police power of the State, debatable questions as to reasonableness are not for the courts but for the legislature, which is entitled to form its own judgment, and its action within its range of discretion cannot be set aside because compliance is burdensome."). Finally, while the Supreme Court recognized that "there are arguments showing that the business of debt adjusting has social utility," those "arguments are properly addressed to the legislature, not to us," and the Court refused "to sit as a 'superlegislature to weigh the wisdom of legislation[.]'" *Id.* at 731 (quoting *Day-Brite Lighting, Inc., v. Missouri*, 342 U.S. 421, 423 (1952)). Simply put,

although the "debt adjusting statute may be wise or unwise … relief, if any be needed, lies not with us but with the body constituted to pass laws for the State…." *Id.* at 732.

In the instant case, Plaintiffs seek to have this Court sit as a superlegislature to weigh the wisdom of HB 302, which is obviously less restrictive than the state law at issue in *Skrupa*. Accepting Plaintiffs' allegations as true, HB 302 forecloses Plaintiff WHC's ability to perform now-legal abortions because WHC is not a hospital, but Plaintiffs state that WHC provides various other "reproductive and sexual health services, including birth control, breast and cervical cancer screenings, treatment for sexually transmitted infection, treatment for hypertension, gender-affirming hormone therapy, pre-exposure prophylaxis, and screening for depression, anxiety, and intimate partner violence." Compl. ¶ 9. Thus, unlike the law's application to the plaintiff's business in *Skrupa*, HB 302 does not eliminate Plaintiffs' business or practice, which is specifically permitted to further a legitimate interest.

The Supreme Court has upheld location-based restrictions on rendering medical care. In *Williamson v. Lee Optical of Oklahoma, Inc.*, 348 U.S. 483 (1955), the plaintiff sought to invalidate a state law making it unlawful for any person not a licensed optometrist or ophthalmologist to fit lenses to a face or to duplicate or replace into frames lenses or other optical appliances, except upon written prescriptive authority of a licensed ophthalmologist or optometrist. *Id.* at 484-85. Upholding the law, the Court stated, "[t]he day is gone when this Court uses the Due Process Clause of the Fourteenth Amendment to strike down state laws, regulatory of business and industrial conditions, because they may be unwise, improvident, or out of harmony with a particular school of thought." *Id.* at 488. Rather, the Court stated that "[f]or protection against abuses by legislatures the people must resort to the polls, not the courts." *Id.* (citation omitted) (internal quotation marks omitted). Applying a rational basis review, the Court held,

> [i]t seems to us that this regulation is on the same constitutional footing as the denial to corporations of the right to practice dentistry. *Semler v. Dental Examiners*, [294 U.S. 608, 611 (1935)]. It is an attempt to free the profession, to as great an extent as possible, from all taints of commercialism. It certainly might be easy for an optometrist with space in a retail store to be merely a front for the retail establishment. In any case, the opportunity for that nexus may be too great for safety, if the eye doctor is allowed inside the retail store. Moreover, it may be deemed important to effective regulation that the eye doctor be restricted to geographical locations that reduce the temptations of commercialism. Geographical location may be an important consideration in a legislative program which aims to raise the treatment of the human eye to a strictly professional level. We cannot say that the regulation has no rational relation to that objective and therefore is beyond constitutional bounds.

*Williamson*, 348 U.S. at 491.

As the Supreme Court held in *Dobbs*, "protecting the life of the unborn" is a legitimate interest, and that is the legitimate interest expressed by the West Virginia Legislature in HB 302. Beyond that, the Supreme Court further held that "the protection of maternal health and safety" is a legitimate interest satisfying rational basis review. *Dobbs*, 142 S. Ct. at 2284. It is rational that, in addition to "protecting unborn lives," the West Virginia Legislature believed that the hospitalization and hospital privileges requirements furthered the State's legitimate interests in protecting maternal health and safety, preserving the integrity of the medical profession, and "prohibiting abortions in West Virginia except in the circumstances set forth in this article." W. Va. Code § 16-2R-1.

