THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| WOMEN'S HEALTH CENTER OF WEST VIRGINIA, *on behalf of itself, its staff, and its patients;* and DR. JOHN DOE, *on behalf of himself and his patients,*<br><br>        *Plaintiffs,*<br><br>    v.<br><br>ASHISH P. SHETH, *in his official capacity as President of the West Virginia Board of Medicine;* and MATTHEW CHRISTIANSEN, *in his official capacity as Secretary of the West Virginia Board of Medicine,*<br><br>        *Defendants,*<br><br>STATE OF WEST VIRGINIA,<br><br>        *Intervenor-Defendant.* | Civil Action No. 2:23-cv-00079<br><br>Hon. Irene C. Berger<br><br>MEMORANDUM IN SUPPORT OF INTERVENOR-DEFENDANT STATE OF WEST VIRGINIA'S MOTION TO DISMISS |

## MEMORANDUM IN SUPPORT OF INTERVENOR-DEFENDANT STATE OF WEST VIRGINIA'S MOTION TO DISMISS

# TABLE OF CONTENTS

Table of Authorities ......................................................................................................... ii

Introduction .................................................................................................................... 1

Statement of Facts .......................................................................................................... 1

Legal Standard ................................................................................................................ 3

Argument ........................................................................................................................ 4

I.      The Court should dismiss the Complaint for lack of subject-matter jurisdiction
        because Plaintiffs do not have standing. ......................................................... 4

        A.      WHC lacks standing to challenge the admitting-privileges requirement
                because its physician has admitting privileges. ..................................... 4

        B.      Dr. Doe lacks standing to challenge the hospital and admitting-privileges
                requirements because he has not even attempted to obtain admitting
                privileges. ............................................................................................... 6

        C.      Plaintiffs do not have standing to assert claims on behalf of third-party
                women whose interests conflict with their own. .................................... 8

II.     The Court should dismiss the Complaint because it fails to state a claim under the
        Due Process or Equal Protection Clauses. ...................................................... 10

        A.      Plaintiffs fail to allege the violation of any fundamental right. ............ 10

        B.      Plaintiffs fail to allege membership in any suspect class. .................... 12

        C.      The Act satisfies rational-basis review as a matter of law. ................... 12

Conclusion ...................................................................................................................... 17

Certificate of Service ...................................................................................................... 19

## TABLE OF AUTHORITIES

**Cases**

*Arizona State Legislature v. Arizona Independent Redistricting Commission,*
  576 U.S. 787 (2015) .................................................................................................... 16

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ...................................................................................................... 4

*Bell Atlantic Corporation v. Twombly,*
  550 U.S. 544 (2007) ...................................................................................................... 4

*Dandridge v. Williams,*
  397 U.S. 471 (1970) .................................................................................................... 15

*Dobbs v. Jackson Women's Health Organization,*
  142 S. Ct. 2228 (2022) ........................................................................................ passim

*Doe v. Obama,*
  631 F.3d 157 (4th Cir. 2011) ....................................................................................... 5

*Giarratano v. Johnson,*
  521 F.3d 298 (4th Cir. 2008) ......................................................................... 11, 12, 13

*Greenville Women's Clinic v. Bryant,*
  222 F.3d 157 (4th Cir. 2000) ............................................................................... 14, 16

*Herndon v. Chapel Hill-Carrboro City Board of Education,*
  89 F.3d 174 (4th Cir. 1996) ....................................................................................... 10

*June Medical Services v. Gee,*
  905 F.3d 787 (5th Cir. 2018) ....................................................................................... 8

*June Medical Services v. Russo,*
  140 S. Ct. 2103 (2020) ..................................................................................... 9, 10, 17

*Kowalski v. Tesmer,*
  543 U.S. 125 (2004) ................................................................................................. 8, 9

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992) ...................................................................................................... 5

*Napper v. United States,*
  374 F. Supp. 3d 583 (S.D. W. Va. 2019) .................................................................... 3

*Norfolk Federation of Business Districts v. Department of Housing & Urban Development,*
  932 F. Supp. 730 (E.D. Va. 1996) ............................................................................. 14

ii

*Richmond, Fredericksburg & Potomac Railroad Co. v. United States*,
    945 F.2d 765 (4th Cir. 1991) ................................................................. 3

*Silver v. Baggiano*,
    804 F.2d 1211 (11th Cir. 1986) .......................................................... 14

*Star Scientific Inc. v. Beales*,
    278 F.3d 339 (4th Cir. 2002) ............................................................... 4

*Steel Company v. Citizens for a Better Environment*,
    523 U.S. 83 (1998) ............................................................................... 3

*Warth v. Seldin*,
    422 U.S. 490 (1975) ............................................................................. 8

*Washington v. Glucksberg*,
    521 U.S. 702 (1997) ........................................................................... 11

