# EXHIBIT 5

THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| WOMEN'S HEALTH CENTER OF WEST VIRGINIA, *on behalf of itself, its staff, and its patients*; and DR. JOHN DOE, *on behalf of himself and his patients*,<br><br>*Plaintiffs*,<br>v.<br><br>ASHISH P. SHETH, *in his official capacity as President of the West Virginia Board of Medicine*; and MATTHEW CHRISTIANSEN, *in his official capacity as Secretary of the West Virginia Board of Medicine*,<br><br>*Defendants*,<br><br>and<br><br>THE STATE OF WEST VIRGINIA,<br><br>*Defendant-Intervenor*. | Civil Action No. 2:23-cv-00079<br><br>Hon. Irene C. Berger |

**DECLARATION OF SHARON LEWIS IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

I, SHARON LEWIS, declare the following:

1. I was born and raised in Charleston, West Virginia, and have lived here for almost all of my life. I worked at the Women's Health Center of West Virginia ("WHC" or the "Center") from 1988 until my retirement in 2020. Most recently, from 1999 until 2020, I served as WHC's Executive Director. I submit this declaration in support of Plaintiffs' Motion for Preliminary Injunction (Dkt. 3). During my entire time at WHC, WHC was a National Abortion Federation ("NAF") member clinic and was therefore required to meet NAF's safety standards.

2. I am submitting this declaration to address the reality of abortion care and abortion access in West Virginia.

3. I understand that the State of West Virginia suggests that WHC could recruit another in-state doctor with admitting privileges to provide abortion care. Based on my decades of experience, it is extremely difficult to find local or even in-state physicians willing or able to work at WHC.

4. During my entire 21-year tenure as Executive Director, I found it challenging to recruit in-state physicians to provide abortion care at WHC. While there were local physicians who were trained to provide abortion care as part of their medical training, many were reluctant to actually provide that care and subject themselves and their families to stigma, harassment, and even violence. For periods of time during my time at the Center, WHC had no choice but to fly in physicians from out-of-state—including from as far as California—to provide abortion care to patients. Additionally, several in-state physicians who would otherwise have been willing to provide care were employed by West Virginia University ("WVU"), and they told me that they were precluded by WVU from providing abortion care, even at a non-WVU facility.

5. Because of the challenges of recruiting in-state physicians, I had to consult a national organization to try to identify physicians around the country who would be willing to travel to provide abortion care in West Virginia.

6. I also understand the State's expert, who is not from West Virginia, has suggested that patients could access abortion care at the Charleston Area Medical Center ("CAMC"). In my opinion, this is ludicrous and reveals how little this expert actually knows or understands about the provision of abortion care in West Virginia. In the decades that I worked in abortion care in Charleston, CAMC has never to my knowledge performed abortions except if the pregnant person is in a life-threatening situation. In fact, the longtime director of the Obstetrics & Gynecology department at CAMC, Dr. Byron Calhoun, is well-known to be personally opposed to abortion.

For example, in the spring of 2013, Dr. Calhoun inappropriately advised a former patient to file a lawsuit against WHC following an abortion the patient had received at WHC by falsely representing to the client that the abortion was performed with substandard care. The lawsuit was later dismissed, with the judge recognizing that Dr. Calhoun had misrepresented the facts. I have no reason to think Dr. Calhoun's position or CAMC's practices have changed in recent years.

7. Additionally, I understand the State suggests that pregnant people seeking to access abortion care do not face significant obstacles to bringing lawsuits in their own name. This suggestion wholly ignores the reality of what it means to be an abortion patient in West Virginia.

8. Even if a court allowed a patient to proceed without using their real name, the communities in West Virginia are so small and tightly knit that I think many patients would be deterred from being plaintiffs because they would still fear being identified by family, friends, colleagues, and others in their community, and experiencing backlash, harassment, or even violence as a result.

//

//

//

**I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.**

**Dated: March 15, 2023**

SHARON LEWIS