HB 302 limits the circumstances in which an abortion is legal to the following: (1) "[t]he embryo or fetus is nonviable"; (2) "[t]he pregnancy is ectopic": (3) "[a] medical emergency exists"; (4) an adult within the first 8 weeks of pregnancy seeks to terminate a pregnancy caused by sexual assault or incest; and (5) a minor or incapacitated adult within the first 14 weeks of pregnancy seeks to terminate a pregnancy caused by sexual assault or incest. W. Va. Code § 16-2R-3(a)-(c). The first three circumstances are further limited by the requirement that they be found "in the

reasonable medical judgment of a licensed medical professional[.]" W. Va. Code § 16-2R-3(a). Per the Supreme Court's holding in *Dobbs,* the Legislature may rationally believe that hospitals are better equipped to handle nonviable or ectopic pregnancies and/or medical emergencies. The Legislature may rationally believe that these now-legal abortions can be provided more safely in the hospital setting given that some pre-existing malady to the mother or fetus must be present. The Legislature may rationally believe that the "reasonable medical judgment" of physicians with hospital privileges is preferable.

Regarding instances in which abortions are performed due to sexual assault or incest, the Legislature may rationally believe that hospitals are better suited to provide social services to victims of sexual assault. The Legislature may rationally believe that hospitals are better suited to work with law enforcement, a report to whom is required prior to the abortion. The Legislature may rationally believe that potential psychiatric or psychological care to victims of sexual assault is better rendered in the hospital setting.

Plaintiffs may believe that they can provide these services as well as hospitals or physicians with hospital privileges can; however, it is not the Court's prerogative to "weigh those arguments and decide how abortion may be regulated in the States." *Dobbs*, 142 S. Ct. at 2259. Rather, the Court has "return[ed] the power to weigh those arguments to the people and their elected representatives." *Id.* Because rational bases exist on the face of HB 302 and because additional rational bases can be easily proffered, many of which have already been determined to be legitimate state interests, the hospitalization and hospital privileges provisions of HB 302 satisfy rational basis review. Therefore, Plaintiffs are unlikely to succeed on the merits of their substantive due process claim, and Plaintiffs' Motion must be denied.

**B.**    **Plaintiffs have failed to identify a class to which they belong that has been unconstitutionally treated unequally; regardless, the limitations in HB 302 satisfy rational basis review.**

Plaintiffs are also unlikely to succeed on the merits of their equal protection claim. Plaintiffs' Complaint also challenges the constitutionality of HB 302 on equal protection grounds. Compl. ¶ 150. Plaintiffs do not identify any class to which they belong nor do Plaintiffs disclose whether the equal protection challenge is aimed at HB 302's effect on abortion or at HB 302's effect on Plaintiffs. Regardless of how Plaintiffs' Complaint is intended to be interpreted, Plaintiffs' claim fails as a matter of law.

First, to the extent Plaintiffs claim that HB 302 unconstitutionally treats abortion differently than other medical procedures, Plaintiffs' argument fails. The Supreme Court has repeatedly held that "a State's regulation of abortion is not a sex-based classification and is thus not subject to the 'heightened scrutiny' that applies to such classifications. The regulation of a medical procedure that only one sex can undergo does not trigger heightened scrutiny unless the regulation is a 'mere pretex[t] designed to effect an invidious discrimination against members of one sex or the other.'" *Dobbs*, 142 S. Ct. at 2245-46 (quoting *Geduldig v. Aiello*, 417 U. S. 484, 496, n. 20, 94 S. Ct. 2485, 41 L. Ed. 2d 256 (1974)). The Supreme Court reaffirmed in *Dobbs* that "the 'goal of preventing abortion' does not constitute 'invidiously discriminatory animus' against women." *Id.* (quoting *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 273-74, 113 S. Ct. 753, 122 L. Ed. 2d 34 (1993) (internal quotation marks omitted)). "Accordingly, laws regulating or prohibiting abortion are not subject to heightened scrutiny. Rather they are governed by the same standard of review as other health and safety measures." *Id.*

For the same reasons that HB 302 survives rational basis review under a substantive due process challenge, HB 302 survives rational basis review under an equal protection challenge. The

legitimate interests identified by the West Virginia Legislature—"protecting unborn lives and prohibiting abortions in West Virginia except in the circumstances set forth in this article"—satisfy rational basis review. Regardless, the Supreme Court found that abortion is a unique act that is inherently different, necessitating different treatment: "Abortion destroys what [*Roe v. Wade*, 410 U.S. 113 (1973) and *Planned Parenthood v. Casey*, 505 U.S. 833 (1992)] call 'potential life' and what the law at issue in this case regards as the life of an 'unborn human being.' *See Roe*, 410 U.S., at 159, 93 S. Ct. 705, 35 L. Ed. 2d 147 (abortion is 'inherently different'); *Casey*, 505 U.S., at 852, 112 S. Ct. 2791, 120 L. Ed. 2d 674 (abortion is 'a unique act')." *Dobbs*, 142 S. Ct. at 2258. Thus, abortion is not similarly situated to other medical procedures and can be regulated differently without running afoul of the Fourteenth Amendment. Therefore, because abortion is considered a unique procedure and because legitimate interests exist, HB 302 survives rational basis review, and Plaintiffs' Complaint fails as a matter of law.