*Whole Woman's Health v. Rokita*,
    Nos. 21-2480 & 21-2573,  2022 WL 2663208 (7th Cir. July 11, 2022) ............................... 15

*Williamson v. Lee Optical of Oklahoma Inc.*,
    348 U.S. 483 (1955) ........................................................... 14, 15, 16, 17

**Statutes**

Unborn Child Protection Act, W. Va. Code §16-2R-1 *et seq.* (2022) .................................. passim

**Other Authorities**

*Hospital Community Benefits Report*, WEST VIRGINIA HOSPITAL ASS'N, 12,
    https://bit.ly/3mcTV7d ......................................................................... 7

## INTRODUCTION

The Supreme Court "return[ed] the issue of abortion to the people's elected representatives." *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228, 2243 (2022). West Virginia abortion laws are "entitled to a strong presumption of validity" and "must be sustained if there is a rational basis on which the legislature could have thought that it would serve legitimate state interests," including "preservation of prenatal life at all stages of development" and "the protection of maternal health and safety." *Id.* at 2284 (cleaned up). West Virginia enacted commonsense laws to protect the health and safety of women and children. Five months later, this case targets two modest regulations hoping to unwind the State's post-*Dobbs* statutory regime.

The Complaint should be dismissed because Plaintiffs lack standing to challenge the laws' requirements, and they lack standing to assert claims on behalf of third parties whose interests conflict with their own. The Complaint should also be dismissed because Plaintiffs fail to state a claim under the Due Process or Equal Protection Clauses. The Complaint does not allege—much less establish—that the challenged laws affect any fundamental right or suspect classification. So rational-basis review applies (as Plaintiffs concede), and the challenged laws easily satisfy that deferential standard.

## STATEMENT OF FACTS

One month after *Dobbs*, on July 25, 2022, Governor Jim Justice called a special legislative session to consider new pro-life legislation in light of the power restored to the people of West Virginia. On September 13, 2022, both chambers of the Legislature passed and immediately enacted the Unborn Child Protection Act, W. Va. Code §16-2R-1 *et seq*. (2022) ("the Act").

The Legislature recognized "that the State of West Virginia has a legitimate interest in protecting unborn lives and prohibiting abortions in West Virginia except in the circumstances set

1

forth in this article." W. Va. Code § 16-2R-1. The Act provides that "[a]n abortion may not be performed or induced or be attempted to be performed or induced unless in the reasonable medical judgment of a licensed medical professional:[1] (1) The embryo or fetus is nonviable; (2) The pregnancy is ectopic; or (3) a medical emergency exists." W. Va. Code § 16-2R-3(a). The Act also provides an exception for "an adult within the first 8 weeks of pregnancy if the pregnancy is the result of sexual assault . . . or incest," and for "a minor or an incompetent or incapacitated adult within the first 14 weeks for pregnancy if the pregnancy is the result of sexual assault . . . or incest." *Id.* § 16-2R-3(b)–(c).

For the few abortions that may be performed under the Act, the Legislature strengthened health-and-safety measures. This case involves two such provisions. First, the Act requires that "a surgical abortion performed or induced or attempted to be performed or induced pursuant to this section shall be in a hospital." *Id.* § 16-2R-3(f) ("hospital requirement"). Second, the Act requires that an "abortion performed or induced or attempted to be performed or induced shall be performed by a licensed medical professional who has West Virginia hospital privileges." *Id.* § 16-2R-3(g) ("admitting-privileges requirement").

Nearly five months after the Act's passage, Plaintiffs filed this lawsuit, asserting that the hospital and admitting-privileges requirements violate the equal-protection and due-process rights of Plaintiffs, their patients, and "all people seeking abortions in West Virginia." Compl. ¶ 136, ECF No. 1. Plaintiffs first allege that, because the Women's Health Center of West Virginia ("WHC") is not a hospital, the Act's hospital requirement prohibits it from providing surgical abortions, which previously made up 47% of its abortion procedures. Compl. ¶ 121. Plaintiffs

---

[1] Under the Act, "licensed medical professional" means "a person licensed under § 30-3-1 et seq. [the West Virginia Medical Practice Act], or § 30-14-1 et seq. [regarding osteopathic physicians and surgeons], of this code." W. Va. Code Ann. § 16-2R-2.

allege that there is no rational basis for the hospital requirement because, prior to the Act, most surgical abortions in West Virginia occurred in outpatient facilities, with few complications. Compl. ¶¶ 76–86.