Furthermore, to the extent Plaintiffs' equal protection challenge is grounded in the perceived unequal treatment of hospitals versus abortion clinics or of physicians with hospital privileges versus physicians without hospital privileges, Plaintiffs' claim fails as a matter of law. "Statutes create many classifications which do not deny equal protection; it is only 'invidious discrimination' which offends the Constitution." *Ferguson*, 372 U.S. at 732. Indeed, the West Virginia Legislature separately classifies hospitals, ambulatory health care facilities, ambulatory surgical facilities, extended care facilities, and other health care facilities. *See* W. Va. Code § 16-5B-1. The Legislature also separately classifies physicians, physician assistants, dentists, pharmacists, registered professional nurses, practical nurses, and other health care practitioners. *See* W. Va. Code §§ 30-3-1, *et seq.*, 30-3E-1, *et seq.*, 30-4-1, *et seq.*, 30-5-1, *et seq.*, 30-7-1, *et seq.*, 30-7A-1, *et seq.*, 30-14-1 *et. seq.*  Each of these types of facilities and each of these types of

health care providers are permitted to engage in certain activities and practices, and none of the statutes requiring their licensure or defining their scopes of practice deny equal protection.

In *Ferguson*, *supra*, the Supreme Court found that the state law prohibiting debt adjusting other than by lawyers did not deny equal protection to nonlawyers. The Court stated,

> [t]he business of debt adjusting gives rise to a relationship of trust in which the debt adjuster will, in a situation of insolvency, be marshalling assets in the manner of a proceeding in bankruptcy. The debt adjuster's client may need advice as to the legality of the various claims against him, remedies existing under state laws governing debtor-creditor relationships, or provisions of the Bankruptcy Act -- advice which a nonlawyer cannot lawfully give him. If the State [] wants to limit debt adjusting to lawyers, the Equal Protection Clause does not forbid it.

*Ferguson*, 372 U.S. at 732-33.

Here, likewise, if the State of West Virginia wants to limit abortions to hospitals or to physicians with hospital privileges, the Equal Protection Clause does not forbid it. The Legislature may rationally believe that hospitals are better equipped to handle nonviable or ectopic pregnancies and/or medical emergencies. The Legislature may rationally believe that these now-legal abortions can be provided more safely in the hospital setting given that some pre-existing malady to the mother or fetus must be present. The Legislature may rationally believe that the "reasonable medical judgment" of physicians with hospital privileges is preferable. Regarding instances in which abortions are performed due to sexual assault or incest, the Legislature may rationally believe that hospitals are better suited to provide social services to victims of sexual assault. The Legislature may rationally believe that hospitals are better suited to work with law enforcement, a report to whom is required prior to the abortion. The Legislature may rationally believe that potential psychiatric or psychological care to victims of sexual assault is better rendered in the hospital setting.

To the extent Plaintiffs' Complaint identifies any classification, rational basis review applies to their equal protection claim. Because rational bases exist on the face of HB 302 and because additional rational bases can be easily proffered, many of which have already been determined to be legitimate state interests, the hospitalization and hospital privileges provisions of HB 302 satisfy rational basis review. Therefore, Plaintiffs are unlikely to succeed on the merits of their equal protection claim, and Plaintiffs' Motion must be denied.

### C.   Plaintiffs lack standing to bring suit on behalf of third parties who are not similarly situated

Plaintiffs are also unlikely to succeed on their claims purportedly asserted on behalf of their patients. Plaintiffs' Complaint does not assert a class action. *See generally* Compl. Plaintiffs' Complaint does, however, seek to assert claims on behalf of their patients, who are not similarly situated to Plaintiffs. Plaintiffs lack standing to bring suit on behalf of third parties who are not similarly situated; therefore, Plaintiffs are unlikely to succeed on the merits of these claims.