Plaintiffs further allege that the admitting-privileges requirement effectively prohibits them from providing chemical abortions, which previously made up 53% of WHC's abortion procedures. *Id.* ¶¶ 122–23. There are two physicians who provide abortions at WHC. *Id.* One physician has admitting privileges at Charleston Area Medical Center ("CAMC"), but he schedules his practice in such a way that he only works at WHC two half-days per month. *Id.* ¶ 123. The other physician, Plaintiff Dr. John Doe, currently lacks admitting privileges and "will not apply for privileges." *Id.* ¶¶ 124–27. According to Plaintiffs, this is because Dr. Doe believes abortion is so safe that he could not satisfy the minimum requirements for treating patients at a hospital. *Id.* Plaintiffs allege that the admitting-privileges requirement is not rationally related to any legitimate government interest. *Id.* ¶¶ 128–29.

## LEGAL STANDARD

Under Fed. R. Civ. P. 12(b)(1), a complaint must be dismissed when the court lacks subject-matter jurisdiction, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998), as when the facts are undisputed and "the moving party is entitled to prevail as a matter of law," *Napper v. United States*, 374 F. Supp. 3d 583, 587 (S.D. W. Va. 2019). Plaintiffs bear the burden of proving jurisdiction. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

Under Fed. R. Civ. P. 12(b)(6), a complaint fails to state a claim when it does not contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). The factual allegations must "raise a

right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

The Court need not "accept as true a legal conclusion couched as a factual allegation." *Id*. at 555.

## ARGUMENT

Plaintiffs request sweeping injunctive and declaratory relief, seeking to prevent any enforcement of the entire Act, based on Plaintiffs' strained constitutional arguments against the hospital requirement and the admitting-privileges requirement, both of which have been in effect for six months. The Complaint must be dismissed because Plaintiffs lack standing, Plaintiffs fail to state a claim under the Due Process or Equal Protection Clauses, and the Act's requirements are rationally related to legitimate government interests as a matter of law.

**I.      The Court should dismiss the Complaint for lack of subject-matter jurisdiction because Plaintiffs do not have standing.**

Plaintiffs fail to carry their burden of proving Article III standing. "To establish standing, a party must establish, as 'the irreducible constitutional minimum,' three elements: (1) that it has suffered an injury in fact that is both concrete and particularized and 'actual or imminent, not conjectural or hypothetical'; (2) that there is a causal connection between the injury and the conduct complained of, i.e., the injury is 'fairly traceable' to the challenged action; and (3) that it is 'likely . . . that the injury will be redressed by a favorable decision.'" *Star Sci. Inc. v. Beales*, 278 F.3d 339, 358 (4th Cir. 2002). Here, Plaintiffs' alleged injury is not generally traceable to the hospital and admitting-privileges requirements, but to their own business decisions. Further, Plaintiffs lack standing to assert rights on behalf of unrepresented third parties.

**A.      WHC lacks standing to challenge the admitting-privileges requirement because its physician has admitting privileges.**

To satisfy the causation element of standing, a plaintiff must allege an injury that is "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560

4

(1992). In other words, when a private third party "makes the independent decision that causes an injury, that injury is not fairly traceable to the government." *Doe v. Obama*, 631 F.3d 157, 162 (4th Cir. 2011).

WHC has suffered no injury traceable to the admitting-privileges requirement. As explained above, WHC has two physicians, and one of them has admitting privileges at a West Virginia hospital. Compl. ¶ 38 ("[o]ne of [WHC's] physicians is based in Charleston and has local hospital privileges"); *id.* ¶ 123 (besides Dr. Doe, "the other physician who provides abortions at WHC has privileges at Charleston Area Medical Center"). So WHC—as an institutional plaintiff—may legally perform chemical abortions through this "other physician," subject to other laws governing abortion. *See* W. Va. Code § 16-2R-3(g) (requiring only that the physician performing the abortion have admitting privileges at a West Virginia hospital).

Notably, WHC does not allege that the admitting-privileges requirement forecloses its ability to provide chemical abortions permitted under the Act. Rather, WHC alleges that "as a practical matter," relying on this "other physician" with admitting privileges renders it "barely" capable, or "effectively" incapable, of providing chemical abortions. Compl. ¶¶ 122–23. The reason for its alleged limitation? According to WHC, this is because "his schedule only permits him to work at WHC two half-days per month," and only when a "sufficient" number of patients "justify him taking time away from" his other work. *Id.* ¶ 123; see *id.* ¶ 38 (alleging that WHC's limited ability to provide legal chemical abortions is "due to [the other physician's] schedule and the obligations of his private and hospital practice").

But any limitation on WHC's ability to provide lawful chemical abortions is attributable to independent decisions of Plaintiffs and the "other physician," not the government. It is the "other physician" who makes independent decisions about "his schedule," including how many days he

decides to work at WHC and how many patients he personally considers "sufficient" to "justify taking time away" from his other work. *Id.* It is Plaintiff Dr. Doe who makes an independent decision not to seek admitting privileges. *Id.* ¶ 127 ("Dr. Doe will not apply for privileges"). And it is WHC that makes independent decisions like "relying on [the other] physician" to provide chemical abortion, to not hire a separate doctor with admitting privileges, to not require all of its doctors to obtain admitting privileges, to not negotiate a more favorable schedule with the "other physician," and to not handle "the logistics required to ensure the patient is eligible for care and that WHC has sufficient staff to assist the [other] physician." *See Id.* ¶ 123.