"In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). The Supreme Court's "standing jurisprudence contains two strands: Article III standing, which enforces the Constitution's case-or-controversy requirement, *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-562, 119 L. Ed. 2d 351, 112 S. Ct. 2130 (1992); and prudential standing, which embodies 'judicially self-imposed limits on the exercise of federal jurisdiction,' *Allen* [*v. Wright*, 468 U.S. [737,] 751, 82 L. Ed. 556, 104 S. Ct. 3315 [(1984)]." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11-12 (2004). The Supreme Court has held that

> [a]lthough we have not exhaustively defined the prudential dimensions of the standing doctrine, we have explained that prudential standing encompasses "the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within

the zone of interests protected by the law invoked." *Allen*, 468 U.S., at 751, 82 L. Ed. 2d 556, 104 S. Ct. 3315.

*Newdow*, 542 U.S. at 12.

"As an aspect of justiciability, the standing question is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth*, 422 U.S. at 498-99 (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)). "The Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally." *Id.* at 499. "[E]ven when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement, this Court has held that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Id.* (citations omitted). "Without such limitations closely related to Art. III concerns but essentially matters of judicial self-governance the courts would be called upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights." *Id.* at 500 (citation omitted). In *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022), the Supreme Court noted that its abortion cases "have ignored the Court's third-party standing doctrine." *Id.* at 2275. The Supreme Court has now overruled those cases. *Id.*

Here, Plaintiffs attempt to litigate the legal rights of their patients "because the Care Restrictions prevent them from accessing otherwise lawful medical care." Compl. ¶ 151. Because the due process and/or equal protection rights of Plaintiffs' patients are not the due process and/or equal protection rights of Plaintiffs, Plaintiffs lack standing to assert claims on behalf of their patients. Because Plaintiffs lack standing to assert claims on behalf of their patients, this Court

17

lacks subject matter jurisdiction over the claims asserted by Plaintiffs on behalf of their patients. Because this Court lacks subject matter jurisdiction over such claims, Plaintiffs are unlikely to succeed on the merits of their claims on behalf of their patients, and Plaintiff's Motion must be denied.

## II.  Plaintiffs have not made a sufficient showing that they are likely to suffer irreparable harm in the absence of preliminary relief

In order to prevail on their Motion, Plaintiffs must show that they are likely to suffer irreparable harm in the absence of preliminary relief. "'The key word in this consideration is *irreparable*. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.'" *Hughes Network Sys. v. Interdigital Comms. Corp.*, 17 F.3d 691, 694 (4th Cir. 1994) (quoting *Sampson v. Murray*, 415 U.S. 61, 90, 39 L. Ed. 2d 166, 94 S. Ct. 937 (1974)) (additional citation omitted) (emphasis in original).

Plaintiffs argue that they and their patients are suffering and will continue to suffer irreparable harm because HB 302 "effectively prevent[]s Plaintiffs from providing any abortion care at all." Pl.'s Mot., p. 30 (ECF Doc. 10). Plaintiffs are not, however, challenging the totality of HB 302. Instead, they are challenging two provisions of the statute: the hospitalization requirement and the hospital privileges requirement. Plaintiffs have provided declarations from various employees regarding the number of abortions provided annually at Women's Health Center, and Plaintiffs state that no abortions have been provided at the clinic since the passage of HB 302. The operative inquiry is not, however, the effect of HB 302 on Plaintiffs' business and practice. Rather, the operative inquiry is the effect of the hospitalization and hospital privileges requirements on Plaintiffs' business and practice.

HB 302 limits legal abortions to those that risk the health of the mother and to those intended to terminate a pregnancy as a result of sexual assault or incest. W. Va. Code § 16-2R-3(a)-(c). While these circumstances undoubtedly reduce the number of abortions Plaintiffs may provide, Plaintiffs do not challenge the statutory provisions that limit legal abortions to these circumstances. Plaintiffs do not provide any evidence to show the number of abortions they previously provided that meet the criteria for now-legal abortions under HB 302. Nor do Plaintiffs provide any evidence to show that the provisions they do not challenge limit the legal abortions they can provide today.  Plaintiffs state that WHC provides various other "reproductive and sexual health services, including birth control, breast and cervical cancer screenings, treatment for sexually transmitted infection, treatment for hypertension, gender-affirming hormone therapy, pre-exposure prophylaxis, and screening for depression, anxiety, and intimate partner violence." Compl. ¶ 9.  Thus, in light of the various services provided by Plaintiffs and of the lack of evidence showing harm due to the hospitalization and hospital privileges requirements, it is impossible to determine what harm Plaintiffs are and will continue to suffer due to the challenged statutory provisions. Thus, Plaintiffs have failed to produce sufficient evidence to make a showing of irreparable harm, and Plaintiffs' Motion must be denied.