These independent decisions of private third parties are fatal to WHC's challenge to the admitting-privileges requirement. Simply put, the Act allows chemical abortion under certain limited circumstances, and WHC's limited ability to provide those abortions to the fullest extent of the law is not attributable to the government. The Court should dismiss WHC's challenge to the admitting-privileges requirement.

**B.    Dr. Doe lacks standing to challenge the hospital and admitting-privileges requirements because he has not even attempted to obtain admitting privileges.**

Dr. Doe also fails to allege any injury fairly traceable to the hospital and/or admitting privileges requirement. In fact, as noted above, his inability to provide abortions permitted under the Act is attributable to his independent decision not to obtain admitting privileges at *any* West Virginia hospital. Dr. Doe does not plausibly allege that he cannot obtain admitting privileges for at least two reasons.

*First*, Dr. Doe has failed to plausibly allege that he cannot obtain admitting privileges simply because, in his opinion, complications from abortions are "rare." *See* Compl. ¶ 124. The Complaint does not articulate the particular requirements for admitting privileges or explain why they are not satisfied by Dr. Doe's abortion practice. Instead, Dr. Doe asks the Court to credit his

bald assertion that the risk of complications when performing abortions—even surgical abortions—is so low that his abortion practice could never qualify for admitting privileges. *Id*. ¶¶ 124–27.

Here, Dr. Doe is not alleging a fact, but is instead reporting *his judgment* regarding the potential application of unpled requirements for obtaining admitting privileges to his practice. But this assertion is particularly incredible in light of the Complaint's acknowledgement that WHC's other abortion physician was able to obtain admitting privileges. *Id*. ¶ 123.

*Second*, Dr. Doe has failed to plausibly allege that he is unable to obtain admitting privileges at *any* West Virginia hospital. As a matter of public record, "West Virginia has 70 hospitals located in 42 counties."[2] Under the Act, a physician may perform legal abortions if they have admitting privileges at any West Virginia hospital. W. Va. Code § 16-2R-3(g). Dr. Doe recognizes this fact, stating that "HB 302 could ostensibly be satisfied by hospital privileges anywhere in West Virginia." Compl. ¶ 128. But he alleges that he cannot satisfy the criteria for admitting privileges at only *one* hospital, namely CAMC. *Id*. ¶ 124. Even if this were true, Dr. Doe has failed to allege facts sufficient to plausibly conclude that his inability to perform abortions is attributable to the admitting-privileges requirement.

*Third*, Dr. Doe's failure to make any good-faith effort to apply for admitting privileges— or even to inquire about his eligibility—suggests that his alleged inability to perform abortions is not traceable to the admitting-privileges requirement. In *June Medical Servs. L.L.C. v. Gee*, the Fifth Circuit upheld Louisiana's admitting privileges law and held that the abortion-provider plaintiffs had "failed to establish a causal connection between the regulation and its burden—

---

[2] *Hospital Community Benefits Report*, WEST VIRGINIA HOSPITAL ASS'N, 12, https://bit.ly/3mcTV7d.

namely, doctors' inability to obtain admitting privileges." 905 F.3d 787, 807 (5th Cir. 2018). The Fifth Circuit explained that "there is insufficient evidence to conclude that, had the doctors put forth a good-faith effort to comply with [the law], they would have been unable to obtain privileges." *Id.*[3]

In sum, Dr. Doe lacks standing to challenge the hospital and admitting-privileges requirements because the Complaint fails to plausibly allege facts sufficient to conclude that he cannot obtain admitting privileges.

### C. Plaintiffs do not have standing to assert claims on behalf of third-party women whose interests conflict with their own.

Plaintiffs allege that the Act "violates the due process and/or equal protection rights of Plaintiffs' patients because the Care Restrictions prevent them from accessing otherwise lawful medical care and are not rationally related to any legitimate state interest." Compl. ¶¶ 135, 151. But after *Dobbs*, Plaintiffs do not have standing to assert their patients' rights.