**WHEREFORE**, Defendants Ashish P. Sheth, in his official capacity as President of the West Virginia Board of Medicine, and Matthew Christiansen, in his official capacity as Secretary of the West Virginia Board of Medicine, respectfully request that this Honorable Court deny Plaintiffs' Motion for Preliminary Injunction. Defendants respectfully request all other and further relief this Honorable Court deems just and proper.

**ASHISH P. SHETH,** *in his official capacity as President of the West Virginia Board of Medicine;* **and MATTHEW CHRISTIANSEN,** *in his official capacity as Secretary of the West Virginia Board of Medicine,*

**By Counsel,**

/s/ Roberta F. Green
Roberta F. Green, Esq. (WVSB #6598)
Caleb B. David, Esq. (WVSB #12732)
SHUMAN MCCUSKEY SLICER PLLC
Post Office Box 3953 (25339)
1411 Virginia Street East, Suite 200 (25301)
Charleston, WV 25339
(304) 345-1400; (304) 343-1826 (fax)
rgreen@shumanlaw.com
cdavid@shumanlaw.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

**WOMEN'S HEALTH CENTER OF WEST
VIRGINIA,** *on behalf of itself, its staff, and its
patients;* **and DR. JOHN DOE,** *on behalf of himself
and his patients,*

        **Plaintiffs,**

**v.**                            **Civil Action No. 2:23-cv-00079
Honorable Irene C. Berger, Judge**

**ASHISH P. SHETH,** *in his official capacity as
President of the West Virginia Board of Medicine;*
**and MATTHEW CHRISTIANSEN,** *in his official
capacity as Secretary of the West Virginia Board of
Medicine,*

        **Defendants.**

## CERTIFICATE OF SERVICE

The undersigned, counsel for Defendants, do hereby certify that on the 27th day of February, 2023, a true and exact copy of **"DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION"** was served on counsel via the Court's ECF system as follows:

| | |
|---|---|
| Aubrey Sparks (WVSB No. 13469) | Alexa Kolbi-Molinas* |
| Nicholas Ward (WVSB No. 13703) | Rachel Reeves* |
| AMERICAN CIVIL LIBERTIES UNION OF WEST | AMERICAN CIVIL LIBERTIES UNION |
| VIRGINIA FOUNDATION | FOUNDATION |
| P.O. Box 3952 | 125 Broad Street, 18th Floor |
| Charleston, WV 25339-3952 | New York, NY 10004 |
| Phone: (914) 393-4614 | Phone: (212) 549-2633 |
| asparks@acluwv.org | akolbi-molinas@aclu.org |
| nward@acluwv.org | rreeves@aclu.org |
| | |
| Bren J. Pomponio (WVSB Bar No. 7774) | Alexander Robledo* |
| MOUNTAIN STATE JUSTICE, INC. | COOLEY LLP |
| 1217 Quarrier Street | 500 Boylston Street, 14th Floor |
| Charleston, WV 25301 | Boston, MA 02116-3736 |
| Phone: (304) 344-3144 | Phone: (617) 937-2300 |
| bren@msjlaw.org | arobledo@cooley.com |

Marc Suskin*
Patrick J. Hayden*
Angeline X. Chen*
Michael Paul Bannon*
COOLEY LLP
55 Hudson Yards
New York, NY 10001-2157
Phone: (212) 479-6000
msuskin@cooley.com
phayden@cooley.com
axchen@cooley.com
mbannon@cooley.com

Kathleen R. Hartnett*
Kathleen Goodhart*
Julie Veroff*
Reece Trevor*
Darina A. Shtrakhman*
K.C. Jaski*
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Phone: (415) 693-2000
khartnett@cooley.com
kgoodhart@cooley.com
jveroff@cooley.com
rtrevor@cooley.com
dshtrakhman@cooley.com
kjaski@cooley.com

/s/ Roberta F. Green
Roberta F. Green, Esq. (WVSB #6598)
Caleb B. David, Esq. (WVSB #12732)