In *Dobbs*, the Supreme Court criticized its prior abortion cases for "ignor[ing] the Court's third-party standing doctrine," relying in part on the dissents of Justice Alito and Justice Gorsuch in *June Medical*. 142 S. Ct. at 2275 & n.61. Generally, a plaintiff "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). Although the Supreme Court has recognized a "limited exception" to this rule where "the party asserting the right has a 'close' relationship with the person who possesses the right" and "there is a 'hindrance' to the possessor's ability to protect his own interests," *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004), Plaintiffs have neither alleged nor

---

[3] While a plurality of the Supreme Court rejected the Fifth Circuit's standing analysis, *June Medical Servs. L.L.C. v. Russo*, 140 S. Ct. 2103, 2121 (2020), *Dobbs* overturned that decision and criticized its departure from normal standing doctrines. *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2242 (2022) (overruling *Roe*, *Casey*, and their progeny); *id.* at 2272–76 (discussing *June Medical*).

established a close relationship or hindrance here. And "[e]ven when a plaintiff can identify an actual and close relationship, [the Supreme] Court will normally refuse third-party standing if the plaintiff has a potential conflict of interest with the person whose rights are at issue." *June Med. Services v. Russo*, 140 S. Ct. 2103, 2174 (2020) (Gorsuch, J., dissenting). And the conflict of interest here is obvious.

*First*, Plaintiffs have not alleged or shown that they have a close relationship with their patients, who they typically see only once and for a matter of minutes. The Complaint states that the surgical abortion "procedure is short in duration, typically taking about five to eight minutes." Compl. ¶ 18; *see id*. ¶ 19 (calling surgical abortion a "short interventional technique"). In a chemical abortion, only the first drug is "taken orally at the Center." *Id*. ¶ 33. Indeed, Plaintiffs urge that the dispensing or taking of chemical abortion pills should not require the physical presence of a clinician at all. *Id*. ¶ 109. This cursory relationship is not sufficient to meet the first prong of the third-party standing test. *See June Medical*, 140 S. Ct. at 2168 (Alito, J., dissenting); *see also Kowalski*, 543 U.S. at 126 (holding that attorneys had not established close relationship with hypothetical future clients).

*Second*, Plaintiffs have presented no evidence that women are unable to bring suit on their own behalf. "[A] woman who challenges an abortion restriction can sue under a pseudonym, and many have done so." *June Med.,* 140 S. Ct. at 2168 (Alito, J., dissenting). Indeed, Dr. Doe himself has sued under a pseudonym in this case. "And there is little reason to think that a woman who challenges an abortion restriction will have to pay for counsel." *Id.* at 2168–69. Moreover, an individual woman's claim would "survive the end of her pregnancy under the capable-of-repetition-yet-evading-review exception to mootness." *Id.* at 2169.

*Third*, "[t]his case features a blatant conflict of interest between an abortion provider and its patients." *Id.* at 2166; *Kowalski*, 543 U.S. at 126. The laws challenged here are health-and-safety regulations to ensure that abortions in West Virginia are performed by doctors in circumstances that help minimize the known serious risks of abortion. But "an abortion provider has a financial interest in avoiding burdensome regulations," whereas "[w]omen seeking abortions . . . have an interest in the preservation of regulations that protect their health." *June Med.*, 140 S. Ct. at 2166 (Alito, J. dissenting). The Act "expressly aims to protect women from the unsafe conditions maintained by at least some abortion providers who, like Plaintiffs, are either unwilling or unable to obtain admitting privileges." *Id.* at 2174 (Gorsuch, J., dissenting). In other words, Plaintiffs would profit by being able to perform more abortions free from the Act's challenged requirements, yet those very provisions exist to help protect women who may receive legal abortions from risks associated with surgical and chemical abortions. Thus, Plaintiffs do not have standing to assert the rights of their patients in this case.

## II.     The Court should dismiss the Complaint because it fails to state a claim under the Due Process or Equal Protection Clauses.

Plaintiffs vaguely allege that the Act violates "Plaintiffs' due process and/or equal protection rights" by requiring them to comply with the hospital and admitting-privileges requirements. Compl. ¶ 150. But Plaintiffs fail to identify any recognized due process right, much less establish its violation. And Plaintiffs fail to identify their membership in a class that has been unlawfully subject to differential treatment. Rational-basis review applies—as Plaintiffs concede—and the Act certainly passes constitutional muster.

### A.     Plaintiffs fail to allege the violation of any fundamental right.

"A substantive due process challenge is considered under rational-basis review unless some fundamental right is implicated." *Doe v. Settle*, 24 F.4th 932, 953 (2022) . And the Due Process

Clause does not confer fundamental rights unless they are expressly mentioned in the Constitution or, if unenumerated, any asserted right must be "objectively, deeply rooted in this Nation's history and tradition." *Dobbs*, 142 S. Ct. at 2247 (quoting *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997)). Here, rational-basis review applies because Plaintiffs fail to allege that the Act violates any fundamental right. The Complaint only suggests two possible theories for a substantive due process claim, and both fail.

*First*, Plaintiffs assert that the Act violates *their patients*' due-process rights by allegedly depriving them of access to abortions. *See* Compl. ¶¶ 135, 151. But Plaintiffs lack standing to assert a claim on behalf of their patients. *See supra* Section I.C. And regardless, the Supreme Court held that the Due Process Clause does not confer any fundamental right to access abortions. *Dobbs*, 142 S. Ct. at 2242.

*Second*, Plaintiffs suggest that the Act harms their ability to perform abortions, which allegedly results in loss of revenue and interferes with their professional mission to serve "the reproductive and sexual health needs of West Virginians" by offering abortions. *See* Compl. ¶¶ 131, 133–34. But again, the Constitution does not provide any right to obtain or perform abortions. *Dobbs*, 142 S. Ct. at 2242. And Plaintiffs' vague reference to economic and professional pursuits likewise fails to invoke any fundamental right because "the States may regulate abortion for legitimate reasons, and when such regulations are challenged under the Constitution, courts cannot substitute their social and economic beliefs for the judgment of legislative bodies." *Id*. at 2283–84 (citations omitted).

Because Plaintiffs do not allege that the Act violates any fundamental right, rational-basis review applies.

**B.      Plaintiffs fail to allege membership in any suspect class.**

"Under an Equal Protection analysis, courts generally hold that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *Giarratano v. Johnson*, 521 F.3d 298, 302–03 (4th Cir. 2008) (citation omitted). "As such, the challenged classification need only be rationally related to a legitimate state interest unless it violates a fundamental right or is drawn upon a suspect classification such as race, religion, or gender." *Id.* (citation omitted).

Here, Plaintiffs assert that the Act violates their equal-protection rights by limiting their ability to perform abortions. Compl. ¶¶ 131–34, 150. But as explained above, Plaintiffs do not identify any fundamental right, *supra* Section II.A., and Plaintiffs do not allege membership in any suspect class treated differently under the Act. To the extent that Plaintiffs suggest that the Act classifies on the basis of sex or unlawfully treats abortion differently than other medical procedures, they are wrong. "[A] State's regulation of abortion is not a sex-based classification and is thus not subject to the 'heightened scrutiny' that applies to such classifications." *Dobbs*, 142 S. Ct. at 2245–46 (citation omitted). Thus, "laws regulating or prohibiting abortion are not subject to heightened scrutiny" but are "governed by the same standard of review as other health and safety measures," *id.*, rational basis review. As demonstrated below, the Act plainly satisfies that deferential standard.

**C.      The Act satisfies rational-basis review as a matter of law.**

In *Dobbs*, the Supreme Court held that "rational-basis review is the appropriate standard" for challenges to state abortion regulations. 142 S. Ct. at 2283. Under the rational-basis test, "[a] law regulating abortion, like other health and welfare laws, is entitled to a 'strong presumption of validity.'" *Id.* at 2284. Therefore, "[i]t must be sustained if there is a rational basis on which the legislature could have thought that it would serve legitimate state interests." *Id.* Legitimate state

interests for abortion laws "include respect for and preservation of prenatal life at all stages of development . . . ; the protection of maternal health and safety; the elimination of particularly gruesome or barbaric medical procedures; [and] preservation of the integrity of the medical profession." *Id.* (internal citations omitted).

"Under this deferential standard, the plaintiff bears the burden to negate every conceivable basis which might support the legislation." *Giarratano*, 521 F.3d at 303. "Further, the State has no obligation to produce evidence to support the rationality of the statute, which 'may be based on rational speculation unsupported by any evidence or empirical data.'" *Id.* (quoting *FCC v. Beach Comms., Inc.*, 508 U.S. 307, 315 (1993)). A State does not violate the Fourteenth Amendment "merely because the classifications made by its laws are imperfect." *Id.* (citation omitted). "If the classification has some reasonable basis, it does not offend the Constitution simply because the classification is not made with mathematical nicety or because in practice it results in some inequality." *Id.* (citation omitted). Indeed, "equal protection analysis is not a license for the courts to judge the wisdom, fairness, or logic of the legislative choices." *Id.* (citation omitted).

Here, there can be no question that the Act invokes legitimate State interests. The Act expressly cites an interest recognized by the Supreme Court: "The Legislature finds that the State of West Virginia has a legitimate interest in protecting unborn lives and prohibiting abortions in West Virginia except in the circumstances set forth in this article." W. Va. Code § 16-2R-1; *see Dobbs*, 142 S. Ct. at 2283 (listing protection of unborn life as a legitimate interest). And the Act's hospital and admitting-privileges requirements invoke the State's interests in protecting maternal health and preserving the integrity of the medical profession.

Thus, Plaintiffs do not dispute the State's legitimate interests, but simply question whether the hospital and admitting-privileges requirements are rationally *related* to those interests. In

determining whether an abortion regulation is rationally related to these interests, "courts cannot 'substitute their social and economic beliefs for the judgment of legislative bodies.'" *Dobbs*, 142. S. Ct. at 2283–84. Instead, "it is for the legislature, not the courts, to balance the advantages and disadvantages of the new requirement." *Williamson v. Lee Optical of Okla. Inc.*, 348 U.S. 483, 487 (1955). Nor is it fatal that a requirement is overinclusive or underinclusive: "the reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind." *Id.* at 489.

For instance, in *Greenville Women's Clinic v. Bryant*, the Fourth Circuit considered the constitutionality of a South Carolina law requiring that facilities that perform "one second-trimester abortion or five or more first-trimester abortions per month" to be licensed as an abortion clinic. 222 F.3d 157, 172 (4th Cir. 2000).[4] There, the plaintiffs argued that because the regulation did not include *all* facilities that perform abortions, it was not "narrowly drawn to protect the health of women seeking abortions." *Id.* Applying the rational-basis test, the Fourth Circuit upheld the law, explaining that "[t]he rationality of distinguishing between abortion services and other medical services when regulating physicians or women's healthcare has long been acknowledged by Supreme Court precedent." *Id.* at 173. Therefore, the law "was reasonably designed to promote South Carolina's valid interest in women's health." *Id.* at 168.

Plaintiffs allege that abortion is so safe that, in their opinion, the Act's requirements are not necessary in most cases. *See* Compl. ¶ 2–3. But "[t]he day is gone when [courts] use[d] the

---

[4] Because *Greenville Women's Clinic* was decided before *Dobbs*, the Fourth Circuit applied the undue burden test to the plaintiffs' due process claim and the rational basis test to their equal protection claims. But "[t]he standard for evaluating substantive due process challenges to social and economic legislation is virtually identical to the 'rational relationship' test for evaluating equal protection claims." *Norfolk Fed'n of Bus. Dists. v. Dep't of Housing & Urban Dev.*, 932 F. Supp. 730, 738 n.5 (E.D. Va. 1996) (citing *Silver v. Baggiano*, 804 F.2d 1211, 1218 (11th Cir. 1986)).

Due Process Clause of the Fourteenth Amendment to strike down state laws . . . because they may be unwise, improvident, or out of harmony with a particular school of thought." *Lee Optical*, 348 U.S. at 488. Instead, the requirements "must be sustained if there is a *rational* basis on which the legislature *could have thought* that it would serve legitimate state interests." *Dobbs*, 142 S. Ct. at 2284 (emphasis added).

The Legislature could have rationally concluded that surgical abortions can be more safely provided in hospitals because hospitals are better equipped to address any complications that arise, even if rare. No more is required to pass constitutional muster. *See Dobbs*, 142 S. Ct. at 2284 ("[C]ourts cannot 'substitute their social and economic beliefs for the judgment of legislative bodies.'"); *Whole Woman's Health v. Rokita*, Nos. 21-2480 & 21-2573,  2022 WL 2663208, at *1 (7th Cir. July 11, 2022) (vacating injunctions against various abortion statutes and remanding for reconsideration under rational basis test). Similarly, the Legislature could have rationally concluded that the admitting-privileges requirement would help to ensure chemical abortion patients' continuity of care when hospital treatment is necessary for complications and would serve as a credentialing mechanism for abortion doctors. Again, this alone is enough to pass the rational-basis test. *See Lee Optical*, 348 U.S. at 488; *see also Dobbs*, 142 S. Ct. at 2283–84.

With respect to the hospital requirement, the Legislature could have thought that requiring surgical abortions be performed in a hospital would make the procedure safer for the mother. Indeed, WHC acknowledges that there are "circumstances in which a procedural abortion should be performed in a hospital." Compl. ¶ 92. Although WHC alleges that these circumstances are "extremely uncommon," *id.*, a law is not invalid under the rational-basis test "simply because the classification 'is not made with mathematical nicety,'" *Dandridge v. Williams*, 397 U.S. 471, 485 (1970). WHC further argues that the hospital requirement is nonetheless irrational because surgical

abortions "are almost always provided in an outpatient setting." Compl. ¶ 79. But West Virginia is not bound by what "other state[s] require[]," *id.* ¶ 77; the Supreme Court has "long recognized the role of the States as laboratories for devising solutions to difficult legal problems." *Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 817 (2015).

Then, WHC alleges that both the hospital and admitting-privileges requirements are irrational because surgical abortion "is analogous to other gynecological procedures that also take place in outpatient settings" and "[n]o law in West Virginia requires hospital privileges to prescribe any other medication." Compl. ¶¶ 20, 80, 111. But the Fourth Circuit already rejected this argument in *Greenville Women's Clinic* because "[t]he rationality of distinguishing between abortion services and other medical services when regulating physicians or women's healthcare has long been acknowledged by Supreme Court precedent." 222 F.3d at 173.

Next, WHC argues that surgical abortion "is analogous to other gynecological procedures that take place in outpatient settings" and that it "is *safer* than other routine gynecological procedures that also are almost always performed in an outpatient setting." Compl. ¶¶ 80, 84. But the rational-basis test allows the State to "take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind." *Lee Optical*, 348 U.S. at 489. Finally, WHC relies on outdated cases striking down hospital requirements under the *Roe* trimester framework. *See* Compl. ¶ 96 (citing *Doe v. Bolton*, 410 U.S. 179 (1973); *City of Akron v. Akron Ctr. for Reprod. Health, Inc.*, 462 U.S. 416 (1983); *Planned Parenthood Ass'n of Kansas City v. Ashcroft*, 462 U.S. 476 (1983)). These cases are no longer good law under *Dobbs*. 142 S. Ct. at 2242 (overruling *Roe*).

Similarly, the Legislature could have rationally concluded that requiring doctors performing chemical abortions to have admitting privileges at a West Virginia hospital would

16

make the procedure safer. WHC admits that "[d]ata for the past five years show that . . . four of WHC's . . . medication abortion patients . . . sought . . . follow-up care at a hospital." Compl. ¶ 116. The Legislature could have concluded that admitting privileges would ensure continuity of care for those patients who experience "complications from medication abortion requiring hospital treatment," however "rare," *Id*. ¶ 113. And despite WHC's claim that "[w]hether a provider has hospital privileges has no bearing on whether one of their patients receives care at a hospital in the event hospital care is necessary," *id*. ¶ 104, the Legislature could have rationally concluded that the admitting-privileges requirement would provide greater continuity of care for *some* patients in *some* situations.

Nor does it render the requirement invalid that "[n]o law in West Virginia requires hospital privileges to prescribe any other medication," even "those medications [that] are more lethal than medication abortion." Compl. ¶ 111; *see Lee Optical*, 348 U.S. at 489 ("[T]he reform may take one step at a time[.]"); *see also Dobbs*, 142 S. Ct. at 2268 ("Many health and safety regulations aim to avoid adverse health consequences short of death."). WHC then relies on outdated cases striking down admitting-privileges requirements under the *Casey* undue-burden test. Compl. ¶ 118 (citing *June Med. Servs. L.L.C. v. Russo*, 140 S. Ct. 2103 (2020); *Whole Woman's Health v. Hellerstedt*, 579 U.S. 582 (2016)). Once again, those cases are no longer good law under *Dobbs*. 142 S. Ct. at 2242 (overruling *Casey*), 2273–74 (criticizing *Hellerstedt* and *June Medical* specifically).

For these reasons, WHC has failed to state a claim that it is entitled to relief under the Due Process or Equal Protection Clauses.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Complaint.

Respectfully submitted this 15th day of March, 2023.

By counsel,

PATRICK MORRISEY
*West Virginia Attorney General*

 /s/ *Curtis R.A. Capehart*
Douglas P. Buffington II (WV Bar # 8157)
  *Chief Deputy Attorney General*
Curtis R. A. Capehart (WV Bar # 9876)
  *Deputy Attorney General*
OFFICE OF THE WEST VIRGINIA ATTORNEY GENERAL
State Capitol Complex
1900 Kanawha Blvd. E, Building 1, Room E-26
Charleston, WV 25305-0220
Telephone: (304) 558-2021
Facsimile: (304) 558-0140
Email: Curtis.R.A.Capehart@wvago.gov

Julia Payne*
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
Tel.: (480) 444-0020
Fax: (480) 444-0028
jpayne@adflegal.org

Denise M. Harle*
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Rd. NE
Ste D-1100
Lawrenceville, GA 30043
Tel.: (770) 339-0774
Fax: (480) 444-0028
dharle@adflegal.org

*Visiting Attorney
Counsel for Intervenor, the State of West Virginia*

THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

<table>
<tr><td>

WOMEN'S HEALTH CENTER OF WEST VIRGINIA, *on behalf of itself, its staff, and its patients;* and DR. JOHN DOE, *on behalf of himself and his patients,*

*Plaintiffs,*

v.

ASHISH P. SHETH, *in his official capacity as President of the West Virginia Board of Medicine;* and MATTHEW CHRISTIANSEN, *in his official capacity as Secretary of the West Virginia Board of Medicine,*

*Defendants,*

STATE OF WEST VIRGINIA,

*Intervenor-Defendant.*

</td><td>

Civil Action No. 2:23-cv-00079

Hon. Irene C. Berger

</td></tr>
</table>

## CERTIFICATE OF SERVICE

I hereby certify that on March 15, 2023, I electronically filed the foregoing "Memorandum in Support of Defendant-Intervenor State of West Virginia's Motion to Dismiss" with the Clerk of Court using the ECF system which will send notification of such filing to all counsel of record.

　/s/ *Curtis R. A. Capehart*
Curtis R.A. Capehart
　*Deputy Attorney General*

19